No. 23-2512

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

Demona Freeman,

      *Plaintiff-Appellant,*

    v.

Ocwen Loan Servicing, LLC., and
The Bank of New York Mellon f/k/a
The Bank of New York  as successor in
interest to JPMorgan Chase Bank, N.A., as Trustee
for C-BASS Mortgage Loan Asset-Backed
Certificates, Series, 2005-RPI,

      *Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Indiana
Case. No. 1:18-cv-03844-TWP-MKK
The Honorable Judge Tonya Walton Pratt

_____

BRIEF AND REQUIRED SHORT APPENDIX

OF PLAINTIFF-APPELLANT, DEMONA A. FREEMAN

_____

Travis W. Cohron
Clark, Quinn, Moses, Scott & Grahn, LLP
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
(317) 637-1321
tcohron@clarkquinnlaw.com
*Counsel for Plaintiff-Appellant*

<u>Appearance & Circuit Rule 26.1 Disclosure Statement</u>

Plaintiff-Appellant is an individual that has no corporate parent and does not issue stock.


 /s/ Travis W. Cohron
Travis W. Cohron

## TABLE OF CONTENTS

Appearance & Circuit Rule 26.1 Disclosure Statement ...............................................2

Table of Authorities....................................................................................................5

Statement Regarding Oral Argument.........................................................................10

Jurisdictional Statement ...........................................................................................10

Issues Presented for Review .....................................................................................11

Statement of the Case ..............................................................................................12

    I.    Statutory Background ..................................................................................12

        A.   The Fair Credit Reporting Act (15 U.S.C. § 1681s, *et seq.*) ...............................12

        B.   The Fair Debt Collection Practices Act (15 U.S.C. § 1692, *et seq.*) ...................13

    II.   Factual Background ....................................................................................15

    III.   Procedural History......................................................................................19

        A.   Commencement of the Case .......................................................................19

        B.   Dismissal of Count V: Violation of the Fair Credit Reporting Act ....................20

        C.   Entry of Summary Judgment for Ocwen. ......................................................21

Summary of Arguments ............................................................................................22

Argument ................................................................................................................23

    I.    Ms. Freeman Plausibly Alleged a Claim for Relief Under Section 1681s-2(b) of the FCRA. 23

        A.   Standard of Review ...................................................................................23

        B.   Ms. Freeman Stated A Claim to Relief That Was Plausible On Its Face. ........................23

    II.   The District Court Abused its Discretion In Denying Ms. Freeman Leave to Amend So to Cure Purported Deficiencies with her FCRA Claim. ....................................................27

        A.   Standard of Review ...................................................................................27

        B.   The District Court denied leave to amend without any justifying reason. ..........................27

    III.   The District Court Erred in Granting Summary Judgment in Favor of Ocwen...............29

        A.   Standard of Review ...................................................................................29

        B.   Ms. Freeman Has Standing To Pursue Her FDCPA Claims. ..........................29

            1.   The Supreme Court's guidance in TransUnion, and this Court's precedent, compels a finding that Plaintiff has standing..............................................................................29

a)   Ms. Freeman has suffered concrete intangible harms "with a close historical or common-law analogue" . ...................................................................................30

(1)   Defamation and false light..............................................................30

(2)   Invasion of privacy and intrusion upon seclusion. ................................32

(3)   Abuse of process. ........................................................................33

2.   Ms. Freeman has suffered concrete tangible harm. ...................................34

Conclusion ...................................................................................................35

Certificate Of Compliance ...............................................................................37

Certificate Of Service ....................................................................................38

Table of Authorities

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 L.Ed.2d 868 (2009) .............................................23

*Bancorpsouth, Inc. v. Fed. Ins. Co., 873 F.3d 582 (7th Cir. 2017)* ...................................................23

*Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010) ......................................................................29

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)..............23, 25

*Bertero v. Nat'l Gen. Corp.*, 13 Cal.3d 43, 118 Cal.Rptr. 184, 529 P.2d 608 (1974) (*en banc*)......34

*Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570 (7th Cir. 2017).......................23, 26

*Chapman v. Yellow Cab Cooperative*, 875 F.3d 846 (7th Cir. 2017) .................................................23

*Choice v. Kohn Law Firm, S.C.*, 77 F.4th 636 (7th Cir. 2023) ...........................................................35

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75 (2d Cir. 2018).....................................31, 33

*Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685 (8th Cir. 2017) ...............................................33, 34

*Dubicz v. Commonwealth Edison Co., 377 F.3d 787 (7th Cir. 2004)* .................................................28

*Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146 (7th Cir. 2022) ........................................................15, 30

*Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ...........................................27, 28

*Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020)...................................................15

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) .......................................12, 24

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) ...................................................13

*Huber v. TransUnion LLC.*, No. 4:11-cv-139-SEB-DML, 2012 WL 3045686 (S.D. of Ind. July 25, 2012) ....................................................................................................................27

*Hurst v. Caliber Home Loans, Inc.*, 44 F.4th 418 (6th Cir. 2022) ...................................35

*In re Feliciana Figueroa*, Case No. 09-07725, 2021 WL 5815641 (Bankr. D. P.R. Dec. 7, 2021).16

*LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937 (7th Cir. 2010)....................25

*Lang v. TCF Nat'l Bank*, 249 F. App'x. 464 (7th Cir. 2007) ....................................22, 26

*Lapka v. Chertoff*, 517 F.3d 974 (7th Cir. 2008) ............................................................29

*Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312 (3d Cir. 2018) ...............31

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992) .............30

*Lupia v. Medicredit, Inc.*, 8 F.4th 1184 (10th Cir. 2021) ..........................................32, 33

*Markakos v. Medicredit, Inc.*, 997 F.3d 778 (7th Cir. 2021) ..........................................31

*McCarthy v. PaineWebber, Inc.*, 127 F.R.D. 130 (N.D. Ill. 1989) .................................28

*Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020) ....................................35

*Nyberg v. Portfolio Recovery Associates*, No. 17-35315, 2023 WL 4363119 (9th Cir. July 6, 2023) ....................................................................................................................35

*Perry v. First Nat'l Bank*, 459 F.3d 816 (7th Cir. 2006) ................................................13

*Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934 (7th Cir. 2022) ...............................35

*Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629 (7th Cir.2007)..........................................24

*Purcell v. Bank of Am.*, No. 1:09 CV 356, 2010 WL 4955542 (N.D. Ind Nov. 30, 2010) ............27

*Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015) ............................29

*Richards v. Combined Ins. Co. of America,* 55 F.3d 247 (7th Cir. 1995)........................................29

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and N.W. Ind.,* 786 F.3d 510 (7th Cir. 2015) .................................................................................................. 25, 27, 29

*Saccameno v. U.S. Bank Nat'l Ass'n, 943 F.3d 1071 (7th Cir. 2019)* ........................16, 17

*Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007) ...............12

*Smith v. Union Pacific R. Co.,* 474 F. App'x. 478 (7th Cir. 2012) .................................29

*Spokeo, Inc. v. Robins,* 578 U.S. 330, 136 S.Ct. 1540, 194 >L.Ed. 2d 635 (2016) ..................15, 30

*Stern v. United States Gypsum, Inc.,* 547 F.2d 1329 (7th Cir.1977) ................................28

*Swanson v. Citibank, N.A.,* 614 F.3d 400 (7th Cir. 2010) ...........................................25

*Textor v. Board of Regents,* 711 F.2d 1387 (7th Cir. 1983) .........................................28

*Tragarz v. Keene Corp.,* 980 F.2d 411 (7th Cir. 1992) ..............................................28

*TransUnion LLC v. Ramirez,* 594 U.S. ---, 141 S.Ct. 2190, 210 L.Ed. 2d 568 (2021)............30, 32

*Wahl v. Midland Credit Mgmt., Inc.,* 556 F.3d 643 (7th Cir. 2009) ...............................13

*Westra v. Credit Control,* 409 F.3d 825 (7th Cir. 2005) ........................................13, 24

*Zimmerman v. Bornick,* 25 F.4th 491 (7th Cir. 2022) ...............................................27

Statutes

11 U.S.C. § 1322(b)(5) .............................................................................................16

12 U.S.C. § 2605 ......................................................................................................11

15 U.S.C § 1692(a) ..................................................................................................14

15 U.S.C. § 1681 ......................................................................................................11

15 U.S.C. § 1681(a)(1) ................................................................................. 12

15 U.S.C. § 1681e ......................................................................................... 12

15 U.S.C. § 1681s .............................................................................. 13, 22, 23

15 U.S.C. § 1681s-2(c) .................................................................................. 26

15 U.S.C. § 1692 ........................................................................................... 13

15 U.S.C. § 1692(a) ................................................................................. 31, 33

15 U.S.C. § 1692a(6) ..................................................................................... 13

15 U.S.C. § 1692c .......................................................................................... 14

15 U.S.C. § 1692k(c) ..................................................................................... 13

15 U.S.C. § 1692k(d) ..................................................................................... 11

15 U.S.C. §1692d ........................................................................................... 14

15 U.S.C.A. § 1681s ....................................................................................... 24

15 U.S.C.A. § 1681s-2 ................................................................................... 20

28 U.S.C § 1367 ............................................................................................. 11

28 U.S.C. § 1331 ............................................................................................ 11

28 U.S.C. § 1332 ............................................................................................ 11

28 U.S.C. § 1337 ............................................................................................ 11

28 U.S.C. §1291 ............................................................................................. 11

<u>Rules</u>

Fed. R. Civ. P. 12(b)(6) ..................................................................................23

Fed. R. Civ. P. 9 ............................................................................................24

<u>Other Authorities</u>

Restatement (Second) of Torts § 652A(2)(a)-(d) (1977)...................................31, 32

Restatement (Second) of Torts § 652E (1977) ...............................................31

Restatement (Second) of Torts § 652E, cmt. b (1977) ...................................31

Restatement (Second) of Torts § 674 (June 2017 update) ..............................34

## Statement Regarding Oral Argument

This case presents multiple issues that warrant oral argument. The district court's dismissal of one claim with prejudice after a first motion to dismiss raises recurring questions of what it means to construe all inferences in the non-moving party's favor and to liberally give leave to amend. And, once the district court's failure to address the plaintiff's evidence at summary judgment is remedied, this case presents questions of first impression in this Court about what types of injuries are sufficiently similar to injuries cognizable at common law to support Article III for a claim under the Fair Debt Collection Practices Act.

## Jurisdictional Statement

The district court had jurisdiction over this civil action pursuant to 15 U.S.C. § 1692k(d), 12 U.S.C. § 2605, 15 U.S.C. § 1681, and 28 U.S.C. §§ 1331, 1337. It had supplemental jurisdiction over Appellant's state-law claims pursuant to 28 U.S.C § 1367. The district court also had jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship, and the amount in controversy exceeds $75,000.00. Appellant is a natural person who is a citizen of Indiana. Defendant-Appellee Ocwen Loan Servicing, LLC is a limited liability corporation organized under the laws of Delaware. Defendant-Appellee Ocwen Loan Servicing, LLC's sole member is Ocwen Mortgage Servicing, Inc., a corporation organized under the laws of the United States Virgin Islands, with its principal place of business in the United States Virgin Islands. Ocwen is therefore a citizen of Delaware and the United States Virgin Islands. *See* 28 U.S.C. §§ 1332(c)(1), (e).

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1291 because this is an appeal from the final decision of a district court. On December 21, 2020, the district court dismissed Count V of the Second Amended Complaint with prejudice. AA001-AA036. On July 5, 2023, the district court granted summary judgment in favor of Ocwen on all remaining claims. AA037-AA064. Also on July 5, 2023, the district court entered final judgment.   [Dkt. 486]. On August 2, 2023, Appellant timely filed a notice of appeal. [Dkt. 489].

## Issues Presented for Review

A. Whether the district court erred in dismissing Ms. Freeman's FCRA claim for failure to adequately plead that she raised a credit dispute with a credit-reporting agency and that the dispute was transmitted to a furnisher when Ms. Freeman alleged she raised a dispute with a credit-reporting agency, alleged that how those agencies transmit disputes to furnishers, and alleged that the specific error in her credit report was not corrected.

B. Whether the district court abused its discretion by dismissing a complaint with prejudice after the first motion to dismiss and when the purportedly missing allegation was known to the plaintiff and easily could have been cured.

C. Whether the district court erred in granting summary judgment against Ms. Freeman on the ground that she had not offered more than "conclusory assertions" to show injury-in-fact rested when Ms. Freeman had submitted evidence that Ocwen harassed her with debt-collection phone calls, filed a wrongful and meritless foreclosure action against her, and disseminated false information about her.

<u>Statement of the Case</u>

I. **Statutory Background**

A. **The Fair Credit Reporting Act (15 U.S.C. § 1681s,** *et seq.***)**

The FCRA was enacted in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). As Congress recognized, "[t]he banking system"—and indeed, much else in our economy—"is dependent upon fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). Thus, since 1973, the FCRA has required credit reporting agencies—such as Experian, Equifax, and Transunion—to adopt procedures to minimize inaccuracies in reports and to correct any inaccuracies brought to their attention by consumers.[1] 15 U.S.C. § 1681e, 1681i. To further ensure that consumer reports are accurate, Congress amended the FCRA in 1996 to also impose "duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute," as well. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009).

---

[1] The three nationwide CRAs are Equifax, Experian, and TransUnion. *See* TransUnion, <u>What is a credit reporting agency?</u>, (last visited Oct. 16, 2023), https://www.transunion.com/credit-reporting-agencies ("There are three credit agencies: TransUnion, Equifax, and Experian.").

As relevant here, the FCRA requires furnishers to conduct an investigation when a consumer disputes the accuracy of her credit report. 15 U.S.C. § 1681s–2(a) – (b). A consumer may trigger that investigation either by raising a dispute directly with the furnisher, *id.* § 1681s–2(a)(8), or by first raising the dispute with a CRA to whom the furnisher sent the inaccurate information, *id.* § 1681s–2(b). In the latter scenario, the furnisher must conduct a reasonable investigation into the disputed information once notified of the dispute by the CRA and correct any inaccuracies it finds. *Id.* § 1681s–2(a), (b)(1); *see also Westra v. Credit Control*, 409 F.3d 825, 827 (7th Cir. 2005). Only these disputes—that is, those raised first with a CRA—are privately enforceable. *See* 15 U.S.C. § 1681s–2(c); *see also Perry v. First Nat'l Bank*, 459 F.3d 816 (7th Cir. 2006) (stating Section 1681s–2(c) specifically exempts violations of § 1681s–2(a) from private civil liability).

### B.  The Fair Debt Collection Practices Act (15 U.S.C. § 1692, *et seq.*)

Congress enacted the Fair Debt Collection Practices Act ("FDCPA") in 1977 as part of a bipartisan effort to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices." *See* S. Rep. No. 95-382, at 1-2 (1977). To combat this problem efficiently, Congress intended the FDCPA to be "primarily self-enforcing; consumers who have been subjected to collection abuses will be enforcing compliance." S. Rep. No. 95-382, at 5 (1977). The FDCPA applies only to third-party "debt collectors", such as mortgage servicing companies that obtain servicing rights after default, not original creditors seeking repayment. *See* 15 U.S.C. § 1692a(6); *see also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017) ("All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'"). It is a "strict liability" statute unless the debt collector successfully establishes a bona fide error defense. *See* 15 U.S.C. § 1692k(c). "[A] collector need not be deliberate, reckless, or even negligent to trigger liability." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009).

Because Congress recognized its inability to foresee or define all possible types of collection abuses, the FDCPA establishes general standards of proscribed collection conduct and restricts certain specific collection acts deemed abusive. *See* S. Rep. No. 382 (1977). Specifically prohibited conduct includes directly contacting a debtor known to be represented by an attorney, publishing lists of consumers who allegedly refuse to pay,  and contacting anyone about a debt other than the debtor. *See* 15 U.S.C. § 1692c(a)-(b) and 15 U.S.C. § 1692d(3); *see also* Reg. F § 1006.6(b), (d). In turn, the general prohibitions address "conduct the natural consequence of which is to harass, oppress, or abuse any person" including "false, deceptive, or misleading" representations. 15 U.S.C. §1692d and 15 U.S.C. §1692e. The Regulation F Official Interpretations–the regulation that implements the FDCPA and prescribes rules governing the activities of debt-collectors - explain that a violation of these general prohibitions may be the result of the "cumulative effect of the debt collector's conduct through any communication medium the debt collector uses, including in-person interactions, telephone calls, audio recordings, paper documents, mail, email, text messages, social media, or other electronic media." 12 C.F.R. 1006.14 (a)(2). In other words, conduct that would not violate either the general or specific prohibitions on its own can still violate the general prohibition when "evaluated cumulatively with other conduct." *See id.*

In the FDCPA's declaration of purpose, Congress stated that debt collection abuses were "abundant" and "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *See* 15 U.S.C  § 1692(a). Indeed, Congress recognized that "the suffering and anguish which [third-party debt collectors] regularly inflict is substantial." S. Rep. No. 95-382, at 1-2 (1977). Yet the harms Congress sought to address have persisted, and this Court has recognized that Congressional judgment in these matters is "'instructive and important'" because Congress "is particularly suited 'to identify intangible harms that meet minimum Article III requirements.'" *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th

14

Cir. 2020) (Barrett, J.), *cert denied*, --- U.S. ----, --- S.Ct. ----, 209 L.Ed.2d 568 (2021)) (quoting *Spokeo*, 136 S. Ct. at 1549). In light of this understanding, this Court has found standing based upon a debt collector's unwanted automated text messages in a TCPA case and under the FDCPA based on reporting of inaccurate credit information to credit reporting agencies. *Id.*; *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1153-54 (7th Cir. 2022).

## II.   Factual Background

*Ocwen's history of bankruptcy-related errors in record keeping.* Ocwen is one of the largest servicers of subprime mortgage debt in the country. The company has a long history of concerns about the integrity of its record keeping systems and its handling of loans involved in a Chapter 13 bankruptcy proceeding.[2] In 2013, the Consumer Financial Protection Bureau, 49 states, and the District of Columbia sued Ocwen for widespread misconduct related to the servicing of single-family residential mortgages. The case eventually ended in a consent decree requiring Ocwen to clean up its procedures to reduce inaccuracies in borrowers' account information and, in relation to loans involved in Chapter 13 bankruptcy cases specifically, ensure that "the debtor is treated as being current so long as the debtor is making payments in accordance with the terms of the then-effective confirmed [bankruptcy] plan"; and that "as of the date of ... entry of an order granting the debtor a discharge, there is a reconciliation of payments received with respect to the debtor's obligations during the case and appropriately update the Servicer's systems of record."

Ocwen's practices that prompted governmental enforcement action against it, and that form the foundation of the claims at issue herein, have previously reached this Court. In *Saccameno v.*

---

[2] A chapter 13 bankruptcy enables individuals with regular income to develop a plan to repay their debts by making installment payments over a period of years. Perhaps most significantly, a chapter 13 bankruptcy offers individuals an opportunity to save their homes from foreclosure. By filing under this chapter, individuals can stop foreclosure proceedings and may cure delinquent mortgage payments over time. Nevertheless, they must still make all mortgage payments that come due during the chapter 13 plan on time.

*U.S. Bank Nat'l Ass'n,* Ocwen also engaged in a similar campaign of harassment and attempted foreclosure against a borrower following her successful completion of a Chapter 13 bankruptcy. 943 F.3d 1071 (7th Cir. 2019).

   ***Ms. Freeman's bankruptcy and Ocwen's debt-collection efforts.*** Demona Freeman is one of the victims of Ocwen's poor record-keeping. Unable to alone carry the weight of her family's financial obligations while her husband was unable to work, Ms. Freeman fell behind on her home mortgage, and Ocwen soon began foreclosure proceedings. To keep her home, she sought the protection of the bankruptcy court and, on April 23, 2012, began a Chapter 13 plan under which she was required to cure her default while simultaneously maintaining her ongoing monthly mortgage payments. *See* 11 U.S.C. § 1322(b)(5).

   On April 12, 2017, the Chapter 13 Trustee filed a notice of final cure payment.  The Trustee's notice meant that Ms. Freeman had completed all payments required under her bankruptcy plan and successfully paid the full amount to cure the prepetition default ($12,378.19 in arrearage). AA117.  Ocwen agreed: On April 24, 2017, it filed a Response to Notice of Final Cure Payment affirming under the penalties for perjury Ms. Freeman "had paid in full the amount required to cure the prepetition default on [its] claim" and was "current on all postpetition payments consistent with $1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow and costs." AA120. Ms. Freeman remained current on all her payments, and on November 21, 2017, the bankruptcy court entered an order of discharge, meaning Ms. Freeman had completed all requirements of her Chapter 13 plan by satisfying her pre-petition arrears, maintaining her ongoing mortgage obligations in the interim, and that Ocwen was henceforth to treat the loan as current in all respects. *See* AA123; *see, e.g., In re Feliciana Figueroa,* Case No. 09-07725 2021 WL 5815641 (Bankr. D. P.R. Dec. 7, 2021) (finding that a mortgage creditor violated the discharge injunction

when it failed to appropriately respond to a Notice of Final Cure Payment and misapplied mortgage payments during and immediately following the conclusion of the bankruptcy).

Although Ocwen had possession of the discharge order—and had even told the bankruptcy court that Ms. Freeman was current on her payments—its internal records reflected otherwise. At the time the order of discharge was entered, Ocwen's records erroneously stated that Ms. Freeman was nine payments behind. *See* AA249, ¶ 28(a). In addition, Ocwen had applied funds towards a "pre-suspense" account, fees, and charges instead of principal, interest, and escrow as required by Ms. Freeman's confirmed Chapter 13 plan. *See* AA254, ¶ ¶ 24-25; A255, ¶ ¶ 1-13. Ocwen would eventually place the blame for these errors on an employee who failed to remove disallowed amounts - without identifying who said individual is—the same defense it invoked (and that was rejected) in *Saccameno*, 943 F.3d at 1086 ("[Ocwen] continues to place most of the blame on what it calls "an isolated 'miscoding' error committed by a lone employee...Ocwen cannot pin this case on Marla. Her error was one among a host of others, and each error was compounded by Ocwen's obstinate refusal to correct them.").

But in 2018, Ocwen was not admitting any mistakes. Instead, it aggressively sought to collect from Ms. Ocwen, —despite there being no past-due debt to collect. This included inaccurately reporting the loan as in default (more than 90 days past due), with a massive past due balance, and without any indication it had been previously disputed by Ms. Freeman on no less than four different occasions, to the CRAs for nearly a year straight. AA170-AA193, AA219, ¶ 32. For example, on February 4, 2018, Ocwen reported the loan as being more than 180 days delinquent and with a past due balance of $9190. AA179. Ocwen's inaccurate reporting was then disseminated by the CRAs to third parties, including potential lenders, on numerous occasions. AA236-AA239. For instance, Ocwen's inaccurate reporting on February 4, 2018 was provided to Quicken Loans by Trans Union, LLC on February 24, 2018. *Id.*

In addition, Ocwen commenced making dozens of automated and non-automated collection calls - many at times in which Ocwen knew Ms. Freeman was represented by counsel. AA140-AA155. Ocwen also began directing its agents to perform exterior property inspections at Ms. Freeman's home and place notices on her door knob called "door knocks". AA194-AA212; *see also* AA231.

Ocwen also began mailing Ms. Freeman delinquency notices, pre foreclosure statements, and monthly mortgage statements seeking to collect amounts associated with the purported past due balance. AA156-AA169. For example, in April of 2018, Ms. Freeman received a mortgage statement indicating the loan was past due in the amount of $72,219.58. AA226. Then in May of 2018–though Ms. Freeman had not made any special payments–Ocwen sent a mortgage statement reporting that the loan was now past due in the amount of $4,613.00–over $65,000 less for no apparent reason. AA228.

Ocwen then went further. On February 21, 2018, Ocwen filed a "Notice of Relief from Stay and Abandonment"--a preliminary filing to initiate a foreclosure action–even though Ms. Freeman was current on her payments. *See* AA252, ¶¶ 90, 91. On February 28, 2018, Ms. Freeman contacted Ocwen to inquire about a copy of the Notice of Relief she had received. AA225.  Ocwen denied sending the documents, advised she should contact her bankruptcy attorney about payments she had missed, and informed her the loan was 119 days past due. *Id.*

On May 25, 2018, despite Ms. Freeman's previous protestations about being current and its prior representation the same payments had been made, Ocwen concluded the loan was in default because "...payments [for] 11/15, 1/16, 3/16, 9/16, 3/17 were not made..." AA227. On June 4, 2018, Ocwen self-identified it had been over collecting, misapplying funds to, escrow from Ms. Freeman resulting in an escrow surplus of $3,190.52. AA229.

After having accepted Ms. Freeman's payments for a full year–since the Trustee reported her as current–Ocwen began rejecting them in June of 2018. AA259. It claimed that a single payment was not enough to cure her supposed default. AA258, ¶ 1-19. Undeterred, Ms. Freeman continued trying to make her payment by check through November of 2018. AA235, ¶ ¶ 21-23; AA256, ¶ ¶ 4-11. But those payments were never deposited. *Id.* Thus, the erroneous default continued to grow.

On August 15, 2018, Ocwen pursued a second foreclosure action in the Hamilton County Superior Court under Cause No. 29D03-1808-MF-007526. AA128-AA132. Ocwen now admits it did so in error. AA243. On January 11, 2019, nearly a month after the initiation of these proceedings, Ocwen continued its efforts to foreclose by seeking the dismissal of the affirmative defenses raised by Ms. Freeman in her Answer. AA133-AA139. On January 23, 2019, the second foreclosure action was dismissed without prejudice.

Ocwen's conduct caused Ms. Freeman emotional distress, marital instability, and to live in fear of losing her home. AA213, AA233. This was responsive to both individual acts and the cumulative effect of the conduct continuing for such a long duration with correction. *Id.* For instance, when Ms. Freeman received the foreclosure complaint filed on August 15, 2018, she "could hardly breath [sic], became nauseated, and began trembling." AA216, ¶ 14.

### III.   Procedural History

#### A.  Commencement of the Case

Ms. Freeman commenced this suit on December 6, 2018, asserting claims under the FCRA and FDCPA against Ocwen. [Dkt. 1]. Before any motion practice began, Ocwen filed an answer, including to Ms. Freeman's FCRA claims. [Dkt. 18]. Ms. Freeman then filed, without any opposition, two amended complaints that added allegations addressing post filing conduct and claims for violation of the Ind. Deceptive Consumer Sales Act, I.C. § 14-5-0.5, et seq., and the Telephone Consumer Protection Act. Ms. Freeman then filed a third amended complaint that only corrected

errors in how exhibits to the complaint had been compiled, without any substantive change. (The district court denied leave to further supplement).

### B. Dismissal of Count V: Violation of the Fair Credit Reporting Act

Although nothing in Ms. Freeman's FCRA claim had changed, after she filed her third amended complaint–and after Ocwen *twice* filed an answer to the FCRA claim–Ocwen moved to dismiss the FCRA claim. [Dkt. 18, 29, 86]. As relevant to this appeal, Ocwen argued Ms. Freeman failed to adequately allege that she disputed her account with any consumer reporting agency or that such dispute was transmitted by a consumer reporting agency. [Dkt. 87]

Ms. Freeman responded by citing to the paragraphs where these allegations were contained, and noting the composition of the credit reporting industry and mechanics of the credit reporting dispute process. [Dkt. 90]. Specifically, she highlighted the following allegations relevant to her FCRA claim:  (1) "On information and belief, Ocwen has improperly and incorrectly reported to various CRAs that the Loan was and/or is "90-119 Days Late." AA097, ¶ 222; (2) "This reporting was disputed by Freeman on several occasions[] ... ." *Id.* at ¶ 223; (3) "Ocwen willfully and/or negligently violated 15 U.S.C.A. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of Freeman's disputes from one or more consumer reporting agencies[] ... ." AA107, ¶ 279. Ms. Freeman also expressly requested that if the court found her complaint to be deficient in some respect, leave to amend be granted.

On December 12, 2020, the district court dismissed Ms. Freeman's FCRA claim with prejudice and denied her leave to amend. AA001-AA036.  The district court held, "[t]he allegations upon which Ms. Freeman relies consist of legal assertions, legal conclusions, legal and general factual background information, and threadbare recitations of the elements of the claim. The allegations are devoid of nonconclusory factual assertions to support the legal elements of a dispute being made

to a credit reporting agency, and the credit reporting agency in turn notifying Ocwen of the dispute." AA030. The district court did not specifically identify what type of factual assertions it believed should have been included.

The district court also did not specifically address Ms. Freeman's request for leave to amend the complaint. But in explaining why it dismissed with prejudice, it reasoned that Ms. Freeman had already amended the complaint twice (though neither amendment concerned the FCRA claim) and because the deadline to amend pleadings in the scheduling order had passed (though the motion to dismiss the FCRA claim came so late only because Ocwen had twice answered the complaint before beginning motion practice).

### C.  Entry of Summary Judgment for Ocwen.

On April 25, 2022, Ocwen sought summary judgment on all remaining claims. [Dkt. 269]. With respect to Ms. Freeman's FDCPA claims, Ocwen argued Ms. Freeman lacked Article III standing. *Id.* In response, Ms. Freeman pointed to both tangible harms and the historical analogues - including, without limitation, attorneys' fees incurred in defending against the wrongful second foreclosure filing, as well as intangible harms akin to invasion of privacy or intrusion upon seclusion, defamation and false light, and abuse of process in filing the wrongful second foreclosure action. *See* [Dkt. 344].

On July 5, 2023, the district court entered summary judgment for Ocwen. AA036-AA064. "Regarding Freeman's argument that she has been concretely injured because her FDCPA claim is similar to other recognized common law claims, Freeman's conclusory assertions are not supported by admissible evidence of actual injury, and at the summary judgment stage, Freeman must designate admissible evidence to move forward. Conclusory statements are not enough." AA059.

## Summary of Arguments

In its Order on Motion to Dismiss, the district court erred in dismissing Ms. Freeman's claim for relief under § 1681s–2(b) of the FCRA on the basis she failed to adequately allege a dispute being made to a credit reporting agency and the credit reporting agency in turn notifying Ocwen of the dispute. Ms. Freeman plausibly alleged a claim for relief under 15 U.S.C. § 1681s–2(b) of the FCRA. The operative complaint contains non-conclusory allegations that gave Ocwen fair notice that Ms. Freeman sought relief under 15 U.S.C. § 1681s–2(b) and the grounds upon which her claim rested. In reaching its decision, the district court failed to draw all reasonable inferences in favor of the plaintiff. The district court's decision is also contrary to the rationale provided by the Court in *Lang v. TCF Nat'l Bank*, 249 Fed. Appx. 464, 466 (7th Cir. 2007). To require a consumer to plead additional specificity, allege more about a furnisher's receipt of a consumer's dispute from a credit reporting agency or identify exactly which credit reporting agency provided notice to the furnisher, to bring a claim under § 1681s–2(b) of the FCRA would create a untenable pleading standard. The FCRA does not require credit reporting agencies to provide consumers with confirmation or information about whether or when they satisfy their obligation to forward disputes to furnishers.

In its Order on Defendants' Motions to Dismiss, the district court abused its discretion in denying Ms. Freeman leave to amend so as to cure purported deficiencies with her claim for relief under § 1681s–2(b) of the FCRA. As supported by Ocwen's filing of an answer to the same allegations on two prior occasions, Ms. Freeman was not previously aware of any purported deficiencies with her FCRA claim and was not provided any prior opportunity to cure them. Further, the purported deficiencies were easily curable and no countervailing consideration justified the denial of leave.

In its Order on Motions for Summary Judgment, the district court erred in concluding Ms. Freeman lacked Article III standing to pursue relief. Ocwen's individual collection actions and the

cumulation of its conduct over time, caused Ms. Freeman concrete intangible harm analogous to the common law torts of intrusion upon seclusion, invasion of privacy, defamation, and abuse of process. Ms. Freeman also possesses Article III standing because she has suffered concrete tangible harm overlooked by the district court.

## ARGUMENT

### I.   Ms. Freeman Plausibly Alleged a Claim for Relief Under Section 1681s-2(b) of the FCRA.

#### A.   Standard of Review

A district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is reviewed *de novo*, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff. *See Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). "To avoid dismissal, a complaint must 'state a claim to relief that is plausible on its face.'" *Bancorpsouth, Inc. v. Fed. Ins. Co.*, 873 F.3d 582, 586 (7th Cir. 2017*) (quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)*). At bottom, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Thus, if the complaint is plausible, the plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).

#### B.   Ms. Freeman Stated A Claim to Relief That Was Plausible On Its Face.

A claim under Section 1681s-2(b), contains four basic elements: (1) plaintiff identified an inaccuracy in her credit report; (2) plaintiff disputed the inaccurate reporting; (3) the credit reporting agency notified the furnisher of the information; and (4) the furnisher failed to conduct a reasonable investigation or the requirements set forth in 15 U.S.C. § 1681s-2(b)(1)(A)-(E). *See, e.g., Gorman v.*

*Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162 (9th Cir. 2009); *Westra v. Credit Control of Pinellas*, 409 F.3d at 827.

Here, the operative Complaint contains the following allegations specifically relevant to her FCRA claims: (1) "On information and belief, Ocwen has improperly and incorrectly reported to various CRAs that the Loan was and/or is "90-119 Days Late." AA097, ¶ 222; (2) "This reporting was disputed by Freeman on several occasions[] ... ." *Id.* at ¶ 223; (3) "Ocwen willfully and/or negligently violated 15 U.S.C.A. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of Freeman's disputes from one or more consumer reporting agencies[] ... ." AA107, ¶ 279; (4) "The major national CRAs – Trans Union LLC, Equifax Information Services, LLC, and Experian Information Solutions, Inc. – also collaborated and developed a browser-based software system that allows the CRAs to electronically notify furnishers easily and quickly of disputed credit reporting information, and for furnishers to easily and quickly respond to such disputes..." AA073, ¶ 47; (5) "ACDVs are notifications initiated by a CRA, and transmitted to a furnisher, in response to a consumer dispute, and are the primary method the CRAs use to fulfill their statutory obligation to notify furnishers of disputed information of consumers' disputes." *Id.* at ¶ 49; and (6) "Ocwen regularly and in the ordinary course of business furnished information to one or more consumer reporting agencies about Freeman's transactions and is, therefore, a "furnisher" as that term is used in 15 U.S.C.A. § 1681s-2." AA074, ¶ 54.

Together, Ms. Freeman plausibly alleged a claim for relief under 15 U.S.C.A. § 1681s-2(b), that she disputed inaccurate reporting and that Ocwen received those disputes from the CRAs - precisely what the district court concluded she did not. This provided Ocwen with "fair notice" beyond a "speculative level" and to require more would be akin to the creation of a heightened pleading standard commensurate with Federal Rule of Civil Procedure 9. *See Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir.2007) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127

S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)); *see also Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and N.W. Ind.,* 786 F.3d 510 (7th Cir. 2015) ("The conclusion that Megan needed to allege in her complaint facts supporting specific legal theories was problematic, to say the least. Even after *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ctf. 1937, 173 L.Ed.2d 868 (2009), the Federal Rules of Civil Procedure do not require code pleading.").

The district court nonetheless accepted Ocwen's argument that Ms. Freeman failed to state a plausible claim. The district court accepted Ocwen's argument that Ms. Freeman had not alleged that she raised a dispute with a CRA or that a CRA transmitted the dispute to Ocwen. In the district court's view, the allegations that addressed those requirements consisted only of "legal assertions, legal conclusions, legal and general factual background information, and threadbare recitations of the elements of the claim." AA030.

But this conclusion cannot be reconciled with the well-pleaded allegations just discussed nor the mechanics of the credit reporting dispute process.  A conclusory allegation is one that does no more than restate the elements of a claim. *See, e.g., LaBella Winnetka, Inc. v. Vill. of Winnetka,* 628 F.3d 937, 943 (7th Cir. 2010) (allegation that plaintiff "has no adequate state law remedy available to it to address this unlawful conduct" is conclusory for purposes of substantive due process claim). Such generalized statements cannot support a claim because they "do nothing to distinguish the particular case that is before the court from every other hypothetically possible case in that field of law" and thus fail to provide the notice that Rule 8 demands. *See Swanson v. Citibank, N.A.,* 614 F.3d 400, 405 (7th Cir. 2010).

Ms. Freeman's allegations do not suffer from those defects. She identified the specific information that Ocwen reported ("that the Loan was and/or is '90-119 Days Late'"), AA097, ¶ 222; she alleged that she disputed that information with CRAs, AA097, ¶ 222, AA107, ¶ 279; she alleged

that Ocwen received the dispute, AA107, ¶ 279; and she alleged that Ocwen failed to correct the information, *id.* at ¶ 273. This alone shows that Ocwen had ample notice of the claims - something it never disputes. But Ms. Freeman went further and even attached to the complaint pre-litigation correspondence *written by Ocwen's counsel* that included copies of the disputes transmitted by the CRAs to Ocwen—the very thing that Ocwen claimed it needed to defend against Ms. Freeman's claims. Ex. I. That historical reality—Ocwen long possessed the purportedly missing information— may explain why Ocwen twice answered the complaint before moving to dismiss based on purported lack of notice.

But even assuming it were somehow appropriate for the district court to disregard Ms. Freeman's direct allegations, the court also erred by failing to draw all reasonable inferences in Ms. Freeman's favor, as required at this stage. *See Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). Ms. Freeman, in addition to directly alleging that she raised a dispute with the CRAs, also alleged *how* CRAs transmit disputes to furnishers like Ocwen. *See* AA072-AA073, ¶ ¶ 47–49. Those allegations would have been pointless if Ms. Freeman hadn't actually raised a dispute with the CRAs.[3] Thus, the district court should have drawn the more-than-plausible inference—from the allegation that Ms. Freeman disputed the information, the allegations concerning the mechanics of how CRAs transmit disputes to furnishers like Ocwen, and the allegation that the information wasn't corrected—that Ms. Freeman did, in fact, raise a dispute with a CRA and that Ocwen received, but failed to correct, the inaccuracy.

Indeed, courts have, for that reason, consistently rejected that a consumer must allege that a dispute was transmitted from a CRA to a furnisher. *See, e.g., Lang v. TCF Nat'l Bank*, 249 Fed. Appx. 464, 466 (7th Cir. 2007); *Huber v. TransUnion LLC*, 2012 WL 3045686 (S.D. of Ind. July

---

[3] A dispute under the FCRA is not actionable unless it is made indirectly through the CRAs. *See* 15 U.S.C. § 1681s-2(c).

26

25, 2012) ("If a plaintiff alleges that she notified a CRA that she disputed specific information which the CRA had reported regarding her credit, she need not also allege that the CRA notified the furnisher of the dispute because it is the CRA's obligation under the law to do so."); *Purcell v. Bank of Am.*, No. 1:09 CV 356, 2010 WL 4955542 (N.D. Ind Nov. 30, 2010) ("In order to survive a motion to dismiss for a Section 1681s–2(b) claim, a plaintiff does not have to plead that a CRA notified the furnisher of the dispute.") (reversed and remanded on other grounds).

## II.   The District Court Abused its Discretion In Denying Ms. Freeman Leave to Amend So to Cure Purported Deficiencies with her FCRA Claim.

### A.  Standard of Review

There is a strong presumption in favor of giving plaintiffs at least one opportunity to cure a pleading deficiency with an amendment in accordance with Rule 15. Thus, denying a plaintiff that opportunity after a first motion to dismiss carries a high risk of being deemed an abuse of discretion. *See Runnion*, 786 F.3d at 519–20. The law is clear that a court should deny leave to amend only if it is certain that amendment would be futile or is otherwise unwarranted. *See Zimmerman v. Bornick*, 25 F.4th 491 (7th Cir. 2022) (citing *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

### B.  The District Court denied leave to amend without any justifying reason.

The district court dismissed Ms. Freeman's FCRA claim with prejudice and denied her request for leave to amend, noting that "Freeman already ha[d] been given opportunity to amend her Complaint twice [before] ... ." AA036. Although Ms. Freeman did receive leave to file two amended complaints, those amendments did not alter her FCRA claim. Moreover, at the time those amendments were sought, Ms. Freeman had no reason to believe there were any deficiencies in her FCRA claim, and therefore had no reason to amend it, because Ocwen had answered that claim, and the allegations remained unchanged from date of filing. The district court's Order also noted

that the deadline for amendment had expired. However, the deadline expired on June 7, 2019 – more than three months before Ocwen even filed its Motion to Dismiss. *See* [Dkt. 41, 86]. Again, at that time, Ms. Freeman had no reason to know there was any alleged deficiency in her FCRA claim.

"[R]epeated failure[s] to cure deficiencies by previously allowed amendments"' are a factor to be considered in determining whether leave to amend should be granted. *See Tragarz v. Keene Corp.*, 980 F.2d 411, 431–32 (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). However, given that Ocwen answered the FCRA claim, Ms. Freeman had no reason to think there was any deficiency to cure when she filed her first and second amended Complaints. In other words, there was no failure to cure any deficiency. As to the timing of Ms. Freeman's request to amend, "delay is an insufficient basis for denying a motion to amend unless this delay results in undue prejudice to the opposing party." *Tragarz*, 980 F.2d at 432 (citing *Textor v. Board of Regents,* 711 F.2d 1387, 1391 (7th Cir. 1983)). In *Dubicz v. Commonwealth Edison Co.*, the district court abused its discretion in denying leave to amend where the plaintiffs sought leave eight months after the dismissal of their first amended complaint. 377 F.3d 787, 792 (7th Cir. 2004). This court stated that "[d]elay must be coupled with some other reason"–typically "prejudice to the non-moving party"–to justify denial of leave to amend. *Id.* There is no basis in the record for any finding that amendment of the FCRA claim would have prejudiced Ocwen in any way.

In addition, the rule that amendments should be liberally allowed is based in part on policy considerations that favor deciding cases on the merits whenever possible absent countervailing considerations, such as those discussed above. *See, e.g., Runnion*, 786 F.3d at 520; *McCarthy v. PaineWebber, Inc.*, 127 F.R.D. 130, 132 (N.D. Ill. 1989) (citing *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1334 (7th Cir.1977)). Here, the district court did not identify any specific countervailing consideration justifying its refusal to give Ms. Freeman an opportunity to cure –

because none existed. The purported deficiencies were plainly curable, and discovery was still open. In the absence of such countervailing considerations, Rule 15 required that leave to amend be granted at least once to address an entirely curable problem with the complaint. *See Smith v. Union Pacific R. Co.*, 474 Fed. Appx. 478, 481 (7th Cir. 2012) (citing *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010)). The district court's cryptic citation to *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 2015), for the proposition that a Rule 12(b)(6) dismissal "is a dismissal with prejudice" sheds no light on its rationale and does not support the denial of leave to amend. Applying the district court's logic would provide an incentive for defendants to wait and move for judgment on the pleadings after the expiration of the deadline to amend, rather than move to dismiss at the outset of a case, in order to deprive plaintiffs of the opportunity to cure pleading deficiencies. This further clashes with the "'federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities.'" *Runnion*, 786 F.3d at 520 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

## III.  The District Court Erred in Granting Summary Judgment in Favor of Ocwen

### A. Standard of Review

An appellate court reviews a grant of summary judgment *de novo. Lapka v. Chertoff*, 517 F.3d 974, 980 (7th Cir. 2008). "All reasonable inferences regarding the facts must be drawn in the light most favorable to the non-moving party." *Richards v. Combined Ins. Co. of America*, 55 F.3d 247, 251 (7th Cir. 1995).

### B. Ms. Freeman Has Standing To Pursue Her FDCPA Claims.

#### 1.  *The Supreme Court's guidance in TransUnion, and this Court's precedent, compels a finding that Plaintiff has standing.*

Article III standing requires the "plaintiff must have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "A 'concrete' injury must be 'de facto'; that is, it must actually exist," as opposed to being hypothetical or speculative. *See Spokeo*, 136 S. Ct. at 1548. Traditional tangible harms, such as physical or monetary harm, meet the concreteness requirement. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204 (2021). So do "intangible" harms if the plaintiff's injury bears a "close relationship" to the sort of harms traditionally recognized by American courts, such as reputational harm. *See Spokeo*, 578 U.S. at 341. The close-relationship inquiry looks for "a close historical or common-law analogue" to the alleged injury but does not require an "exact duplicate." *TransUnion*, 141 S. Ct. at 2204. When determining if a statutorily identified, intangible harm has a close-but-not-exact match in American history or at common law, this Court has looked to the kind of injury the statute protects, not the degree of harm suffered. *Gadelhak*, 950 F.3d at 462.

> a) *Ms. Freeman has suffered concrete intangible harms "with a close historical or common-law analogue".*

> (1) *Defamation and false light.*

In *TransUnion*, the Supreme Court held that plaintiffs whose credit reports had been disseminated had standing because the harm caused by the dissemination of a credit report with misleading information related closely to the reputational harm associated with defamation. *TransUnion*, 141 S. Ct. 2208-13. Similarly, in *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir. 2022), this Court held that plaintiffs had standing because the harm caused by the debt collectors' dissemination of false information to the credit reporting agencies is closely related to the reputational harm caused by defamation. *Ewing*, 24 F.4th 1154. Here, Ocwen's repeated dissemination of inaccurate credit reporting to the effect her loan was in default, and without any indication of her prior disputes, caused Ms. Freeman the same reputational harm. For this reason

alone, Ms. Freeman possesses Article III standing to pursue relief. *See Markakos v. Medicredit, Inc.*, 997 F.3d 778 (7th Cir. 2021) ("For example, an FDCPA violation might cause harm [sufficient for standing] if it...affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt.") (citing *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020)). Ocwen's incorrect reporting had an undeniably negative effect on Ms. Freeman's credit, at least  plausibly resulted in her being denied credit and, later, not seeking credit opportunities out of fear of embarrassment. *See* AA219 ¶¶ 33-34; AA233¶¶ 2-5.

Similarly, the harm caused to Ms. Freeman by Ocwen's pursuit of foreclosure without cause is akin to the harm traditionally remedied by the torts of defamation and false light. *See, e.g., Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312, 324 (3d Cir. 2018) ("Common-law privacy rights were historically understood as being invaded by ... publicity that unreasonably places the other in a false light before the public ....") (citing Restatement (Second) of Torts § 652A(2)(a)-(d) (1977)). The interest protected by the common-law tort of false light is "the interest of the individual in not being made to appear before the public in an objectionable false light or false position, or in other words, otherwise than he is." Restatement (Second) of Torts § 652E, cmt. b (1977). Here, Ocwen's foreclosure filings - the initiation of the second foreclosure action in particular, were filings that communicated to the public that Ms. Freeman was in default on her loan when in fact, she was not. Thus, it portrayed Ms. Freeman in a false light that was highly offensive to her and would be to any reasonable person. *See* Restatement (Second) of Torts § 652E (1977). And indeed, such reputational harm and its effects are among the types of harm the FDCPA was enacted to protect against. As touched on above, in enacting the FDCPA, Congress recognized that abusive debt-collection practices may intrude on another's privacy interests. *See* 15 U.S.C. § 1692(a) ("Abusive debt collection practices contribute to ... marital instability, ... and to invasions of individual privacy."); *see also Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018)

("Congress enacted the FDCPA to protect against the abusive debt collection practices likely to disrupt a debtor's life." (internal quotation marks and citation omitted)).

*(2) Invasion of privacy and intrusion upon seclusion.*

Ms. Freeman has also suffered concrete intangible harm naturally flowing from the frequency and duration of Ocwen's collection actions, and its completion of unnecessary and unwelcome "door knocks", that bear a close relationship to the harm traditionally recognized as invasion of privacy or intrusion upon seclusion. The same is true with respect to Ocwen's individual act of pursuing foreclosure without cause. At common law, courts readily recognized injury arising from the tort of intrusion upon seclusion—a tort protecting against defendants who intrude into the private solitude of another. *See* Restatement (Second) of Torts § 652A(2)(a) (1977); *see also id.* § 652B. "This tort imposes liability for intrusions on a plaintiff's privacy, such as when a defendant demands payment of a debt by making repeated telephone calls 'with such persistence and frequency as to amount to a course of hounding the plaintiff.'" *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191 (10th Cir. 2021) (quoting Restatement, *supra*, § 652B cmt. d.). "And the Supreme Court recently cited 'intrusion upon seclusion' as a harm 'traditionally recognized as providing a basis for [a] lawsuit[ ] in American courts.' *Lupia*, 8 F.4th at 1191 (quoting *TransUnion LLC*, 141 S. Ct. at 2204 and citing *Gadelhak*, 950 F.3d at 462).

In *Gadelhak*, AT&T's automated device sent the plaintiff five unwanted text messages asking survey questions. The plaintiff brought a putative class action against AT&T for violating the Telephone Consumer Protection Act. On appeal, the Court considered whether the five unwanted text messages constituted a concrete injury for Article III purposes and ultimately held that they did. Looking for an analogous common law harm, this Court pointed to the tort of intrusion upon seclusion, noting that courts have "recognized liability for intrusion upon seclusion for irritating intrusions – such as when 'telephone calls are repeated with such persistence and frequency as to

amount to a course of hounding the plaintiff.'" *Gadelhak*, 950 F.3d at 462 (quoting Restatement, *supra*, § 652B cmt. d.) The Court concluded that "[t]he harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy." *Gadelhak*, 950 F.3d at 462.

Similarly here, Ocwen's placement of over twelve collection calls within a month, alone and in conjunction with its other collection efforts that persisted for over a year, intruded upon Ms. Freeman's seclusion, and caused her to live in fear of losing her home, in a way found to confer standing elsewhere. *See supra* Subsection III(B)(1)(a)(2). This intrusion is far more invasive than five unwanted text messages or one single phone call – both of which have been found to confer standing based on their similarity to intrusion upon seclusion. *See Gadelhak*, 950 F.3d 458; *see also Lupia*, 8 F.4th at 1192. Further, the invasion of privacy and intrusion upon seclusion is the exact type of harm that Congress chose to make legally cognizable under the FDCPA. In enacting the FDCPA, Congress recognized that abusive debt-collection practices may intrude on another's privacy interests. *See* 15 U.S.C. § 1692(a) ("Abusive debt collection practices contribute to … invasions of individual privacy."); *see also Cohen*, 897 F.3d at 81 ("Congress enacted the FDCPA to protect against the abusive debt collection practices likely to disrupt a debtor's life." (internal quotation marks and citation omitted)).

### (3) Abuse of process.

Additionally, the harm caused to Ms. Freeman by Ocwen's second foreclosure action bears a close relationship to the harm caused by commonly recognized torts related to unjustifiable litigation. While this Court has not encountered the question, the Eighth Circuit has held the harm identified by § 1692f(1) of the FDCPA—which prohibits debt collectors' attempts to collect amounts not actually owed—bears a sufficiently close relationship to common law "unjustifiable-litigation torts," including the tort of malicious prosecution, wrongful use of civil proceedings, and abuse of process. *See Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691–92 (8th Cir. 2017); *see also*

*Bertero v. Nat'l Gen. Corp.*, 13 Cal.3d 43, 118 Cal.Rptr. 184, 529 P.2d 608 (1974) (*en banc*) ("The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings."); Restatement (Second) of Torts §§ 674, 681 (June 2017 update); Dan B. Dobbs et al., The Law of Torts § 593 (2d ed. June 2017 update) ("According to most counts, a majority of American courts allow the plaintiff to pursue the wrongful civil litigation claim without showing any special kind of injury."). Here, Ms. Freeman was forced to defend against a fabricated claim of default and subjected to the "panoply of psychological pressures" of not just being named as a defendant without cause but in a cause where loss of her home would be the natural outcome. *See* AA215-216, ¶¶ 12-13, 15; *see also Demarais*, 869 F.3d at 692 ("The harm of being subjected to baseless legal claims, creating the risk of mental distress, provides the basis for both § 1692f(1) claims and the common-law unjustifiable-litigation torts."). Accordingly, the harm caused to Ms. Freeman by Ocwen's wrongful foreclosure filings bears a close relationship to the common-law unjustifiable litigation torts and is thus a concrete injury for Article III standing purposes.

### 2.  *Ms. Freeman has suffered concrete tangible harm.*

Although overlooked by the district court, Ms. Freeman has also suffered concrete tangible harm as result of Ocwen's conduct. Ms. Freeman incurred attorney fees to defend the foreclosure action Ocwen now admits was sought in error. While the district court struck the attorney fee affidavit provided in support, this decision had no bearing on the contents of Ms. Freeman's prior testimony and declaration which plainly states: "As a result of the Second Foreclosure Complaint, I have incurred a debt to Clark, Quinn, Moses, Scott & Grahn, LLP in the amount of $12,067.50 for

attorneys fees related to investigating and defending against the Foreclosure Filings." AA217, ¶ 18; *see Nyberg v. Portfolio Recovery Associates*, No. 17-35315, 2023 WL 4363119 at \*1 (9th Cir. July 6, 2023) (attorney fees incurred by plaintiff in defending against defendant's state-court action demonstrated concrete injury). The Sixth Circuit has held that costs incurred, including attorney fees, to fight a state lawsuit that a debt collector had no right to bring in the first place constitute a concrete, particularized injury for purposes of Article III standing. *See Bouye v. Bruce*, 61 F.4th 485, 490 (6th Cir. 2023); *see also Hurst v. Caliber Home Loans, Inc.*, 44 F.4th 418, 423 (6th Cir. 2022). This tangible injury is distinguishable from the Court's line of cases holding that "confusion leading one to hire a lawyer is insufficient to establish standing." *Choice v. Kohn Law Firm, S.C.*, 77 F.4th 636, 639 (7th Cir. 2023) (citing *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022); *see also Nettles v. Midland Funding LLC*, 983 F.3d 896, 900 (7th Cir. 2020)). Judge Hamilton highlighted the contrast in his dissent in *Choice*:

> Hiring a lawyer to defend yourself in state court in an action where the debt collector violated the FDCPA is readily distinguishable from consulting a lawyer to clear up your own confusion or to file your own lawsuit. The expense of hiring a lawyer to defend a baseless or illegal lawsuit is a concrete injury. It should support standing under the FDCPA.

77 F.4th at 641 (Hamilton, J., dissenting). Here, although Ocwen's conduct did confuse Ms. Freeman at times, the filing of the second foreclosure action was a separate and wrongful action that Ms. Freeman had little choice but to defend. The costs associated with doing so represent a concrete injury-in-fact sufficient to confer standing.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should (1) reverse the order dismissing Ms. Freeman's FCRA claim or, in the alternative, reverse the order with instructions to grant leave to amend the complaint and (2) reverse the order granting summary judgment.

Respectfully submitted,

/s/ *Travis W. Cohron*
Travis W. Cohron, No. 29562-30
**CLARK, QUINN, MOSES, SCOTT, & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
(317) 637-1321
tcohron@clarkquinnlaw.com
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 8,284 words, excluding the parts exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 12-point Baskerville font.

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the appendix.

Dated: October 16, 2023                                    /s/ Travis W. Cohron
                                                            Travis William Cohron

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2023, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: October 16, 2023                                    /s/ Travis W. Cohron
                                                            Travis William Cohron

REQUIRED SHORT APPENDIX

## Table of Contents for Required Short Appendix

Page

Order on Defendants' Motions to Dismiss, dated December 21, 2020....................................AA01

Order on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Leave to File Surreply, dated July 5, 2023.................................................................................................................................................................................................................................................AA037

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DEMONA FREEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-03844-TWP-DLP |
| | ) | |
| OCWEN LOAN SERVICING, LLC, and | ) | |
| BANK OF NEW YORK MELLON | ) | |
| *f/k/a THE BANK OF NEW YORK as successor in* | ) | |
| *interest to JPMorgan Chase Bank, N.A., as* | ) | |
| *Trustee for C-BASS Mortgage Loan Asset-Backed* | ) | |
| *Certificates, Series, 2005-RPI,* | ) | |
| *a/k/a BANK OF NEW YORK*, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**</u>

This matter is before the Court on Motions to Dismiss filed pursuant to Federal Rule of

Civil Procedure 12(b)(6) by Defendants Ocwen Loan Servicing, LLC ("Ocwen") ([Filing No. 86](#)),

and Bank of New York Mellon ("BONY") ([Filing No. 88](#)), (collectively, "Defendants"). Plaintiff

Demona Freeman ("Freeman") initiated this action against the Defendants alleging violation of

numerous federal statutes—the Real Estate Settlement Procedures Act, Truth in Lending Act, Fair

Debt Collection Practices Act, Telephone Consumer Protection Act, and Fair Credit Reporting

Act—as well as for breach of contract and other state law claims. The Defendants separately filed

Motions asking the Court to dismiss the claims asserted in Freeman's Second Amended Complaint.

For reasons explained below, the Court **grants in part and denies in part** the Motions.

## I.      <u>BACKGROUND</u>

The following facts are not necessarily objectively true, but as required when reviewing a

motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all

inferences in favor of Freeman as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Freeman is the owner of real property and improvements located in Westfield, Indiana. In December 2003, she financed the purchase of a home with a loan, evidenced by a note and a mortgage on the home that secures the note. The loan was originated by Sun Mortgage Company, LLC ("Sun Mortgage") and subsequently placed in a mortgage-backed security guaranteed by Fannie Mae[1]. Thereafter, ownership of the note was transferred to Defendant BONY. Defendant Ocwen acts as the agent of and loan servicer for BONY (Filing No. 84 at 2).  Ocwen obtained servicing rights from Litton Loan Servicing around September 1, 2011, a time when Freeman's loan was in default, and began servicing Freeman's loan.

Ocwen employs hundreds of individuals at various call centers throughout the country. These calling centers use automatic telephone dialing systems and computerized account information to track, record, and maintain the hundreds of thousands of debts collected by the company. A significant portion of Ocwen's business operations are dedicated to servicing consumer loans that are in default or foreclosure or were involved in bankruptcy proceedings. *Id.* at 6–7.

Ocwen's regular business practices include making repeated telephone calls, as well as sending notices, statements, bills, and other written correspondence to individuals like Freeman who it believes are responsible for paying past due amounts. To service consumer loans, Ocwen uses automatic telephone dialing systems ("ATDS") and automated/pre-recorded voices ("Robocalls"). Ocwen uses ATDS equipment and software that has the capacity to store or produce

---

[1] The Federal National Mortgage Association, commonly known as Fannie Mae, is a government-sponsored enterprise that makes mortgages available to low- and moderate-income borrowers. It does not provide loans, but backs or guarantees them in the secondary mortgage market. *See* fanniemae.com

telephone numbers to be called, including auto-dialers and predictive dialers. Ocwen has made calls using an ATDS and Robocalls to Freeman's cellular telephone even though she did not provide prior express consent to receive such calls, or Freeman revoked any consent thereafter. *Id.* at 7. Ocwen regularly and in the ordinary course of business furnished information to one or more consumer reporting agencies about Freeman's transactions. Any improper reporting of a mortgage tradeline has a particularly adverse effect on a consumer's credit score (such as Freeman) as it represents the largest and longest active debt obligation in a person's credit history. *Id.* at 9–10.

Freeman began having financial difficulties in 2008 as a result of the financial collapse brought on by the mortgage industry. On April 13, 2009, BONY filed a foreclosure action against Freeman in the Hamilton County (Indiana) Superior Court (the "First Foreclosure Case"). Because of ongoing financial difficulties, Freeman sought to stop the foreclosure and forced sale of her home by filing for bankruptcy. She filed bankruptcy under Chapter 13 of the United States Bankruptcy Code on April 23, 2012, in the United States Bankruptcy Court for the Southern District of Indiana (the "Bankruptcy Case"). The Bankruptcy Case had the effect of staying the First Foreclosure Case. Freeman filed the Bankruptcy Case to cure all pre-petition defaults on her home loan. *Id.* at 10.

Freeman's proposed Chapter 13 bankruptcy Plan was confirmed on April 10, 2013, and later modified by court order pursuant to 11 U.S.C. § 1329 on March 15, 2016. Under the Chapter 13 Plan, she was to make regular monthly payments of $1,740.00 to the Chapter 13 Trustee, from which Ocwen would receive approximately $1,029.00 per month to maintain the monthly payments it was owed plus an additional sum to address all arrearages, which was originally estimated by Freeman to be $15,000.00 (Filing No. 84 at 10–11).

Ocwen appeared in the Bankruptcy Case and participated in those proceedings by filing a Proof of Claim on behalf of BONY. The Proof of Claim asserted a secured claim in the amount of $133,064.46 and an arrearage claim of $22,668.03, which included escrow charges of $6,649.43, a transfer fee balance of $2,328.05, property valuation fees of $121.00 (listed twice for a total of $242.00), foreclosure fees of $225.00, foreclosure costs of $695.36, and a proof of claim fee of $150.00. On September 13, 2012, the United States Trustee filed an Objection to Claim, which detailed approximately three pages of errors in Ocwen's Proof of Claim, including unsubstantiated and objectionable charges. Ocwen did not respond to the Objection. On October 26, 2012, the Bankruptcy Court entered an order on the United States Trustee's Objection to Claim and disallowed the objected to and unsubstantiated fees, expenses, and charges totaling $10,289.84 as well as any fees for preparation of the Proof of Claim or amendments. The Bankruptcy Court's order allowed the balance of Ocwen's Proof of Claim, which was an arrearage in the amount of $12,378.10. *Id.* at 11–12.

On February 22, 2013, Ocwen filed a Notice of Post-petition Fees, Expenses, and Charges to supplement its original Proof of Claim, a portion of which had been disallowed. In this Fee Notice, Ocwen listed a "Bankruptcy Fee," dated January 17, 2013, in the amount of $300.00. Attached to the Fee Notice was an invoice that provided further detail regarding the "Bankruptcy Fee." The invoice indicated the fee (which was to be assessed to Freeman's account) related to a "Response to Objection to Claim – (Rec from Brwr)." In response to the Fee Notice, the United States Trustee filed a motion and explained that Ocwen failed to respond to the Claim Objection, so any fees for a "Response to Objection to Claim" were improper and should be disallowed entirely. Again, Ocwen did not file a response to the Trustee's motion. The Bankruptcy Court set the motion for a hearing, and proper notice of the hearing was issued to Ocwen. However, Ocwen

failed to appear at the hearing. On April 8, 2013, the Bankruptcy Court entered an order granting the Trustee's motion and disallowing the $300.00 fee requested by Ocwen, explaining that all fees relating to the Proof of Claim filed by Ocwen, amendments to the Proof of Claim, and any litigation related to the Proof of Claim or future matters that related to the Trustee's litigation in the case were disallowed and could not be charged to Freeman's mortgage account. *Id.* at 12–13.

On April 12, 2017, the Chapter 13 Trustee filed a Notice of Final Cure Payment, stating the amount to cure the pre-petition default ($12,378.19 in arrearage) had been paid in full and that Freeman had completed all payments required under the Chapter 13 Plan. Soon thereafter, Ocwen filed a Response to Notice of Final Cure Payment, agreeing that Freeman had paid in full the amount required to cure the pre-petition default on Ocwen's claim. Ocwen affirmed Freeman was current with all post-petition payments consistent with §1322(b)(5) of the Bankruptcy Code including all fees, charges, expenses, escrow, and costs. According to Ocwen's Response to Notice of Final Cure Payment, Freeman was to make her next post-petition payment directly to Ocwen on May 1, 2017. Beginning in May 2017, Freeman began making timely and adequate monthly installment payments on the home loan to Ocwen by a series of ACH debits. On November 21, 2017, Freeman obtained an Order of Discharge from the Bankruptcy court. *Id.* at 13–14.

On February 21, 2018, BONY filed a Notice of Relief from Stay and Abandonment in the First Foreclosure Case. This Notice was filed because of information provided to BONY from Ocwen. BONY explained in its Notice that the property at issue had been abandoned from the bankruptcy estate. In reality, the property had not been abandoned from the bankruptcy estate. The filing of the Notice had the effect of restarting the First Foreclosure Case. On March 6, 2018, after receiving messages from Freeman's bankruptcy counsel, BONY acknowledged that the First

Foreclosure Case should be closed. On May 2, 2018, BONY filed a motion to vacate the judgment and to dismiss the case, and on May 5, 2018, the First Foreclosure Case was dismissed. *Id.* at 15.

In June 2018, Freeman obtained a copy of the life of loan mortgage transactional history for her home loan. A review of this document revealed a myriad of unexplainable and errant servicing conduct. During the course of the Bankruptcy Case, Ocwen assessed fees and expenses, some of which were applied to Freeman's mortgage account as a debit and others that were applied and then reversed. Ocwen did not provide notice of the charging of these fees and expenses to the Bankruptcy Court. These fees and expenses applied to Freeman's mortgage account included $6,649.43 in escrow charges specifically disallowed in the Bankruptcy Case by the October 26, 2012 order. The life of the loan document also indicated that, during Freeman's Bankruptcy Case and thereafter, Ocwen maintained a large surplus balance in Suspense (Filing No. 84 at 15–16).

By maintaining a large surplus balance in Suspense rather than applying the funds to principal, interest, and escrow, Ocwen resultantly charged Freeman fees and additional interest without basis. This also deprived Freeman of the time value of that money as Ocwen did not pay interest toward the balance. Ocwen's conduct also created a negative escrow balance throughout the Bankruptcy Case and thereafter. If the amount withheld in the escrow account for insurance and taxes was insufficient, Ocwen was required to notify Freeman of the shortage. Ocwen failed to provide Freeman with notice of the shortage or explanation for the activities underpinning the negative escrow balances. By maintaining a negative escrow balance, Ocwen caused Freeman to incur fees, penalties, and interest that she would not have otherwise incurred. *Id.* at 17.

Around April 26, 2017, despite the Notice of Cure declaring Freeman current and requiring her to begin making payments directly to Ocwen starting in May 2017, Ocwen rejected Freeman's attempt to make a payment, telling her she was eight months behind on her payments. Ocwen later

accepted the May 2017 payment. Around December 19, 2017, despite never having missed a payment or made an inadequate payment during or following her Bankruptcy Case, Freeman received a call from Ocwen in which an Ocwen representative alleged she was nine months behind on her mortgage payments. Around February 8, 2018, despite never having missed a payment or made an inadequate payment during or following her Bankruptcy Case, Freeman received a call from Ocwen during which an Ocwen representative alleged she was approximately $8,000.00 behind on her mortgage payments. In May 2018, simultaneous with the dismissal of the First Foreclosure Case, Ocwen again stopped accepting Freeman's payments on her home loan. On May 30, 2018, Freeman received a thirty-day pre-foreclosure notice letter from Ocwen. But for Ocwen's refusal to accept her May payment, Freeman was contractually current on her home loan. On July 5, 2018, Ocwen applied a $20.00 "Property Inspection (Exterior)" fee to Freeman's mortgage without appropriate cause or necessity. *Id.* at 18–19.

Within forty-five days of the conclusion of the Bankruptcy Case, Ocwen began making weekly collection calls to Freeman, asking how she intended to cure an alleged default status on her mortgage. During these phone calls, Freeman notified Ocwen's representatives, or their supervisor, that she was current, had made adequate and timely monthly payments as required, and any alleged delinquency was an error. Ocwen's telephone calls, and Freeman's attempts to notify Ocwen of its error in treating her as if she was in default, continued until late May 2018. *Id.* at 19.

Freeman retained counsel, and by letter dated July 12, 2018, she sent a "Request for Information Pursuant to Section 1024.36 of Regulation X" to obtain documents regarding the cause of the alleged default. Ocwen received this request on July 17, 2018. In response, on July 20, 2018, Ocwen provided Freeman with a mortgage reinstatement quote, sought the immediate payment of $6,587.05 (including an escrow payment tied to an alleged deficiency in the amount of $2,409.48),

and notified her that the mortgage may be referred to foreclosure if the account was not reinstated. However, Ocwen did not provide Freeman with the requested copies of its servicing notes, its last two escrow analyses, an accurate payoff statement, or its credit reporting information provided to any credit bureaus. *Id.* at 20–21.

On October 29, 2018, Freeman sent a letter via counsel to Ocwen, providing notice of its errors for failing to accept payments as contractually obligated and failing to provide an accurate payoff statement. The notice-of-errors letter also asked Ocwen to provide all documents it relied upon if it determined that no error had occurred. By this letter and her other communications with Ocwen representatives, Freeman brought the errors to Ocwen's attention, made it aware of the false default status on her home loan, and requested that the errors be investigated and corrected. Ocwen received this notice-of-errors letter on November 1, 2018. Ocwen took no action to reasonably investigate or correct the errors identified and the false default status of the loan. *Id.* at 21–22.

By letters dated November 13, 2018, Freeman provided Ocwen a second request for information as well as a second notice of errors for failing to send monthly billing statements; failing to perform an escrow analysis accurately, calculate proper escrow payments, or refund an escrow surplus; failing to comply with the October 26, 2012 order in the Bankruptcy Case; continuing to fail to accept timely and adequate payments as contractually obligated in July, August, September, October, and November 2018; imposing fees for which it had no reasonable basis to impose and for improperly placing and leaving funds in Suspense on at least fifty-six different occasions; failing to provide a payoff statement within seven business days; and failing to adequately respond to Freeman's first request for information within thirty business days when it refused to provide copies of its last two escrow analyses and information about the reporting of Freeman's loan to the credit bureaus. This second notice of errors also disputed any information or

reporting previously made by Ocwen to any credit bureau suggesting she was delinquent or had

an unpaid balance. Ocwen received these two letters on November 17, 2018. Ocwen took no action

to reasonably investigate or correct the errors identified in the second notice of errors and the false

default status of the loan (Filing No. 84 at 23–24).

More than a month after the Complaint was filed in this federal lawsuit, Ocwen responded

to the first notice of errors on January 7, 2019. It was Ocwen's contention that the October 29,

2018 letter did not provide details regarding any specific errors made by Ocwen in servicing the

loan. The response noted that Ocwen made changes to the loan payment history by applying funds

in escrow to the principal balance and by removing certain charges. It further noted that Ocwen

conducted an investigation and determined that no error occurred. Then Ocwen responded to the

second notice of errors on January 22, 2019. Ocwen asserted that no error occurred with respect

to the failure to send billing statements, and it noted that the escrow funds were available to be

refunded to Freeman if she requested. Ocwen explained that with respect to the fees and costs

assessed to the loan in connection with the bankruptcy proceedings, Ocwen had determined that

an error occurred, and the removal of the fees and costs at issue were shown in the payment history

provided on January 7, 2019. It noted that no error occurred with respect to the refusal of payments

tendered by Freeman in July, August, September, October, and November 2018. Ocwen noted

other errors in the assessment of fees and explained that those fees would be removed. *Id.* at 22,

24–25.

Ocwen's response to the second notice of errors contradicted the escrow documents it

provided and the payment history it referenced. Its response failed to take actions necessary to

correct the errors identified, including reversing all payments and reapplying them pursuant the

loan's terms; acknowledging in writing that the loan was current with no outstanding amounts;

removing all disallowed fees per the October 26, 2012 order in the Bankruptcy Case; and ceasing the rejection of payments from Freeman and beginning to appropriately apply the payments. Despite being requested in the second notice of errors, Ocwen did not provide the documents or information it relied upon in reaching its determination. *Id.* at 26–27.

On December 4, 2018, Freeman sent a third notice of errors to Ocwen. It noted Ocwen's continuing rejection of Freeman's payments and its failure to provide an accurate payoff statement within seven business days following Freeman's second notice of errors. This third notice also specifically disputed the reporting of any delinquency or missed payments since June 2012. The third notice also asked for copies of all documents relied upon if Ocwen determined that no error had occurred. Ocwen received this third notice of errors on December 7, 2018. Ocwen responded by letter dated January 22, 2019, and asserted that the third notice of errors failed to provide sufficient detail regarding any error made by Ocwen in servicing the loan. The response asserted that Ocwen had conducted a reasonable investigation and determined that no error occurred with respect to the alleged refusal of a payment tendered by Freeman in December 2018, and it noted that she could request the documents that Ocwen relied upon through Ocwen's counsel. *Id.* at 27–28.

After refusing to accept and apply payments, and despite Freeman's attempts to notify Ocwen of its errors, Ocwen and BONY declared Freeman to be in default, and on August 15, 2018, BONY filed a second foreclosure case in the Hamilton County (Indiana) Superior Court (the "Second Foreclosure Case"). The Second Foreclosure Case was filed even though Freeman's mortgage account was purportedly less than 120 days delinquent. In its motion to dismiss the First Foreclosure Case, BONY had asserted that the loan was due and current as of May 2017. Freeman made timely and adequate payments to Ocwen from May 2017 to May 2018 when Ocwen began

rejecting her payments. In the Second Foreclosure Case, Ocwen and BONY alleged the loan was in default and that Freeman owed a principal balance of $88,039.35 plus other foreclosure related fees. On October 26, 2018, BONY was directly informed that Freeman was current but for the payments recently rejected by Ocwen; then on October 31, 2018, Freeman's counsel filed an answer denying any default, raising affirmative defenses including Ocwen's errors, and a counterclaim for breach of contract. *Id.* at 29–30.

On November 19, 2018, Freeman provided to Ocwen and BONY a payment history, which evidenced her timely and adequate payments for every month from May 2017 to December 2017. No corrective action was taken by Ocwen or BONY in response to receiving this payment history. On December 4, 2018, Freeman sent a letter to Ocwen and BONY, requesting a list of documents she could provide to Ocwen and BONY that would be sufficient to dismiss the Second Foreclosure Case. Then on January 23, 2019, the Second Foreclosure Case was dismissed without prejudice (Filing No. 84 at 31).

Because of Ocwen's conduct, Freeman remains in a wrongful and false default status under her loan. Because of this wrongful and false default status, Ocwen has imposed a number of unwarranted fees on the loan, including improper late fees and improper default service fees such as fees for property inspection and corporate advances that have not been removed from the account. Ocwen's conduct has caused Freeman to suffer harm to her credit. The false and misleading reporting has resulted in the suppression of Freeman's credit rating, a diminishing of the credit available to her, and an increase in the cost of insurance. The incorrect credit reporting has been disputed by Freeman on several occasions, but no corrective action has been taken. *Id.* at 32–33.

On December 6, 2018, Freeman filed her initial Complaint in this action against Ocwen, asserting eight claims against it (Filing No. 1). BONY was added as a defendant through Freeman's First Amended Complaint, which was filed on March 14, 2019. Freeman asserted nine claims in a First Amended Complaint (Filing No. 24). On July 10, 2019, Freeman filed a Second Amended Complaint, asserting eleven claims against the Defendants (Filing No. 59). Freeman sought leave to file a third amended complaint and to correct the order of the exhibits attached to her Second Amended Complaint. The Court denied leave to file a third amended complaint but allowed Freeman to correct the error with her exhibits. On September 20, 2019, Freeman filed a corrected Second Amended Complaint (Filing No. 84). Thereafter, the Defendants filed their Motions to Dismiss.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581

F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

While review under Rule 12(b)(6) is limited to the complaint, courts consider documents attached to and incorporated in the complaint as part of the complaint and will consider documents that are referred to in the complaint, which are concededly authentic and central to the plaintiff's claim. *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); *see also Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (courts may consider "the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice"). "[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

## III.   DISCUSSION

The Defendants filed separate Motions to Dismiss, asking the Court to dismiss claims asserted against them in Freeman's Second Amended Complaint. Ocwen seeks dismissal of Counts II, III, V, VI, VII, VIII, X, and XI of Freeman's Second Amended Complaint.   BONY seeks

dismissal of the two claims filed against it, Counts I and IV. The Court will first address the Motion filed by BONY and then turn to the Motion filed by Ocwen.

## A.   **BONY's Motion to Dismiss**

In her Second Amended Complaint, Freeman asserts two claims against BONY: breach of contract (Count I) and violation of the Truth in Lending Act, 15 U.S.C. § 1601 (Count IV). BONY argues both claims should be dismissed.

### 1.   **Breach of Contract**

BONY argues that the breach of contract claim is largely preempted by the Bankruptcy Code because the allegations concern conduct that occurred during the pendency of Freeman's Chapter 13 Bankruptcy or are directly dependent on the proceedings in the Bankruptcy Court. BONY further argues that the remaining allegations regarding the breach of contract claim are insufficient to state a claim because the plain language of the parties' contract does not concern the conduct alleged. Thus, the breach of contract claim must be dismissed.

BONY asserts that "the Bankruptcy Code preempts virtually all claims which allege misconduct in Bankruptcy proceedings," *Cox v. Zale Delaware, Inc.*, 242 B.R. 444, 449–50 (N.D. Ill. 1999), and a cause of action arising under state law, like breach of contract, is preempted if, absent the Code, there would be no cause of action. *Id.* at 450. BONY points out that this Court previously has recognized that state-law claims based solely on conduct arising in a bankruptcy proceeding are preempted under the theory of "field preemption." *Carter v. HSBC Mortg. Servs.*, 2016 U.S. Dist. LEXIS 128682, at *18–20 (S.D. Ind. Sep. 21, 2016). "[S]tate-law claims that attempt to govern the same activity regulated by the Bankruptcy Code are expressly preempted because Congress intended to occupy the entire field by providing exclusive remedies in the Bankruptcy Code." *Id.* at *19 (internal citation and quotation marks omitted).

Freeman's allegations are that BONY, through Ocwen, breached the mortgage contract by

(i) failure to accept Freeman's timely and adequate mortgage payments as contractually obligated; (ii) failure to credit and apply Freeman's payments as contractually obligated; (iii) assessment of unauthorized late fees, legal fees, costs, and property inspection fees; . . . [and] (vi) converting funds towards fees or costs specifically disallowed by Order dated October 26, 2012.

(Filing No. 84 at 35–36.)

BONY asserts that underlying these statements is Freeman's allegation that, "[d]uring the course of the Bankruptcy Case, Ocwen assessed fees and expenses, some of which were applied to Freeman's mortgage account as a debit and others that were applied and then reversed," *id.* at 16, and "[t]hose fees and expenses applied to Freeman's mortgage (*i.e.,* fees and expenses paid by Ocwen to Ocwen from funds that should have been applied to principal, interest, or escrow.) include $6,649.43 in escrow charges ***specifically disallowed*** in the Bankruptcy Case by the October 26, 2012 Order . . . ." *Id.* (emphasis in original). Freeman has alleged that the misapplication of funds disallowed by the Bankruptcy Court led to inaccurate escrow balances and an erroneous default on the mortgage. *Id.* at 16–17.

BONY argues that the collection of fees and expenses complained of by Freeman is directly linked to the effect of the October 26, 2012 order issued by the Bankruptcy Court in Freeman's Chapter 13 bankruptcy. Thus, without the October 26, 2012 order, the collection of fees and expenses is not independently actionable because the propriety of those actions is inextricably linked to what amounts the Bankruptcy Court did or did not allow. Therefore, BONY asserts, Freeman's claim for breach of contract attempts "to govern the same activity regulated by the Bankruptcy Code" and is thus preempted.

BONY additionally contends that Freeman has failed to state a claim for breach of contract because the conduct complained of is not governed by the terms of the mortgage contract. Freeman

alleges BONY breached the contract by "(iv) fail[ing] to dismiss the foreclosure action upon receiving notice of the facts alleged herein;" and "(v) placing the loan in default and inaccurately reporting to credit bureaus said status." (Filing No. 84 at 36.) But Freeman does not allege that the mortgage contract requires BONY to dismiss foreclosure actions, and she does not allege that the mortgage contract governs the reporting of information to credit bureaus. The plain language of the mortgage contract does not have any terms governing the dismissal of foreclosure actions or the reporting of credit information. Because the plain language of the mortgage contract does not establish a duty to dismiss a foreclosure action upon receipt of certain information or to report information to credit bureaus, BONY argues that Freeman has failed to state a claim for breach of contract.

Freeman responds, "While it is true some of the alleged duties underpinning Freeman's claimed breach are not expressly included in the Mortgage, BONY's argument ignores those that are and other language requiring adherence to RESPA." (Filing No. 91 at 3–4.) Freeman asserts that numerous other courts have permitted claims for breach of contract to proceed based on allegations of the same or similar conduct. However, "Freeman concedes the failure to timely dismiss the foreclosure action does not constitute a duty upon which a claim for breach of contract can be reached." *Id.* at 4.

Freeman contends that BONY's argument concerning field preemption of the breach of contract claim is unavailing because "BONY's assertion that Freeman's allegations for breach of contract are rooted solely in Ocwen's attempts to collect fees and expenses that were disallowed by the Bankruptcy Court is a gross mischaracterization of the allegations of Freeman's Complaint." *Id.* at 5.

Furthermore, Freeman asserts, the primary authorities on which BONY relies are not applicable to the facts and circumstances of this case as is demonstrated by the analysis and holding of *In re Laskowski*, 384 B.R. 518 (Bankr. N.D. Ind. 2008) (holding that RESPA and breach of contract claims were not preempted by Bankruptcy Code). The cases relied upon by BONY involved circumstances where the plaintiffs' claims were based solely on conduct that was wrongful only because it violated provisions of the Bankruptcy Code. *See Cox v. Zale Delaware, Inc.*, 239 F.3d 910 (7th Cir. 2001) (plaintiff's claim sought rescission of a debt-reaffirmation agreement and recovery of amounts paid pursuant to the agreement because the creditor had violated the requirement of Section 524(c) of the Bankruptcy Code); *Carter*, 2016 U.S. Dist. LEXIS 128682 (plaintiff's state law claims of actual fraud, constructive fraud and unjust enrichment were based solely on defendant filing a false proof of claim in plaintiff's bankruptcy proceeding). Freeman asserts that, when the conduct upon which a plaintiff's claims are based is wrongful because it involves violations of federal or state laws independent of the provisions of the Bankruptcy Code, preemption of the claims by the Bankruptcy Code does not occur. *In re Laskowski*, 384 B.R. at 530–31.

Freeman reiterates that her breach of contract claim involves (i) failure to accept Freeman's timely and adequate mortgage payments as contractually obligated; (ii) failure to credit and apply Freeman's payments as contractually obligated; (iii) assessment of unauthorized late fees, legal fees, costs, and property inspection fees; (iv) failure to dismiss the foreclosure action upon receiving notice of the facts; (v) placing the Loan in default and inaccurately reporting to credit bureaus said status; and (vi) converting funds towards fees or costs specifically disallowed by Order dated October 26, 2012 (*see* Filing No. 84 at 35–36). These factual underpinnings are not based solely on conduct that was wrongful only because it violated a provision of the Bankruptcy

Code. Thus, Freeman argues, the breach of contract claim against BONY is not preempted by the

Bankruptcy Code.

Furthermore, Freeman asserts,

[C]ontrary to the gross mischaracterization of the allegations of Freeman's Complaint by BONY, most of the conduct on which Freeman's breach of contract claim is based occurred subsequent to, and independent of, Freeman's Chapter 13 bankruptcy proceeding. For example, BONY's wrongful failures to accept Freeman's timely and adequate mortgage payments as contractually obligated (which is still occurring as we speak) all occurred post-Bankruptcy. (Pl.'s Second Amend. Compl. ¶¶ 118-26). So too, there were assessments of unauthorized fees and additional interest resulting from Ocwen's maintenance of unlawful surplus balances in Suspense, as well as assessments of unauthorized fees, penalties and/or interest resulting from Ocwen's maintenance of unlawful negative escrow balances, that occurred subsequent to the bankruptcy proceeding and involved conduct independent of the bankruptcy proceeding. (Pl.'s Second Amend. Compl. ¶¶ 107-08, 111-15, 125).

(Filing No. 91 at 7.)

The Court first notes that Freeman conceded that her claim for breach of contract cannot

proceed on the theory of a failure to timely dismiss the foreclosure action. Therefore, the Court

**grants** BONY's Motion to Dismiss the breach of contract claim to the extent that the claim relies

on this theory. The Court agrees with BONY's position that Freeman's mortgage contract does not

create any contractual duties or obligations regarding accurate reporting to credit bureaus (*see*

Filing No. 84-15). Therefore, the Court **grants** BONY's Motion to Dismiss the breach of contract

claim to the extent that the claim relies on this additional theory. Furthermore, the Court agrees

with BONY's position regarding "field preemption" for bankruptcy proceedings and the

Bankruptcy Code and, therefore, **dismisses** Freeman's breach of contract claim under the theory

that a breach occurred by converting funds towards fees or costs specifically disallowed by the

Bankruptcy Court's October 26, 2012 order.

The remaining theories of liability for supporting Freeman's state-law breach of contract claim are not based solely on conduct arising from the bankruptcy proceeding, and thus, those theories of liability are not preempted. Freeman's remaining breach of contract theories do not flow solely from and are not dependent upon the resolution of the underlying bankruptcy issues. Absent the Bankruptcy Code, a breach of contract cause of action would still exist. Freeman has alleged sufficient facts regarding BONY's conduct to support a claim for breach of contract to move beyond the motion to dismiss stage. Therefore, the Court **denies** the Motion to Dismiss the breach of contract claim based upon Freeman's other theories of liability.

### 2. **Violation of the Truth in Lending Act**

BONY asserts that Freeman's claim against it for violation of the Truth in Lending Act ("TILA") should be dismissed because BONY is not a "creditor" as defined by TILA, and the statute's assignee liability does not extend to the acts alleged by Freeman. Additionally, the statutory provisions and regulations cited by Freeman explicitly disclaim liability for BONY and are otherwise inapplicable.

Section 1640(a) of TILA provides that "[e]xcept as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person . . . ." 15 U.S.C. § 1640(a). A "creditor" is defined by TILA as,

> [A] person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of the indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g). Thus, BONY asserts, in the context of mortgages, "creditor" means the originator of a loan, not subsequent assignees of the mortgage.

Assignee liability under TILA is available only in certain, limited circumstances.

Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter, and any proceeding under section 1607 of this title against a creditor, with respect to a consumer credit transaction secured by real property may be maintained against any assignee of such creditor only if (A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and (B) the assignment to the assignee was voluntary.

15 U.S.C. § 1641(e)(1). TILA provides, "With respect to any failure to make disclosures required under this part or part D or E of this subchapter, liability shall be imposed only upon the creditor required to make disclosure, except as provided in section 1641 of this title." 15 U.S.C. § 1640(a).

In her Second Amended Complaint, Freeman alleges "[t]he Loan was originated by Sun Mortgage Company, LLC, and subsequently placed in a mortgage-backed security guaranteed by Fannie Mae." (Filing No. 84 at 2.) "Thereafter, ownership of the Note was transferred to [BONY]." *Id.* BONY points out there is no allegation that the assignment to BONY was involuntary, and thus, BONY argues, it is at most an assignee under TILA.

Freeman alleges that BONY violated TILA through:

(i) Ocwen's breach of its duty to send interest rate and payment change notices pursuant to 15 U.S.C. § 1638a and Reg. Z, 12 C.F.R. § 1026.20(c) and (d); (ii) Ocwen's breach of its duty to promptly credit payments pursuant to 15 U.S.C. § 1639f and Reg. Z, 12 C.F.R. § 1026.36(c)(1); (iii) Ocwen's breach of its duty to send periodic mortgage statements pursuant to 15 U.S.C. § 1638(f) and Reg. Z, 12 C.F.R. § 1026.41; and (iv) Ocwen's breach of its duty to provide a timely payoff statement pursuant to 15 U.S.C. § 1639g and Reg. Z, 12 C.F.R. § 1026.36(c)(3).

*Id.* at 40.

BONY argues that it is an assignee, not a creditor, and none of the alleged theories of liability state a cause of action based on "a violation apparent on the face of the disclosure statement" as required for assignee liability under TILA. *See* 15 U.S.C. § 1641. Each of the alleged violations concern conduct by a servicer after assignment and do not concern the disclosure made by the originating creditor. Thus, the TILA claim against BONY must be dismissed.

BONY contends that the statutory provisions and regulations cited by Freeman explicitly disclaim liability for BONY because BONY is not the creditor or servicer of the loan. Freeman has alleged that Ocwen is the servicer of her loan (*see* Filing No. 84 at 2). Freeman alleges BONY violated TILA because of "Ocwen's breach of its duty to promptly credit payments pursuant to 15 U.S.C. § 1639f and Reg. Z, 12 C.F.R. § 1026.36(c)(1)." *Id.* at 40. However, Section 1639f only applies to servicers, not creditors or assignees. Section 1639f provides, "In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt . . . ." 15 U.S.C. § 1639f(a). Because BONY is not a "servicer" of Freeman's loan, Section 1639f is not applicable to BONY.

Freeman also alleges BONY violated TILA because of "Ocwen's breach of its duty to send periodic mortgage statements pursuant to 15 U.S.C. § 1638(f) and Reg. Z, 12 C.F.R. § 1026.41." (Filing No. 84 at 40.) BONY explains that Regulation Z explicitly states, "[a] creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this section to provide a periodic statement." 12 C.F.R. § 1026.41(a)(2). As pled by Freeman, BONY is not subject to the periodic statement requirement under Section 1638(f) as regulated by 12 C.F.R. § 1026.41.

Freeman further alleges BONY violated TILA because of "Ocwen's breach of its duty to provide a timely payoff statement pursuant to 15 U.S.C. § 1639g and Reg. Z, 12 C.F.R. § 1026.36(c)(3)." (Filing No. 84 at 40.) BONY again asserts that Regulation Z explicitly states that "[a] creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this paragraph (c)(3) to provide a payoff statement." 12 C.F.R § 1026.36(c)(3). As pled by Freeman, BONY is not subject to the payoff statement requirement under Section 1639g as regulated by 12 C.F.R. § 1026.36.

BONY additionally argues that Freeman's TILA claim based upon Section 1638a is time-barred and must be dismissed. Freeman alleges BONY violated TILA because of "Ocwen's breach of its duty to send interest rate and payment change notices pursuant to 15 U.S.C. § 1638a and Reg. Z, 12 C.F.R. § 1026.20(c) and (d)." (Filing No. 84 at 40.) Section 1638a provides,

> During the 1-month period that ends 6 months before the date on which the interest rate in effect during the introductory period of a hybrid adjustable rate mortgage adjusts or resets to a variable interest rate or, in the case of such an adjustment or resetting that occurs within the first 6 months after consummation of such loan, at consummation, the creditor or servicer of such loan shall provide a written notice, separate and distinct from all other correspondence to the consumer . . . .

15 U.S.C. § 1638a(b). BONY asserts this provision of TILA concerns a disclosure that is required during the month ending on the date six months before an introductory interest rate converts to an adjustable rate.

Freeman's introductory rate ended on April 1, 2005 (*see* Filing No. 84-15). Thus, the disclosure under Section 1638a was required between September 1, 2004 and October 1, 2004. BONY argues that whether the disclosure in question was made is irrelevant because this claim is approximately fourteen years outside the one-year statute of limitations under TILA. *See* 15 U.S.C. § 1640(e). Because Section 1638a applies to notice of interest rate changes after an introductory period, which occurred in April 2005 in this case, BONY asserts Freeman's claim under this section is time-barred.

"Freeman concedes she has failed to state a claim under Section 1638a of TILA" because it is time-barred (Filing No. 91 at 12). However, as to the other aspects of her TILA claim, Freeman responds that BONY's argument employs an impermissibly narrow reading of the statute and disregards other cases where assignees were found liable for the acts and omissions of their servicers in situations nearly identical to those alleged here. *See, e.g.*, *St. Breux v. U.S. Bank N.A.*, 919 F. Supp. 2d 1371 (S.D. Fla. 2013); *Justice v. Ocwen Loan Serv., L.L.C.*, 2014 WL 526143

(S.D. Ohio Feb. 7, 2014); *Cenat v. U.S. Bank N.A.*, 930 F. Supp. 2d 1347 (S.D. Fla. 2013); *R.G. Fin Corp. v. Vergara-Nunez*, 446 F.3d 178, 187 (1st Cir. 2006). Freeman's TILA claim is based on allegations of BONY's failure to promptly credit payments, BONY's failure to send periodic mortgage statements, and BONY's failure to provide a timely payoff statement in violation of 15 U.S.C. §§ 1639f and 1639g. Freeman asserts that these acts and omissions are alleged to have been committed by BONY itself and alternatively by its agent Ocwen, for which it is vicariously liable. Freeman notes that BONY's narrow interpretation of TILA is inconsistent with the general rule that, as a remedial law, TILA is designed to protect consumers and thus should be liberally construed. *See, e.g.*, *Hauk v. JP Morgan Chase Bank United States*, 552 F.3d 1114 (9th Cir. 2009).

Freeman argues that, while a very narrow and literal reading of the relevant regulations could lead to the conclusion of no liability for BONY because it is not a "creditor" or "servicer," BONY's interpretation obfuscates the remedial purpose of TILA and canons of statutory construction. TILA should be given a broad, as opposed to narrow, reading in order to effectuate its intent. Freeman asserts she has plausibly pled that BONY owns her mortgage loan, that BONY retained Ocwen to service the loan on its behalf, and that BONY has a principal-agent relationship with Ocwen.

In reply, BONY notes, despite TILA's plain language establishing the circumstances a creditor or its assignee may be liable, Freeman improperly argues BONY is responsible for all of the alleged conduct because either it or its servicer (Ocwen) violated TILA. However, TILA's language is unambiguous and clear as to when there is liability against an assignee, and Freeman has failed to allege a cause of action against BONY under the plain terms of the statute. Freeman's vicarious liability theory also conflicts with Freeman's concession that there is no servicer liability under TILA. *See Khan v. Bank of New York Mellon*, 849 F. Supp. 2d 1377, 1379 (S.D. Fla. 2012).

BONY's arguments concerning Freeman's TILA claim are well-taken. The allegations in the Second Amended Complaint seek to impose liability on BONY for the actions of Ocwen (BONY's servicer), yet Freeman acknowledges that there is no servicer liability under TILA (*see* Filing No. 91 at 8 n.2). Freeman also acknowledges that BONY is not a "creditor" under TILA. Furthermore, Freeman concedes that her TILA claim under Section 1638a fails because it is time-barred. The other sections of TILA upon which Freeman relies impose obligations on servicers, not on entities in BONY's position. Additionally, Freeman concedes that a literal reading of the relevant regulations could lead to the conclusion of no liability for BONY because it is not a "creditor" or "servicer." Freeman suggests that the Court ignore the unambiguous, explicit language of the statute and apply a broad interpretation to allow her claim to proceed. The Court declines to do so in light of the plain and explicit language of TILA. Therefore, the Court **grants** BONY's Motion to Dismiss Freeman's TILA claim.

## B.   <u>Ocwen's Motion to Dismiss</u>

In her Second Amended Complaint, Freeman asserts eight claims against Ocwen: violation of the Real Estate Settlement Procedures Act ("RESPA") (Count II), violation of the Fair Debt Collection Practices Act ("FDCPA") (Count III), violation of the Fair Credit Reporting Act ("FCRA") (Count V), violation of the Discharge Injunction and Federal Rule of Bankruptcy Procedure 3002.1 (Count VI), violation of Bankruptcy Orders (Count VII), violation of Indiana's Crime Victim's Relief Act (Count VIII), violation of Indiana's Deceptive Consumer Sales Act (Count X), and violation of the Telephone Consumer Protection Act ("TCPA") (Count XI). Ocwen argues that each of these claims should be dismissed. The Court will address these claims in turn.[2]

---

[2] After the Motion to Dismiss was fully briefed, Freeman and Ocwen filed a stipulated dismissal of Count XI (violation of the TCPA) of the Second Amended Complaint (Filing No. 123), and the Court dismissed that claim (Filing No. 124). Therefore, the Court will not address that claim in this Order.

1. **Real Estate Settlement Procedures Act Claim**

RESPA was enacted by Congress to provide homebuyers and sellers with complete settlement cost disclosures. *See* 12 U.S.C. §§ 2601–2617. Ocwen presents various arguments for the dismissal of Freeman's RESPA claim. First, Ocwen argues that Freeman's letters to Ocwen are rambling, repetitive discovery-style document demands rather than "qualified written requests" that could provide a basis for RESPA liability. Ocwen argues that inquiries or alleged errors outside the scope of loan servicing cannot support a RESPA claim, and Freeman's letters were simply an attempt to manufacture a RESPA claim shortly before and during litigation between the parties. Rather than waiting for Ocwen to respond to the initial letter, Freeman inundated Ocwen with repetitive letters. In any event, Ocwen argues, its responses to Freeman's letters were objectively reasonable and complied with the requirements of RESPA. Ocwen asserts that Freeman's dissatisfaction with Ocwen's responses does not render the responses noncompliant.

Ocwen points out that there is no private right of action for Freeman's claims for mishandling her escrow account, unlawful increase in escrow payments amount, unlawful treatment of payments as late, and misrepresentations in account statements. Any claims brought under Section 2609 of RESPA fail because no private right of action exists to enforce this section. *See Allison v. Liberty Savings*, 695 F.2d 1086 (7th Cir. 1982) (holding "no implied private cause of action exists under § 10 [section 2609] of RESPA"). Ocwen also argues that Freeman's RESPA claim should be dismissed or at least limited because she has requested $2,000.00 in statutory damages for each violation of RESPA, but, Ocwen asserts, RESPA caps statutory damages at $2,000.00 total. Finally, Ocwen argues that Freeman has not sufficiently alleged factual assertions to support a "pattern and practice" claim under RESPA because she has not alleged a coordinated effort or widespread business practice of Ocwen that violates RESPA.

Freeman responds that her notices of errors and requests for information sent to Ocwen complied with RESPA, and Ocwen's assertion to the contrary is inaccurate and based on a mischaracterization of the correspondence. The notices and requests pertained to Ocwen's improper servicing of Freeman's home loan, and thus, are proper under RESPA. Freeman asserts that ongoing litigation does not invalidate her written requests sent to Ocwen for purposes of RESPA. And Ocwen's characterization of the correspondence as an attempt by lawyers to manufacture RESPA claims is inaccurate and legally irrelevant. Freeman requested information and provided notice of errors, and this is sufficient to support a RESPA claim. Freeman argues that Ocwen's responses to her requests were unreasonable and violated RESPA, but in any event, the Court must take the pleadings as true at the motion to dismiss stage. And Freeman asserts that she has alleged facts that Ocwen did not respond reasonably to her requests because the responses were boilerplate or perfunctory.

Freeman argues that, although RESPA may not provide for a private right of action for escrow account servicing errors under § 2609, RESPA does provide for a private right of action against servicers who fail to comply with the error resolution procedures set forth in 12 U.S.C. § 2605 and Section 1024.35 of Regulation X. 12 U.S.C. § 2605(f) ("Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts . . ."). *See Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1053 (7th Cir. 2018) ("In § 2605(f), RESPA provides a private right of action for actual damages resulting from violations of § 2605."). Freeman asserts that Ocwen's failure to comply with the error resolution procedures with respect to its servicing errors supports her RESPA claim.

Concerning Ocwen's argument about a $2,000.00 statutory cap on damages, Freeman asserts that Ocwen's case citations have no precedential value as they are district court cases, and

the plain language of RESPA provides for $2,000.00 statutory damages for each failure to comply with RESPA. Regarding the argument about a "pattern and practice," Freeman argues she can plead a pattern and practice of failing to comply with RESPA through Ocwen's repeated failure to respond to her numerous requests or through Ocwen's noncompliance as a servicer of other borrowers' loans. She asserts that she has pled many RESPA violations and failures to respond to requests as pertaining to herself individually, and she has pled many other lawsuits have been brought by other borrowers against Ocwen for similar violations, thereby sufficiently alleging a pattern and practice for RESPA purposes.

A review of the pleadings and the cited statutory provisions show that Freeman's arguments are well-taken at this motion to dismiss stage. Ocwen's arguments for dismissal very well could be successful in a summary judgment motion; however, the standard is different under a motion to dismiss, and the Court must accept the pleadings as true and view them in the light most favorable to the non-moving party. Freeman has pled enough factual allegations to support a legally cognizable claim under RESPA. Any argument concerning a cap to statutory damages is not a proper basis to dismiss outright the RESPA claim, and this damages issue need not be decided at the motion to dismiss stage. The Court notes that "RESPA doesn't allow for a private right of action for violations of [certain RESPA] sections [including 2609]." *Wells Fargo Bank, N.A. v. Jones*, 2015 U.S. Dist. LEXIS 63831, at *10 n.2 (N.D. Ind. May 15, 2015) (citing *Allison*, 695 F.2d at 1087). Therefore, to the extent that Freeman's RESPA claim is based upon Section 2609, the claim is **dismissed**; in all other respects, the claim may proceed beyond the motion to dismiss stage.

### 2. FDCPA Claim

Similar to BONY's argument of "field preemption" discussed above, Ocwen argues that Freeman's FDCPA claim must be dismissed because it is preempted by the Bankruptcy Code.

Ocwen asserts that all of the alleged conduct occurred either during the pendency of Freeman's Chapter 13 Bankruptcy or arose out of the bankruptcy proceedings. Courts have held that the Bankruptcy Code precludes FDCPA claims based on a defendant's attempt to collect a debt discharged in bankruptcy. *See Wehrheim v. Secrest*, 2002 U.S. Dist. LEXIS 19020, at *28 (S.D. Ind. Aug. 16, 2002).

Ocwen argues that any FDCPA claims based on conduct prior to December 6, 2017, are time-barred because the lawsuit was filed on December 6, 2018, and the FDCPA has a one-year statute of limitations. The FDCPA specifies that suits must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Ocwen argues that Freeman's claim is based upon the attempted collection of allegedly disallowed debt, which began in April 2017, and Freeman's claim is a continuation of a single violation rather than distinct violations of the FDCPA. Thus, Ocwen argues, the claim is time-barred.

Freeman responds that Ocwen's argument mischaracterizes the allegations of the Second Amended Complaint and uses an inaccurate narrow interpretation of the pleadings. Freeman asserts that her FDCPA claim is based both on wrongfully assessed fees, charges, and expenses that were assessed by Ocwen subsequent to and independent of the fees and expenses discharged by the bankruptcy proceeding as well as on other types of wrongful conduct post-bankruptcy not involving the assessment of fees and charges such as Ocwen's repeated post-bankruptcy mischaracterization of the character, amount, or legal status of Freeman's home loan and threatening and commencing foreclosure proceedings against Freeman.

Freeman argues that the current law in the Seventh Circuit is that the Bankruptcy Code does not preempt claims under the FDCPA even when those claims relate to a violation of an automatic bankruptcy stay or a discharge injunction because they are concurrent, non-exclusive

remedies with different standards. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 733 (7th Cir. 2004); *see also Owens v. LVNV Funding, LLC*, 832 F.3d 726, 734 (7th Cir. 2016). Freeman argues that the statute of limitations factual issue should be left for summary judgment or trial, and the "discovery rule" applies to FDCPA claims as a defense to a statute of limitations argument. Freeman asserts that it is "conceivable and consistent" with her allegations that she did not discover her injury until February 2018 when Ocwen reactivated the First Foreclosure Case.

The Court first notes that the Supreme Court recently held that the discovery rule does not apply to the FDCPA to extend the one-year statute of limitations, which begins on the "date on which the violation occurs." *Rotkiske v. Klemm*, 140 S. Ct. 355 (U.S. 2019). Therefore, the Court **grants** Ocwen's Motion to Dismiss the FDCPA claim to the extent it is based on any conduct that occurred before December 6, 2017, because this case was filed on December 6, 2018. The Court agrees with Ocwen's position regarding preemption or preclusion of the FDCPA claim to the extent it is based upon the bankruptcy proceedings and the Bankruptcy Code. Paragraph 257 of the Second Amended Complaint contains explicit references to the Bankruptcy Case and Discharge, and therefore, the Court **dismisses** the FDCPA claim to the extent it is based upon these allegations.

The remaining allegations supporting Freeman's FDCPA claim are not based solely on conduct arising from the bankruptcy proceeding, so those theories of liability are not preempted. Freeman has alleged sufficient facts regarding Ocwen's conduct to support a claim for an FDCPA violation to move beyond the motion to dismiss stage. The Court **denies** dismissal of the FDCPA claim based upon Freeman's allegations not directly tied to the Bankruptcy Case and Discharge.

### 3.  FCRA Claim

Ocwen next argues that the FCRA claim should be dismissed because Freeman has failed to allege that she disputed her credit information with a consumer reporting agency or that any

such dispute was transmitted by a consumer reporting agency to Ocwen. Thus, she has failed to state a claim under Section 1681s-2(b) of the FCRA. Ocwen argues that to the extent Freeman is alleging a violation of Section 1681s-2(a) for Ocwen's alleged act of reporting false information on her credit report, this claim fails because a consumer has no private right of action against a furnisher of information who provides inaccurate information to credit reporting agencies in violation of 15 U.S.C. § 1681s-2(a). *See Shepard v. Spectrum*, 2018 U.S. Dist. LEXIS 78689, at *4 (S.D. Ind. May 9, 2018).

Freeman responds that she is not bringing her FCRA claim under 15 U.S.C. § 1681s-2(a) but rather under § 1681s-2(b). Freeman asserts that, under § 1681s-2(b), a plaintiff must allege four elements: plaintiff identified an inaccuracy in her credit report, plaintiff notified a credit reporting agency, the credit reporting agency notified the furnisher of the information, and the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements in 15 U.S.C. § 1681s-2(b)(1)(A)–(E). Freeman argues that she has sufficiently pled each of these four elements at paragraphs 222, 49, 223, 279, and 41–55 of her Second Amended Complaint.

The allegations upon which Freeman relies consist of legal assertions, legal conclusions, legal and general factual background information, and threadbare recitations of the elements of the claim. The allegations are devoid of nonconclusory factual assertions to support the legal elements of a dispute being made to a credit reporting agency, and the credit reporting agency in turn notifying Ocwen of the dispute. Such is required for an FCRA claim under § 1681s-2(b). Therefore, the Court **dismisses** Freeman's FCRA claim in the Second Amended Complaint.

### 4. <u>Violation of the Discharge Injunction and F.R.B.P. 3002.1</u>

Ocwen argues that Freeman's 11 U.S.C. § 524 claim for violation of the Bankruptcy Court's Discharge Injunction must be dismissed because there is no private right of action under § 524.

*See Cox*, 242 B.R. at 449, *aff'd*, 239 F.3d 910 (7th Cir. 2001). Ocwen points out that Freeman alleges Ocwen violated 11 U.S.C. § 524 by seeking to collect expenses and fees that were disallowed by the Bankruptcy Court, but because there is no private right of action under the § 524 Discharge Injunction, Freeman has failed to state a claim upon which relief can be granted.

Freeman responds that Ocwen has mischaracterized the allegations in the Second Amended Complaint, and the discharge injunction can be invoked when a creditor fails to properly credit payments made under the confirmed plan. If this happens, 11 U.S.C. § 524(i) treats such conduct as a violation of the discharge injunction even if the underlying debt is not discharged. Freeman argues her factual allegations support a plausible claim for violation of § 524(i), and § 524(i) gives debtors a cause of action and remedy for misapplication of payments during a Chapter 13 case.

In reply, Ocwen explains that it does not contend that Freeman has no remedy for alleged violations of the Discharge Injunction or that the Bankruptcy Court does not have the power to enforce its orders or provisions of the Bankruptcy Code. Rather, as argued in the opening brief, Freeman's remedy is not available in this District Court because there is no private right of action under § 524. Her available remedy lies in the Bankruptcy Court that issued the Discharge Injunction.

A review of the parties' arguments and the case law leads the Court to conclude that Ocwen's position is well-taken, and there is no private right of action for this particular claim in this District Court. Thus, Ocwen's Motion to Dismiss the claim for violation of the Discharge Injunction is **granted**.

### 5.  <u>Violation of Bankruptcy Orders</u>

Ocwen argues that this claim for violation of the Bankruptcy Court's orders likewise must be dismissed because there is no private right of action under § 524. And at least one court in the

Seventh Circuit has found that there is no private cause of action under 11 U.S.C. §§ 105 and 502.
*See Holloway v. Household Automotive Finance Corp.*, 227 B.R. 501, 504–07 (N.D. Ill. 1998).

In response, Freeman asserts again that Ocwen has mischaracterized the pleadings, and Freeman is not seeking to bring an adversary action to recover damage remedies. Instead, she is asking the Court to enforce the Bankruptcy Court's orders by imposing contempt sanctions.

Ocwen replies that Freeman did not dispute there is no private right of action, and furthermore, this Court is not the proper avenue for Freeman to obtain the relief she seeks. She cannot seek an enforcement order and contempt sanctions for the Bankruptcy Court's orders in this District Court; her request is properly pursued in the Bankruptcy Court.

Ocwen's position is well-taken and supported by case law. Therefore, the Court **dismisses** Freeman's separate claim for violation of the Bankruptcy Court orders.

### 6. <u>Violation of Indiana's Crime Victim's Relief Act</u>

Similar to BONY's argument concerning the breach of contract claim, Ocwen argues that the Bankruptcy Code preempts "virtually all claims which allege misconduct in Bankruptcy proceedings." *Cox*, 242 B.R. at 449–50, *aff'd*, 239 F.3d 910 (7th Cir. 2001). A state law cause of action is preempted if, absent the Code, there would be no cause of action. *See id.* at 450. Furthermore, this Court has recognized that state-law claims based solely on conduct arising in a bankruptcy proceeding are preempted under the theory of "field preemption." *Carter*, 2016 U.S. Dist. LEXIS 128682. Freeman's state-law Crime Victim's Relief Act claim is premised entirely on Ocwen's alleged "conversion" of charges and fees disallowed by the Bankruptcy Court's order. Thus, Ocwen asserts, the claim is preempted, and the issue is solely under the Bankruptcy Court's jurisdiction.

Freeman did not respond to this argument or present any argument regarding this claim. In its reply brief, Ocwen points out that, "[a]s a result, Plaintiff has forfeited that claim and it must be dismissed with prejudice. *See Johnson v. United States*, 47 F. Supp. 2d 1075, 1080 (S.D. Ind. 1999)." (Filing No. 92 at 3.)

Freeman's failure to respond to the Motion to Dismiss this claim results in a waiver or abandonment of this claim. Regardless, Ocwen's argument is well-taken, and the claim is based entirely on the Bankruptcy Order and proceedings and is thus "field preempted." This claim is **dismissed**.

### 7.  <u>Violation of Indiana's Deceptive Consumer Sales Act</u>

Finally, Ocwen argues that Freeman has failed to state a claim for violation of the Indiana Deceptive Consumer Sales Act ("IDCSA"). Ocwen explains the IDSCA "provides remedies to consumers and the attorney general for practices that the General Assembly deemed deceptive in consumer transactions." *McKinney v. State*, 693 N.E.2d 65, 67 (Ind. 1998). There are two kinds of actionable deceptive acts: "uncured" and "incurable." *Id.* at 68. Ocwen argues that Freeman has failed to state a claim under the IDCSA because she has not alleged that she met the prerequisite steps to filing suit for an uncured act, and she has failed to plead the elements necessary for an incurable act.

Ocwen asserts that Freeman failed to allege that she gave Ocwen notice fully stating the nature of the alleged deceptive act and the actual damage suffered therefrom, which is required under the IDCSA. Freeman merely alleges that she provided notice to Ocwen of its willful unfair deceptive acts through its notices of errors. But she does not allege that those notices gave a complete description of the actual damage suffered. Thus, her pleadings are deficient for an uncured deceptive act under the IDCSA.

To support a claim for an incurable deceptive act under the IDCSA, a plaintiff must allege a scheme, artifice, or device with intent to defraud or mislead, because under the statute, "[a]n incurable act is done 'as part of a scheme, artifice, or device with intent to defraud or mislead.'" *Davis v. Contractability.com, LLC*, 2017 WL 413290 (S.D. Ind. Jan. 31, 2017) (citing Ind. Code § 24-5-0.5-2(a)(8)). Ocwen argues that Freeman has not alleged any such scheme, artifice, or device with intent to defraud or mislead, so a claim for an incurable deceptive act is not pled.

Freeman responds that her notices of errors were sent to Ocwen and provided sufficient notice for purposes of the IDCSA. She asserts that a review of the notices of error shows that they do provide a description of the damages suffered by Freeman because the damages are, or should be, obvious to a sophisticated servicer like Ocwen from the very nature and context of the errors described in the notices. The notices also spell out the nature of the alleged deceptive acts committed by Ocwen. The notices of errors were sufficient to serve the purpose of the IDCSA, which is to give Ocwen the opportunity to cure its deceptive actions. Freeman further argues that her allegations sufficiently plead a scheme, artifice, or device with intent to defraud or mislead, showing the "who, what, when, and how" of Ocwen's deception. Freeman asserts that her allegations of pattern and practice of similar servicing violations against other borrowers support this claim of an incurable deceptive act.

Ocwen replies that the IDCSA plainly requires the consumer's notice "shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom . . . ." Ind. Code § 24-5-0.5-5. While Freeman argues a sophisticated servicer like Ocwen should know the damages suffered by Freeman, Ocwen asserts that the statute requires more of Freeman before pursuing her claim. And while Freeman has pointed to allegations of servicing errors, none of those allegations

show that Ocwen intended to defraud or mislead Freeman, so an incurable deceptive act is not sufficiently pled.

Ocwen's arguments are well-taken. Freeman's notices of errors were sent to Ocwen with specific reference that the notices were sent pursuant to RESPA. There was no reference to the IDCSA in the notices. More importantly though, the notices failed to "state fully" the "actual damage suffered" from the alleged deceptive acts. This is a plain and explicit prerequisite to an IDCSA claim for an uncured deceptive act. Furthermore, the allegations of Ocwen's numerous servicing errors and failures to correct those errors in a manner that satisfied Freeman do not support the fact or inference of an intent to defraud or mislead. Thus, Freeman's allegations and attached notices fail to satisfy the pleading requirements for an IDCSA claim. Therefore, the Court **dismisses** Freeman's IDCSA claim asserted in the Second Amended Complaint.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS in part and DENIES in part** BONY's Motion to Dismiss (Filing No. 88) and **GRANTS in part and DENIES in part** Ocwen's Motion to Dismiss (Filing No. 86).

Freeman's TILA claim brought against BONY is dismissed, and the breach of contract claim against BONY is dismissed in part.

Freeman's RESPA claim against Ocwen is dismissed to the extent that it is based upon Section 2609, but in all other respects, the claim may proceed. The FDCPA claim against Ocwen is dismissed to the extent it is based on any conduct that occurred before December 6, 2017, and where it is based upon the Bankruptcy Case and Discharge. The FDCPA claim may proceed in all other respects. Freeman's FCRA claim against Ocwen is dismissed. The claim against Ocwen for violation of the Discharge Injunction is dismissed. The separate claim against Ocwen for violation

of the Bankruptcy Court orders is dismissed. Freeman's Indiana Crime Victim's Relief Act claim and IDCSA claim are dismissed.

The claims that have been dismissed are **dismissed with prejudice**. Freeman already has been given the opportunity to amend her Complaint twice, and the Court previously denied her request to amend her pleadings for a third time because the deadline passed for amending the pleadings. The Seventh Circuit has noted that "dismissal under Rule 12(b)(6) . . . is a dismissal with prejudice." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 2015).

**SO ORDERED.**

Date:   12/21/2020

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Rusty A. Payton
PAYTON LEGAL GROUP LLC
info@payton.legal

Nicholas H. Wooten
NICK WOOTEN, LLC
nick@nickwooten.com

Travis W. Cohron
CLARK QUINN MOSES SCOTT & GRAHN LLP
tcohron@clarkquinnlaw.com

Michael P. Maxwell, Jr.
CLARK QUINN MOSES SCOTT & GRAHN LLP
mmaxwell@clarkquinnlaw.com

John Curtis Lynch
TROUTMAN SANDERS LLP
john.lynch@troutman.com

Carter Randall Nichols
TROUTMAN SANDERS LLP
carter.nichols@troutman.com

Ethan Geoffrey Ostroff
TROUTMAN SANDERS LLP
ethan.ostroff@troutman.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DEMONA FREEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-03844-TWP-DLP |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Ocwen Loan Servicing, LLC ("Ocwen") (Filing No. 268), and a Motion for Leave to File Surreply filed by Plaintiff Demona Freeman ("Freeman") (Filing No. 391). Freeman initiated this action against Ocwen and now dismissed co-defendant Bank of New York Mellon ("BONY") (collectively, "Defendants") alleging violation of numerous federal statutes—the Real Estate Settlement Procedures Act, Truth in Lending Act, Fair Debt Collection Practices Act, Telephone Consumer Protection Act, and Fair Credit Reporting Act—as well as for breach of contract and other state law claims. After Freeman twice amended her Complaint, the Court narrowed her claims. (*See* Filing No. 475.) Ocwen then filed the instant Motion for Summary Judgment, seeking summary judgment on the two claims remaining against it. Also pending is Freeman's request for leave to file a surreply brief opposing summary judgment. For the following reasons, the Court **grants** Ocwen's Motion for Summary Judgment and **denies** Freeman's Motion for Leave to File Surreply.

# I.     <u>BACKGROUND</u>

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, they are presented in the light most favorable to Freeman as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court notes that this background section is not intended to provide a comprehensive explanation of all the facts of this case but rather provides only the facts necessary for resolving the instant Motions.

The Court further notes that certain evidence has been excluded pursuant to the Defendants' motions in *limine* and is not being considered when resolving the instant Motions. In deciding those motions in *limine*, the Court ruled that Freeman and her medical providers (Dr. Valerie Beard, Dr. Pynkerton Newton, and Alta Skelton) may not testify as to medical causation opinion of Freeman's purported medical issues; the cause, presentation, and/or progression of psychosomatic symptoms in patients generally; and whether stress may hypothetically cause hypertension (*see* <u>Filing No. 471 at 9</u>).  The Court also ruled that Freeman may not use during trial or for summary judgment her medical records (<u>Filing No. 337-4</u>; <u>Filing No. 336-23 at 23</u>), the OneMain term sheet describing a loan (<u>Filing No. 336-23 at 16</u>), and the statement of attorney's fees allegedly incurred in connection with her foreclosure (<u>Filing No. 336-40</u>) (*see* <u>Filing No. 473 at 8</u>).

## A.     <u>Factual Background</u>

Freeman is the owner of real property and improvements located at 17373 Pine Wood Lane, Westfield, Indiana 46074. She purchased the property on December 2, 2003, as her primary residence and financed the purchase by a loan as evidenced by a note and a mortgage on the

property.  The loan subsequently was assigned to BONY, and in September 2011, Ocwen began

servicing the loan on behalf of BONY (Filing No. 84-15; Filing No. 272-1 at 5–6, 185–93).

In 2008, Freeman began experiencing financial difficulties that led to her falling behind on

her mortgage payments, so on April 13, 2009, BONY filed a foreclosure action against Freeman

in the Hamilton County Superior Court. Three years later, on April 23, 2012, Freeman filed a

bankruptcy case pursuant to Chapter 13 of the United States Bankruptcy Code in the United States

Bankruptcy Court for the Southern District of Indiana (Filing No. 84 at 10).

In the bankruptcy case, a proof of claim was filed on BONY's behalf, asserting a secured

claim in the amount of $133,064.46 and pre-petition arrearages of $22,668.03 (Filing No. 84 at

11; see also In re Freeman, Case No. 12-04713 (Bankr. S.D. Ind.), ECF No. 47). The bankruptcy

trustee filed an objection to certain amounts in the proof of claim, which led to the bankruptcy

court entering an order that disallowed $10,289.84 from the arrearage amount in BONY's proof of

claim, leaving arrearages in the amount of $12,378.10. The bankruptcy court also disallowed a

$300.00 fee claimed on BONY's behalf related to the litigation over the objection to the proof of

claim (Filing No. 84 at 11–13; see also In re Freeman, Case No. 12-04713 (Bankr. S.D. Ind.), ECF

Nos. 53, 85).

On April 12, 2017, the bankruptcy trustee filed a notice of final cure payment, informing

the bankruptcy court that all of the allowed pre-petition arrearages and fees had been paid as well

as post-petition payments up to that point. Ocwen filed a response to the notice of final cure

payment on April 24, 2017, agreeing with the trustee's filing and indicating that the loan would be

due for the May 1, 2017 payment (Filing No. 84 at 13–14; see also In re Freeman, Case No. 12-

04713 (Bankr. S.D. Ind.), ECF Nos. 109 and doc). On November 21, 2017, Freeman obtained an

order of discharge in the Chapter 13 bankruptcy (Filing No. 84 at 14; *see also In re Freeman*, Case No. 12-04713 (Bankr. S.D. Ind.), ECF No. 132).

After the bankruptcy discharge, Ocwen undertook a reconciliation process of the loan in February 2018. However, an error was made during the initial reconciliation after the close of the bankruptcy, and disallowed amounts were not removed from the loan. Because of the error, the due date on the loan was incorrect in Ocwen's records, which led to Freeman's loan appearing to be delinquent even though it was not. The erroneous delinquency led to the loan being considered in default, triggering property inspections and the beginning of the foreclosure process in May 2018. Because of the erroneous default status on the loan, Ocwen informed Freeman during a June 2018 telephone call that it would accept only a full reinstatement payment and not a regular monthly payment (Filing No. 272-1 at 6–7; Filing No. 84-2; Filing No. 84-1 at 75).

Soon thereafter, by letter dated July 12, 2018, Freeman sent correspondence captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("RFI No. 1") to Ocwen in hopes of obtaining documents necessary to ascertain the cause of the alleged default. Ocwen received RFI No. 1 on July 17, 2018. On July 20, 2018, Ocwen sent correspondence to Freeman, acknowledging receipt of RFI No. 1. On July 23, 2018, Ocwen sent Freeman correspondence responding to RFI No. 1, explaining what documents were being sent to her (Filing No. 84-3; Filing No. 272-1 at 4, 18–19, 26–29).

On August 15, 2018, BONY filed a second foreclosure action against Freeman in the Hamilton County Superior Court (Filing No. 84-12). Then on October 29, 2018, Freeman sent correspondence captioned "Notice of Error Pursuant to Section 1024.35 of Regulation X" ("NOE No. 1") to Ocwen, alleging two errors committed by Ocwen. NOE No. 1 was received by Ocwen on November 1, 2018. On November 6, 2018, Ocwen sent correspondence to Freeman that

acknowledged receipt of NOE No. 1 (Filing No. 84-5; Filing No. 272-1 at 4–5, 151; Filing No. 272-4).

On November 13, 2018, Freeman sent correspondence captioned "Second Notice of Error Pursuant to Section 1024.35 of Regulation X" ("NOE No. 2") to Ocwen, alleging seven errors committed by Ocwen.  NOE No. 2 was received by Ocwen on November 19, 2018.  On November 20, 2018, Ocwen sent correspondence to Freeman that acknowledged receipt of NOE No. 2 (Filing No. 84-8; Filing No. 272-1 at 5, 158; Filing No. 272-5).  By a second letter dated November 13, 2018, Freeman sent correspondence captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("RFI No. 2") to Ocwen, asking for information regarding the servicing of Freeman's loan.  Ocwen received RFI No. 2 on November 17, 2018 (Filing No. 84-7; Filing No. 272-1 at 5).

On December 4, 2018, Freeman sent correspondence captioned "Third Notice of Error Pursuant to Section 1024.35 of Regulation X" ("NOE No. 3") to Ocwen, alleging two errors committed by Ocwen.  NOE No. 3 was received by Ocwen on December 7, 2018.  On December 10, 2018, Ocwen sent correspondence to Freeman that acknowledged receipt of NOE No. 3 (Filing No. 84-10; Filing No. 272-1 at 5, 178; Filing No. 272-7).

Two days after Freeman sent her NOE No. 3 to Ocwen, she initiated the instant federal lawsuit against Ocwen in this Court on December 6, 2018 (Filing No. 1).  Shortly thereafter, BONY agreed to voluntarily dismiss the second foreclosure action against Freeman, and an order dismissing BONY's claim and Freeman's counterclaim was entered on January 23, 2019, by the Hamilton County Superior Court (Filing No. 272-3).

Concerning the three notices of error sent to Ocwen by Freeman, Ocwen's counsel sent correspondence to Freeman's counsel, explaining that Ocwen would be utilizing the statutory

extension for time to respond to the notices of error. These letters regarding extensions of time for responding were sent to Freeman's counsel on December 10, 2018, December 20, 2018, and January 7, 2019 ([Filing No. 272-8 at 2](); [Filing No. 272-9 at 2](); [Filing No. 272-10 at 2]()). On January 7, 2019, Ocwen's counsel sent to Freeman's counsel a substantive response to NOE No. 1 ([Filing No. 272-12]()). Then on January 22, 2019, Ocwen's counsel sent to Freeman's counsel a substantive response to NOE No. 2 and a separate substantive response to NOE No. 3 ([Filing No. 272-13](); [Filing No. 272-14]()). Ocwen's responses to the notices of error provided an explanatory response to Freeman's asserted errors and also provided supporting documents.

In preparing to respond to the notices of error, Ocwen undertook research and investigation of Freeman's account. Because of its findings from the research and investigation, Ocwen made changes to Freeman's account between November 23, 2018, and January 3, 2019, to correct its previous failure to remove disallowed amounts from Freeman's account. Ocwen removed disallowed fees and escrow amounts and made retroactive adjustments to the escrow charge on the account. After these changes were made, another reconciliation was undertaken, resulting in the account being paid through July 1, 2018, with an escrow surplus of $2,491.29 ([Filing No. 272-1 at 8](); [Filing No. 272-2 at 26]()–27).

Effective June 1, 2019, loan servicing for Freeman's loan was transferred from Ocwen to PHH Mortgage Services ("PHH"), the successor by merger to Ocwen. On June 7, 2019, PHH sent correspondence to Freeman, notifying her of the loan servicing transfer ([Filing No. 272-1 at 8](); [Filing No. 272-18]()). PHH's notice informed Freeman where her monthly payments should be made and provided a mortgage account record. The notice also informed Freeman that there were no late charges, collection costs, escrow advances, or non-sufficient funds fees on her account ([Filing No. 272-18 at 9]()).

B.   **Procedural Background**

On December 6, 2018, Freeman initiated this action against Ocwen by filing her initial

complaint (Filing No. 1). Approximately three months later, Freeman filed a first amended

complaint (Filing No. 24), and less than a year later, on September 20, 2019, Freeman filed a

Second Amended Complaint, the operative pleading in this case (Filing No. 84). The Second

Amended Complaint asserts eleven claims against Ocwen and previously dismissed co-defendants

BONY and Manley Deas Kochalski, LLC. The sole claim against Manley Deas Kochalski, LLC

for violation of the Fair Debt Collection Practices Act ("FDCPA") was dismissed with prejudice

by stipulation of the parties (*see* Filing No. 112; Filing No. 113). The claim against Ocwen for

violation of the Telephone Consumer Protection Act was also dismissed with prejudice by

stipulation of the parties (*see* Filing No. 123; Filing No. 124).

In September 2019, Defendants Ocwen and BONY filed motions to dismiss the claims

brought against them. After the motions were fully briefed, the Court issued a ruling, dismissing

some of the claims and narrowing other claims (Filing No. 133). The Court dismissed Freeman's

claim against BONY for violations of the Truth in Lending Act. *Id.* at 24. The Court also dismissed

the following claims against Ocwen: violation of the Fair Credit Reporting Act, violation of the

Discharge Injunction and Federal Rule of Bankruptcy Procedure 3002.1, violation of the

Bankruptcy Court Orders, violation of the Indiana Crime Victim's Relief Act, and violation of the

Indiana Deceptive Consumer Sales Act.

The Court dismissed in part the claim against Ocwen for violations of the Real Estate

Settlement Procedures Act ("RESPA") to the extent that the claim is based upon Section 2609, but

in all other respects, the claim survived the motion to dismiss. *Id.* at 27. The Court also dismissed

in part the claim against Ocwen for violations of the FDCPA to the extent that the claim is based

upon the Bankruptcy Case and Discharge and to the extent that it is based on any conduct that occurred before December 6, 2017. In all other respects, the FDCPA claim survived the motion to dismiss. *Id.* at 29.

In the Order on Defendants' Motions to Dismiss, the Court narrowed Freeman's breach of contract claim against BONY (*see* Filing No. 133 at 18–19). Following additional litigation, BONY filed a motion for summary judgment on the narrowed breach of contract claim. The Court granted that motion, awarding summary judgment in favor of BONY, and with no remaining claims pending against BONY, the Court terminated BONY as a defendant in this action (Filing No. 475 at 17).

On April 25, 2022, Ocwen filed its pending Motion for Summary Judgment, asking the Court to enter summary judgment on the two remaining claims that survived the motion to dismiss. Throughout the subsequent months, the parties filed numerous ancillary motions related to the Motion for Summary Judgment, including Freeman's Motion for Leave to File Surreply.

## II.     **SUMMARY JUDGMENT STANDARD**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

"However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.      <u>DISCUSSION</u>

Ocwen asks the Court to enter summary judgment in its favor on the two remaining claims that Freeman has asserted against it: (1) violation of RESPA to the extent that the claim is not based upon Section 2609, and (2) violation of the FDCPA to the extent that the claim is not based upon the Bankruptcy Case and Discharge and to the extent that it is not based on any conduct that occurred before December 6, 2017. After Ocwen filed its summary judgment reply brief, Freeman requested leave to file surreply. The Court will first address the Motion for Leave to File Surreply and then turn to the parties' summary judgment arguments.

A.   **Motion for Leave to File Surreply**

On April 25, 2022, Ocwen filed the instant Motion for Summary Judgment. Four months

later, on August 18, 2022, Freeman filed her response to the Motion. Approximately one month

later, on September 6, 2022, Ocwen filed its reply brief. Freeman then filed a Motion for Leave to

File Surreply, arguing that Ocwen advanced new arguments and asserted objections to her

evidence in its reply brief.

> The purpose for having a motion, response and reply is to give the movant
> the final opportunity to be heard and to rebut the non-movant's response, thereby
> persuading the court that the movant is entitled to the relief requested by the motion.
> New arguments and evidence may not be raised for the first time in a reply
> brief. Reply briefs are for replying, not raising new arguments or arguments
> that could have been advanced in the opening brief. Courts allow a surreply brief
> only in limited circumstances to address new arguments or evidence raised in the
> reply brief or objections to the admissibility of the evidence cited in the response.

*Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utils.*, 410 F. Supp. 3d 943, 949 (S.D. Ind.

2019) (internal citations and quotation marks omitted).

By her Motion,

> Freeman respectfully seeks leave to file the attached Surreply to Ocwen's
> Reply in Support for Summary Judgment ('Surreply'), confront arguments,
> objections, and misstatements of law raised in its Reply for the first time. The
> Surreply is limited in focus to these issues and provides the Court with relevant
> authority and citation to the record Ocwen has omitted.

(Filing No. 391 at 1.) However, upon review of the parties' summary judgment briefing and

surreply briefing, the Court determines that Ocwen's reply brief did not inject new arguments or

issues into the summary judgment briefing.  A review of the parties' opening, response, and reply

briefs reveals that Ocwen's reply brief arguments were appropriate rebuttal to Freeman's response

brief arguments.  Ocwen did not raise new arguments or issues in its reply brief.  Regarding the

limited evidentiary objections asserted in Ocwen's reply brief, the Court notes that those objections

were fully briefed (including Freeman's opposition), analyzed, and decided in the Defendants'

motions in *limine* and the Court's Orders on those motions. In light of the limited purposes of a surreply brief and the limited circumstances under which they are permitted (which do not exist here), the Court **denies** Freeman's Motion for Leave to File Surreply as her surreply brief is an impermissible attempt to usurp from the movant the final opportunity to be heard.

**B.**     **Ocwen's Motion for Summary Judgment**

Freeman's two remaining claims against Ocwen allege violations of RESPA and the FDCPA. In ruling on the Defendants' motions to dismiss, the Court narrowed these two claims. The Court dismissed the RESPA claim to the extent it is based upon Section 2609. And the Court dismissed the FDCPA claim to the extent it is based upon the Bankruptcy Case and Discharge and to the extent that it is based on any conduct that occurred before December 6, 2017 (*see* Filing No. 133 at 35). The Court will first address the RESPA claim and then turn to the FDCPA claim.

**1.**     **Real Estate Settlement Procedure Act (RESPA) Claim**

Freeman's RESPA claim is based on her NOE No. 1, NOE No. 2, NOE No. 3, RFI No. 1, and RFI No. 2 that she sent to Ocwen. Among the many regulations that implement RESPA, two provisions provide that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a). And a servicer must respond to a notice of error by *either*

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a

statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1). The regulations also establish time requirements for acknowledging receipt of a notice of error,[1] responding to a notice of error,[2] and utilizing an extension of time to respond to a notice of error.[3]

On October 29, 2018, Freeman sent NOE No. 1 to Ocwen, alleging two errors committed by Ocwen. NOE No. 1 was received by Ocwen on November 1, 2018. On November 6, 2018, Ocwen sent correspondence to Freeman that acknowledged receipt of NOE No. 1. One of the errors asserted by Freeman was a failure to provide an accurate payoff balance amount, which normally requires a response within a seven-day deadline; however, Freeman coupled this asserted error with another asserted error that provides for the thirty-day deadline, and Freeman acknowledged in her correspondence to Ocwen that its required response fell under the thirty-day deadline (Filing No. 84-5 at 1). Ocwen's response was due on December 14, 2018, but before that deadline expired, Ocwen notified Freeman that it would be utilizing the statutorily permitted extension, thereby making its response due on January 8, 2019. Ocwen's counsel sent to Freeman's counsel a timely substantive response to NOE No. 1 on January 7, 2019.

On November 13, 2018, Freeman sent NOE No. 2 to Ocwen, alleging seven errors committed by Ocwen. NOE No. 2 was received by Ocwen on November 19, 2018, and on November 20, 2018, Ocwen sent correspondence to Freeman that acknowledged receipt of NOE

---

[1] 12 C.F.R. § 1024.35(d): within five (5) days excluding legal public holidays, Saturdays, and Sundays of a servicer receiving a notice of error from a borrower.

[2] 12 C.F.R. § 1024.35(e)(3)(i): within thirty (30) days excluding legal public holidays, Saturdays, and Sundays of a servicer receiving a notice of error from a borrower.

[3] 12 C.F.R. § 1024.35(e)(3)(ii): a servicer may extend the time period for responding by an additional fifteen (15) days excluding legal public holidays, Saturdays, and Sundays.

No. 2. Ocwen's response was due on January 3, 2019, but before that deadline expired, Ocwen notified Freeman that it would be utilizing the statutorily permitted extension, thereby making its response due on January 25, 2019. Ocwen's counsel sent to Freeman's counsel a timely substantive response to NOE No. 2 on January 22, 2019.

On December 4, 2018, Freeman sent NOE No. 3 to Ocwen, alleging two errors committed by Ocwen. NOE No. 3 was received by Ocwen on December 7, 2018. On December 10, 2018, Ocwen sent correspondence to Freeman that acknowledged receipt of NOE No. 3. Ocwen's response was due on January 23, 2019, but before that deadline expired, Ocwen notified Freeman that it would be utilizing the statutorily permitted extension, thereby making its response due on February 13, 2019. Ocwen's counsel sent to Freeman's counsel a timely substantive response to NOE No. 3 on January 22, 2019.

On July 12, 2018, Freeman sent RFI No. 1 to Ocwen, requesting information and documents concerning her account. Ocwen received RFI No. 1 on July 17, 2018, and on July 20, 2018, Ocwen sent correspondence to Freeman, acknowledging receipt of RFI No. 1. Three days later, on July 23, 2018, Ocwen timely sent Freeman correspondence responding to RFI No. 1, explaining what documents were being sent to her.

On November 13, 2018, Freeman sent RFI No. 2 to Ocwen, asking for information regarding the servicing of her loan. Ocwen received RFI No. 2 on November 17, 2018, thereby making the response due on January 2, 2019. Freeman initiated this federal lawsuit on December 6, 2018, before a response was due from Ocwen regarding NOE No. 1, NOE No. 2, NOE No. 3, and RFI No. 2.

Ocwen argues that the timing of Freeman's lawsuit is fatal to her RESPA claim as to NOE No. 1, NOE No. 2, NOE No. 3, and RFI No. 2. Ocwen asserts that a plaintiff must have standing

at the time the original complaint is filed. *See Pennell v. Glob. Tr. Mgmt. LLC*, 990 F.3d 1041, 1044 (7th Cir. 2021). "Article III standing asks whether the complaint clearly alleges facts demonstrating that [the plaintiff] has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) (internal quotation marks omitted).

Ocwen argues that Freeman clearly lacks standing because she filed her original complaint on December 6, 2018, alleging violation of RESPA with respect to the three notices of error and RFI No. 2, before the statutory deadline to respond had expired. Thus, Freeman could not have suffered any injury as a result of the notices of error or RFI No. 2 because the thirty-day deadline had not expired.

Freeman responds,

This argument is a red herring. Though Freeman's Original Complaint was filed on December 6, 2018, allegedly before the 30-day deadline to respond to RFI No. 2 had expired, Freeman's Second Amended Complaint – the operative complaint – was filed on September 20, 2019, long after the 30-day deadline to respond to RFI No. 2 had expired. As Ocwen knows or should know, "an amended complaint completely replaces previous complaints, . . . ." *Ross v. Carter*, No. 1:20-cv-00876-JPH-MPB, 2020 WL 3104374, at *1 (S.D. Ind. June 10, 2020) Doc. 25 (additional citations). Accordingly, Freeman had indeed suffered an injury as a result of RFI No. 2, and had standing, at the time the operative complaint was filed.

(Filing No. 365 at 35.)

As to the notices of error, Freeman similarly argues,

Freeman's Second Amended Complaint – the operative complaint – was filed on September 20, 2019, long after the 30-day deadline to respond to the NOE's had expired. *See Ross*, 2020 WL 3104374, at *1 ("an amended complaint completely replaces previous complaints, . . . ."). Accordingly, Freeman had indeed suffered an injury as a result of the NOE's, and had standing, at the time the operative complaint was filed.

*Id.*

The case upon which Freeman relies does not stand for the legal proposition for which Freeman asserts that it stands. *Ross* does not discuss or analyze standing. That case simply and fleetingly stated the unremarkable and undisputed legal principle that an amended complaint replaces any previous complaints.

The Seventh Circuit has clearly and unequivocally stated,

> The plaintiff "must establish standing at the time suit is filed and cannot manufacture standing afterwards." *Pollack v. United States DOJ*, 577 F.3d 736, 742 n.2 (7th Cir. 2009). The Article III standing inquiry "remains open to review at all stages of the litigation." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255, 114 S. Ct. 798, 127 L. Ed. 2d 99 (1994).

*Pennell*, 990 F.3d at 1044. Citing the United States Supreme Court, the Seventh Circuit explained,

> Because standing goes to the jurisdiction of a federal court to hear a particular case, it must exist at the commencement of the suit. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 63 L. Ed. 2d 479, 100 S. Ct. 1202 (1980) (defining standing as the requisite personal interest that must exist at the commencement of the litigation) . . . . The requirements of standing must be satisfied from the outset . . . .

*Perry v. Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999). Furthermore,

> [S]tanding must be present at all stages of the litigation, including on appeal. When a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness. Mootness is the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).

*Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010) (internal citations and quotation marks omitted).

And finally, the Supreme Court has clearly stated, "While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (emphasis added, internal citations omitted).

The Supreme Court and the Seventh Circuit have made it abundantly clear that the standing analysis focuses on the time that the original complaint is filed and the lawsuit has commenced, not at the time of any subsequently filed amended complaint. While standing must exist throughout the life of the litigation to avoid mootness, standing must exist at the time the plaintiff brings the lawsuit. Ocwen's argument is well-taken. Pertaining to NOE No. 1, NOE No. 2, NOE No. 3, and RFI No. 2 for the RESPA claim, no injury occurred or could have occurred at the time that Freeman filed her federal lawsuit because Ocwen's deadline to respond had not yet expired. When this lawsuit was commenced, Ocwen still had additional time to provide an adequate response to Freeman's NOE No. 1, NOE No. 2, NOE No. 3, and RFI No. 2, and thus, there was no injury. Therefore, summary judgment in favor of Ocwen is appropriate on the RESPA claim to the extent it is based on Freeman's NOE No. 1, NOE No. 2, NOE No. 3, and RFI No. 2.

Regarding RFI No. 1, Ocwen argues that it is entitled to summary judgment on the RESPA claim because it fully complied with the statute's requirements. Ocwen points out,

> If a loan servicer receives a valid qualified written request, RESPA requires it to take the following actions, but only "if applicable": (A) "make appropriate corrections in the account of the borrower"; (B) after investigating the account, "provide the borrower with a written explanation or clarification" explaining why the account is correct; or (C) "provide the borrower with . . . [the] information requested by the borrower" or explain why it is "unavailable".

*Perron v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (internal citations omitted). Ocwen argues that it met its statutory obligations by fully responding to RFI No. 1 by providing the documents and information requested relating to the servicing of Freeman's account. Ocwen met all of the technical requirements of RESPA, including sending an acknowledgement letter.

In response, Freeman contends,

> Freeman directed RFI No. 1 on July 12, 2018 and it was received by Ocwen on or about July 17, 2018. [Filing No. 84-3]. Ocwen responded via correspondence dated July 20, 2018 and July 23, 2018. A true and accurate copy of Ocwen's

combined responses are attached hereto as [Filing No. 336-39]. In addition, a table reflecting the documents requested and whether they were provided is attached hereto as ***Exhibit QQ***. As set forth therein and as reflected in the documents themselves, Ocwen did not respond to Freeman's RFI No. 1 or RFI No. 2 in accordance with 12 CFR § 1024.36(d)(1). *See* [Filing No. 336-39]; *see also **Exhibit QQ**.* The documents and information requested were appropriate and readily available to Ocwen yet it declined to provide them. It provides nothing by way of specific evidence to support the contrary.

(Filing No. 365 at 27–28.)

After reviewing the designated evidence, the statutory requirements, and the parties' arguments, the Court concludes that Ocwen appropriately responded to Freeman's RFI No. 1 and is entitled to summary judgment on the RESPA claim as it relates to RFI No. 1.  Freeman's "Exhibit QQ" is nothing more than an attorney's subjective summarization and characterization of some evidence, which is not authenticated or sworn to. Ocwen's acknowledgment of receipt and substantive response to RFI No. 1 (Filing No. 336-39; Filing No. 272-1 at 4, 16–149) were timely provided to Freeman, and they sufficiently responded to Freeman's request for information. Ocwen's responses provided written explanation to Freeman's questions, provided supporting documentation, and asked for additional information from Freeman where more information was needed to be able to respond further.  Ocwen's responses also provided a statement of Freeman's right to request documents relied upon by the servicer in reaching its determination, information regarding how Freeman could request such documents, and contact information, including a telephone number, for further assistance.  As to Freeman's RFI No. 1, Ocwen satisfied its RESPA obligations.

Because Ocwen fulfilled its RESPA duties as to RFI No. 1, and because Freeman lacks standing as to NOE No. 1, NOE No. 2, NOE No. 3, and RFI No. 2, summary judgment is **granted** in favor of Ocwen on Freeman's RESPA claim.

Concerning Freeman's allegations of a pattern or practice of RESPA violations, Freeman argues that she "has also established numerous violations of RESPA with respect to other parties as well as herself by way of portions of the RCRs set out above. *See also* Ocwen_006925, attached to Filing No. 337-2 as *Exhibit F*, dealing with the tracking of consumer complaints." (Filing No. 365 at 38.) Freeman continues, "This risk area remained unresolved in 2016 and there is nothing in the record to evidence these issues were resolved before the relevant time period." *Id.* "This, along with other portions of the RCRs and the stark similarity between this case and *Saccameno*, 372 F. Supp. 3d 609 (N.D. Ill. 2018), create a question of fact as to whether Ocwen has engaged in a pattern and practice of servicing misconduct." *Id.*

Ocwen replies,

> Plaintiff's claims of a "pattern and practice" of violations under RESPA is supported by nothing more than conclusory allegations and fails. Even assuming that a claim of pattern and practice under RESPA may involve one or many borrowers, the cases Plaintiff cites bely her argument. Specifically, Plaintiff cites (ostensibly) to *Quimby v. Caliber Home Loans*, 2015 WL 3751511, at *2 (S.D. Ind. 2015) and *Obazee v. Bank of New York Mellon*, 2015 WL 8479677, at *3 (N.D. Tex. 2015), both of which concern whether the plaintiffs had sufficiently alleged a "pattern and practice" such that their claims could survive a motion to dismiss. Moreover, *Obazee* notes specifically that "[o]ther courts have held – quite correctly – that '[a]lleging a pattern or practice of *noncompliance* requires more than a bare assertion' of the making of complaints. One reason that alleging the making of complaints is insufficient to plead a 'pattern or practice' is because '"complaints" do not equate to "noncompliance[.]"'" *Obazee*, 2015 WL 8479677 at *3 (emphasis in original) (citations omitted). In support of her allegations, Plaintiff argues merely that she "has also established numerous violations of RESPA with respect to other parties as well as herself by way of portions of the RCRs set out above," Pl.'s Opp. at 38, which she herself characterizes as "dealing with the tracking of consumer *complaints*." *Id.* (emphasis added). Even if the RCRs were relevant and admissible evidence, such a conclusory allegation as to what Plaintiff has established and Plaintiff's concession that such evidence deals with complaints rather than cases of non-compliance is insufficient to establish a genuine dispute of material fact. *See Obazee*, 2015 WL 8479677 at *3. Thus, Plaintiff has failed to establish a pattern and practice of noncompliance under RESPA and therefore her claim for statutory damages fails as a matter of law.

(Filing No. 376 at 35–36.)

Ocwen further asserts that the Seventh Circuit has held that in order to show a "pattern or practice" under RESPA, there must be more than random examples of similar behavior; rather, there must be some evidence of "coordination." *See Perron*, 845 F.3d at 858. And fatal to Freeman's pattern or practice claim is that Ocwen did not violate RESPA in this case. There can be no pattern or practice claim against Ocwen in this case because there is no violation here to be a part of any pattern or practice.

The Court agrees with Ocwen; the designated evidence does not establish a pattern or practice of noncompliance with RESPA that is connected to any violation of RESPA against Freeman in this case. The evidence shows that Ocwen complied with RESPA as to its interactions with Freeman, so Freeman cannot establish that Ocwen failed to comply with RESPA making it liable to Freeman for additional damages in the case of a pattern or practice of noncompliance with the requirements of RESPA. *See* 12 U.S.C. § 2605(f). Thus, summary judgment is appropriate in favor of Ocwen as to Freeman's pattern or practice allegations.

### 2.   Federal Debt Collection Practices Act (FDCPA) Claim

When the Court ruled on Ocwen's motion to dismiss, the Court concluded, "[t]he FDCPA claim against Ocwen is dismissed to the extent it is based on any conduct that occurred before December 6, 2017, and where it is based upon the Bankruptcy Case and Discharge. The FDCPA claim may proceed in all other respects." (Filing No. 133 at 35.) In reaching this conclusion, the Court explained,

> The Court first notes that the Supreme Court recently held that the discovery rule does not apply to the FDCPA to extend the one-year statute of limitations, which begins on the "date on which the violation occurs." *Rotkiske v. Klemm*, 140 S. Ct. 355 (U.S. 2019). Therefore, the Court **grants** Ocwen's Motion to Dismiss the FDCPA claim to the extent it is based on any conduct that occurred before December 6, 2017, because this case was filed on December 6, 2018. The Court agrees with Ocwen's position regarding preemption or preclusion of the FDCPA claim to the extent it is based upon the bankruptcy proceedings and the Bankruptcy

Code. Paragraph 257 of the Second Amended Complaint contains explicit references to the Bankruptcy Case and Discharge, and therefore, the Court **dismisses** the FDCPA claim to the extent it is based upon these allegations.

The remaining allegations supporting Freeman's FDCPA claim are not based solely on conduct arising from the bankruptcy proceeding, so those theories of liability are not preempted. Freeman has alleged sufficient facts regarding Ocwen's conduct to support a claim for an FDCPA violation to move beyond the motion to dismiss stage. The Court **denies** dismissal of the FDCPA claim based upon Freeman's allegations not directly tied to the Bankruptcy Case and Discharge.

*Id.* at 29.

Ocwen argues that it is entitled to summary judgment on Freeman's FDCPA claim because (1) Freeman lacks Article III standing as she did not suffer a concrete injury that is fairly traceable to Ocwen's challenged conduct, (2) the FDCPA claim is preempted by the Bankruptcy Code, and (3) any alleged FDCPA violation was the result of a *bona fide* error. Because the issue of standing and a lack of concrete injury is dispositive of the FDCPA claim, the Court focuses its discussion and analysis on that argument.

"Standing must be established with the manner and degree of evidence required at the successive stages of the litigation." *Pierre v. Midland Credit Mgmt.*, 29 F.4th 934, 939 (7th Cir. 2022) (internal quotation marks and citation omitted). Now at the summary judgment stage of litigation, Freeman cannot merely rest upon her bare allegations; she must support her FDCPA claim with admissible designated evidence.

Standing has three elements. A plaintiff must have (1) a concrete and particularized injury in fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by judicial relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Without "an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019).

*Pierre*, 29 F.4th at 937.

The Seventh Circuit has explained,

A concrete injury is "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) (quotation marks omitted). Qualifying injuries are those with "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204 (quoting *Spokeo*, 578 U.S. at 341). This standard includes "traditional tangible harms, such as physical harms and monetary harms," as well as "[v]arious intangible harms," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*; *see also Spokeo*, 578 U.S. at 340–42.

*Pierre*, 29 F.4th at 937–38.

A "concrete" injury must be "*de facto*," meaning it must actually exist. *Spokeo*, 578 U.S. at 340. A plaintiff cannot satisfy the requirement of standing by alleging a bare procedural violation because a violation of a procedural requirement may result in no harm. *Id.* at 342. "A plaintiff seeking money damages has standing to sue in federal court only for harms that have in fact materialized." *Pierre*, 29 F.4th at 938 (citing *TransUnion*, 141 S. Ct. at 2210–11).

Within the context of FDCPA claims, the Seventh Circuit has held,

> As our bevy of recent decisions on FDCPA standing makes clear, anxiety and embarrassment are not injuries in fact. Indeed, we have expressly rejected "stress" as constituting concrete injury following an FDCPA violation. *Pennell v. Global Tr. Mgmt.*, 990 F.3d 1041, 1045 (7th Cir. 2021). Likewise, it is not enough for a plaintiff to be "annoyed" or "intimidated" by a violation. *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020). Nor is it enough for a plaintiff to experience "infuriation or disgust" or "a sense of indignation." *Id.* Likewise, a plaintiff's "state of confusion" resulting from an FDCPA-deficient communication, without any ensuing detriment, is not a concrete injury for if it were, "then everyone would have standing to litigate about everything." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068–69 (7th Cir. 2020). These are quintessential abstract harms that are beyond our power to remedy. The same is true of the stress and embarrassment that [plaintiff] complains of in this case.

*Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668–69 (7th Cir. 2021). *See also Pucillo v. Nat'l Credit Sys.*, 66 F.4th 634, 638–39 (7th Cir. 2023) (being "concerned," "upset," "worried," "stressed," or "alarmed" is not a concrete injury); *Markakos v. Medicredit, Inc.*, 997

F.3d 778, 780 (7th Cir. 2021) ("confusion" and "aggravation" is not a concrete injury; there must be more than just an emotional response).

Ocwen argues that, in this case, Freeman has not shown that she has suffered a concrete injury fairly traceable to its alleged violations of the FDCPA.  Instead, Ocwen asserts, all that Freeman has alleged is that she suffered anxiety, stress, embarrassment, and psychological harm, and this is not enough to rise to the level of a concrete injury to support Article III standing for an FDCPA claim.  Freeman has not paid any money to Ocwen that she was not legally obligated to pay under the terms of her loan, and she has not acted to her detriment in any way.  Instead, she has allegedly suffered vague emotional damages.  Ocwen argues that Freeman failed to designate admissible evidence to support a concrete injury, and she advances arguments based upon theories and facts that were never alleged in the pleadings or disclosed during discovery and that she contradicts with her own evidence.

In response, Freeman contends that she has Article III standing because Ocwen's FDCPA violations have resulted in concrete injuries to her.  She argues that these concrete injuries are in the form of foreclosure fees and costs; $12,067.50 in attorney's fees and costs owed to Clark, Quinn, Moses, Scott & Grahn, LLP to defend against a foreclosure action; a loss of time in disputing charges and contacting her lawyers; and physical manifestations of her emotional distress. She further argues that she has been concretely injured because her claim is akin to the recognized claims of reputational harm caused by defamation; portrayal in a false light; unjustifiable litigation torts leading to mental distress; loss of consortium leading to marital stress; and invasion of privacy or intrusion upon seclusion.

After careful consideration of the controlling case law, the admissible designated evidence, and the parties' arguments, the Court determines that Freeman has failed to establish that she

suffered a concrete injury that is fairly traceable to Ocwen's alleged violations of the FDCPA; thus, Freeman lacks Article III standing to pursue her FDCPA claim. In its Orders on the Defendants' motions in *limine*, the Court excluded medical causation opinion of Freeman's purported medical issues from Freeman and her medical providers; the cause, presentation, and/or progression of psychosomatic symptoms in patients generally; and whether stress may hypothetically cause hypertension. The Court also excluded Freeman's medical records, the OneMain loan term sheet, and the statement of attorney's fees allegedly incurred in connection with her foreclosure.

The Court is not required to scour the record in search of evidence to defeat a motion for summary judgment, and speculation or conjecture will not defeat a summary judgment motion. A motion for summary judgment also is not defeated by conclusory statements and allegations or by an attorney's characterizations.

There is no evidence in the record to support Freeman's claim that she was concretely injured by having to incur attorney's fees from the foreclosure proceedings because that evidence was excluded by the Order in *limine* (*see* Filing No. 473). There also is no admissible evidence in the record that Freeman actually has paid fees, charges, or costs that were not proper. Similarly, Freeman has not designated any admissible evidence that her credit or reputation have been harmed by Ocwen's alleged FDCPA violations. Regarding Freeman's argument that she has been concretely injured because her FDCPA claim is similar to other recognized common law claims, Freeman's conclusory assertions are not supported by admissible evidence of actual injury, and at the summary judgment stage, Freeman must designate admissible evidence to move forward. Conclusory statements are not enough. The alleged result suffered by Freeman was embarrassment, anxiety, and stress, but these types of harm are not concrete injuries under Seventh Circuit FDCPA precedent.

Freeman repeatedly argues that she has suffered emotional or psychological harms that have resulted in physical manifestations of injury. However, there is no admissible evidence in the record of medical causation for Freeman's physical conditions, so she cannot support her allegation that Ocwen's FDCPA violations caused her physical injury arising from mental distress. Such assertion is based upon speculation and conjecture. Again, the Seventh Circuit has been clear that anxiety, stress, fear, confusion, and embarrassment are not concrete injuries for FDCPA standing.

Relying on an Illinois federal district court's opinion, Freeman argues that her loss of time dealing with Ocwen and working with her lawyers is sufficient to support a concrete injury. However, the Seventh Circuit very recently explained, "Making a call to a debt collector is not closely related to an injury that our legal tradition recognizes as providing a basis for a lawsuit. Nor is seeking legal advice." *Pierre*, 29 F.4th at 939.

In light of the admissible evidence that has been designated by the parties and the Seventh Circuit's recent FDCPA standing case law, Freeman has not shown that she suffered a concrete injury that is fairly traceable to Ocwen's alleged FDCPA violations. As such, she lacks standing to pursue her FDCPA claim against Ocwen. Ocwen is entitled to summary judgment on this claim.

## C.   **Counsel's Misrepresentations**

The Court takes a moment to note that an attorney's zealous advocacy for a client's position is expected. Misrepresenting case law and designated evidence is unacceptable. Unfortunately, Freeman's counsel crossed the line into the unacceptable in opposing summary judgment.

For example, when discussing the issue of standing and the timing of filing a complaint, Freeman's counsel represented to the Court that the case *Ross v. Carter*, 2020 WL 3104374 (S.D. Ind. June 10, 2020), stands for the proposition that an amended complaint completely replaces any previous complaints, so standing is determined at the time the operative complaint is filed. Yet,

the order in *Ross* was the court's simple screening order, and it did not consider, analyze, or discuss in any way principles of standing.

After Ocwen pointed out in its reply brief that Freeman's counsel had grossly taken out of context the quote from *Ross* and that *Ross* did not discuss standing, Freeman's counsel persisted in misrepresenting the case law to the Court. In the proposed surreply brief, Freeman's counsel represented that the Seventh Circuit in *Wellness Cmty. Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995), held that standing must be considered on the basis of the amended complaint, not the original complaint, because it is well established that the amended pleading supersedes the original pleading. However, again, the court in *Wellness* did not consider, analyze, or discuss in any way principles of standing. Rather, the court was considering whether federal question jurisdiction or diversity jurisdiction applied based on consideration of either the original or amended complaint. The Seventh Circuit did not hold in *Wellness*—as Freeman's counsel represented—that standing must be considered on the basis of the amended complaint, not the original complaint.

Freeman's counsel misrepresented to the Court that Ocwen's deadlines to respond to Freeman's correspondence were December 14, 2018 (NOE No. 1), December 28, 2018 (NOE No. 2), January 18, 2019 (NOE No. 3), and December 28, 2019 (RFI No. 2) (*see* Filing No. 365 at 35). The correct dates for Ocwen's original deadlines were December 14, 2018 (NOE No. 1), January 3, 2019 (NOE No. 2), January 23, 2019 (NOE No. 3), and January 2, 2019 (RFI No. 2). What is more, Freeman's counsel did not bother to inform the Court that Ocwen had notified Freeman that it would be utilizing the statutorily permitted extension of time to respond, so the deadlines to respond actually were extended to January 8, 2019 (NOE No. 1), January 25, 2019 (NOE No. 2), February 13, 2019 (NOE No. 3), and January 24, 2019 (RFI No. 2).

An example of Freeman's counsel making representations to the Court that were not supported by the evidence is the following:

> Paragraph 11 of Ocwen's Statement of Undisputed Material Facts proclaims "Ocwen also did not receive any payments from Plaintiff between July 2018 and December 2018." This is incorrect. Freeman submitted payment to Ocwen by check for her monthly payments in July, August, September, October and November 2018. Demona Freeman Dep. 98:6-11 [Filing No. 336-18]. Those checks were neither deposited nor returned. Ocwen's records do not reflect this because its system of record does not track such information. *See* Ocwen_Freeman 006883, "CGS-CMS - Cash Rejection Specifics - Q1-2014-001", attached to Filing No. 337-1 as ***Exhibit E***; Ocwen_Freeman 006885, "Misidentified Payments Are Misapplied or Not Remitted", attached to Filing No. 337-1 as ***Exhibit E***.

(Filing No. 365 at 11–12.)

Freeman failed to point to any evidence for her assertion that the "checks were neither deposited nor returned." As to Freeman's assertion that "Ocwen's records do not reflect this because its system of record does not track such information," the evidence cited by Freeman relates to issues with the rejection of cash payments in 2014, 2015, and early 2016, with an anticipated resolution date in April 2016, and the entry was last modified on January 7, 2016 (Filing No. 337-1 at 8). The other evidence cited by Freeman relates to issues when inaccurate or incomplete information is provided by the borrower, with an anticipated resolution date in May 2016, and the entry was last modified on February 12, 2016. *Id.* at 9. This evidence does not support Freeman's assertion that her checks allegedly sent in July, August, September, October, and November 2018 were not deposited or returned and Ocwen's system of records did not track such information.

When Freeman opposed the summary judgment motion filed by co-defendant BONY, Freeman's counsel represented that "Ocwen issued a Form 1098 Mortgage Interest Statement [Filing No. 336] to Freeman reflecting interest paid in 2018 in the amount of $2,056.38 when in fact she paid more. As a result, she will incur costs to amend her 2018 tax return. *See* Patterson Report [Filing No. 336]." (Filing No. 338 at 22 (bracketed information in original)). However,

upon examination of the Patterson Report, nowhere in the lengthy Patterson expert report does Patterson opine or conclude that Freeman will incur costs to amend her 2018 tax return, nor does he discuss her 2018 tax return.

Misrepresenting case law and designated evidence significantly delays the process of ruling on motions. This is especially burdensome and damaging in a federal district such as this one where the case load already is very heavy. Freeman's counsel is admonished regarding the actions taken in this case and should carefully consider the boundary between zealous advocacy for a client's position and misrepresenting evidence and case law.

## IV.   **CONCLUSION**

For the reasons discussed above, Ocwen's Motion for Summary Judgment (Filing No. 268) is **GRANTED**, and summary judgment is awarded in favor of Ocwen on Freeman's RESPA and FDCPA claims.  Furthermore, Freeman's Motion for Leave to File Surreply (Filing No. 391) is **DENIED**.  With no other claims remaining to be adjudicated, the final pretrial conference and the trial are **VACATED**, and all other pending motions are **DENIED as moot**.  Final judgment will issue under separate order.

**SO ORDERED.**

Date:   7/5/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Olivia Anne Hess
CLARK QUINN MOSES SCOTT & GRAHN LLP
ohess@clarkquinnlaw.com

Travis W. Cohron
CLARK QUINN MOSES SCOTT & GRAHN LLP
tcohron@clarkquinnlaw.com

Michael P. Maxwell, Jr.
CLARK QUINN MOSES SCOTT & GRAHN LLP
mmaxwell@clarkquinnlaw.com

Jennifer F. Perry
CLARK QUINN MOSES SCOTT & GRAHN LLP
jperry@clarkquinnlaw.com

Rusty A. Payton
PAYTON LEGAL GROUP LLC
info@payton.legal

John Curtis Lynch
TROUTMAN SANDERS LLP
john.lynch@troutman.com

Carter Randall Nichols
TROUTMAN SANDERS LLP
carter.nichols@troutman.com

Ethan Ostroff
TROUTMAN SANDERS LLP
ethan.ostroff@troutman.com

Nicholas H. Wooten
DC Law, PLLC
nick@texasjustice.com