No. 23-2512

# In the
# United States Court of Appeals
## for the Seventh Circuit

---

DEMONA FREEMAN,

*Plaintiff-Appellant,*

v.

OCWEN LOAN SERVICING, LLC and BANK OF NEW YORK MELLON,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division, No. 1:18-cv-03844-TWP-MKK.
The Honorable Tanya Walton Pratt, Judge Presiding.

---

## BRIEF OF DEFENDANTS-APPELLEES

---

JOHN C. LYNCH (*Counsel of Record*)
ETHAN G. OSTROFF
CARTER R. NICHOLS
TROUTMAN PEPPER HAMILTON
SANDERS LLP
222 Central Park Avenue Suite 2000
Virginia Beach VA 23462-0000
(757) 687-7500

*Counsel for Defendants-Appellees
Ocwen Loan Servicing, LLC and
The Bank of New York Mellon f/k/a The
Bank of New York as successor in interest
to JPMorgan Chase Bank, N.A., as Trustee
for C-BASS Mortgage Loan Asset-Backed
Certificates, Series 2005-RP1*




Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>23-2512</u>

Short Caption: <u>Demona A. Freeman v. Ocwen Loan Servicing, LLC, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    <u>Ocwen Loan Servicing, LLC</u>

    <u>Bank of New York Mellon</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    <u>Troutman Pepper Hamilton Sanders LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>Please see Exhibit A attached.</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

Attorney's Signature: <u>/s/ John C. Lynch</u>    Date: <u>August 31, 2023</u>

Attorney's Printed Name: <u>John C. Lynch</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: <u>Troutman Pepper Hamilton Sanders LLP</u>

    <u>222 Central Park Avenue, Suite 2000, Virginia Beach, Virginia 23462</u>

Phone Number: <u>757-687-7500</u>    Fax Number: <u>757-687-7510</u>

E-Mail Address: <u>john.lynch@troutman.com</u>

rev. 12/19 AK

## **APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

## **EXHIBIT A**

### **Defendant/Appellee Ocwen Loan Servicing, LLC**

PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC, is a wholly-owned subsidiary of Ocwen Financial Corporation, a publicly-traded company with no entity owning more than ten percent of its stock.

### **Defendant/Appellee Bank of New York Mellon**

The Bank of New York Mellon is a wholly-owned subsidiary of The Bank of New York Mellon Corporation. The Bank of New York Mellon Corporation is a Delaware corporation and a publicly held company. No publicly held company owns 10% or more of The Bank of New York Mellon Corporation's stock.

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2512

Short Caption: Demona A. Freeman v. Ocwen Loan Servicing, LLC, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Ocwen Loan Servicing, LLC

Bank of New York Mellon

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Troutman Pepper Hamilton Sanders LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Please see Exhibit A attached.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Ethan G. Ostroff    Date: August 24, 2023

Attorney's Printed Name: Ethan G. Ostroff

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: Troutman Pepper Hamilton Sanders LLP

222 Central Park Avenue, Suite 2000, Virginia Beach, Virginia 23462

Phone Number: 757-687-7541    Fax Number: 757-687-7510

E-Mail Address: ethan.ostroff@troutman.com

## **APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

## **EXHIBIT A**

### **Defendant/Appellee Ocwen Loan Servicing, LLC**

PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC, is a wholly-owned subsidiary of Ocwen Financial Corporation, a publicly-traded company with no entity owning more than ten percent of its stock.

### **Defendant/Appellee Bank of New York Mellon**

The Bank of New York Mellon is a wholly-owned subsidiary of The Bank of New York Mellon Corporation. The Bank of New York Mellon Corporation is a Delaware corporation and a publicly held company. No publicly held company owns 10% or more of The Bank of New York Mellon Corporation's stock.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __23-2512__

Short Caption: __Demona A. Freeman v. Ocwen Loan Servicing, LLC, et al.__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Ocwen Loan Servicing, LLC

    Bank of New York Mellon

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Troutman Pepper Hamilton Sanders LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Please see Exhibit A attached.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: __/s/ Carter R. Nichols__      Date: __August 31, 2023__

Attorney's Printed Name: __Carter R. Nichols__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes [✔]    No [ ]

Address: __Troutman Pepper Hamilton Sanders LLP__

    __222 Central Park Avenue, Suite 2000, Virginia Beach, Virginia 23462__

Phone Number: __757-687-7500__      Fax Number: __757-687-7510__

E-Mail Address: __carter.nichols@troutman.com__

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

**EXHIBIT A**

**Defendant/Appellee Ocwen Loan Servicing, LLC**

PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC, is a wholly-owned subsidiary of Ocwen Financial Corporation, a publicly-traded company with no entity owning more than ten percent of its stock.

**Defendant/Appellee Bank of New York Mellon**

The Bank of New York Mellon is a wholly-owned subsidiary of The Bank of New York Mellon Corporation. The Bank of New York Mellon Corporation is a Delaware corporation and a publicly held company. No publicly held company owns 10% or more of The Bank of New York Mellon Corporation's stock.

# TABLE OF CONTENTS

                                                                          **Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ............................................................. i

TABLE OF AUTHORITIES ....................................................................................... x

JURISDICTIONAL STATEMENT .............................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..........................................3

STATEMENT OF CASE ...........................................................................................3

I.      FACTUAL BACKGROUND ...........................................................................3

        A.      Origination and Ownership of the Loan. ..........................................3

        B.      Freeman's Chapter 13 Bankruptcy. ...................................................4

        C.      Ocwen's Servicing of the Loan Post-Bankruptcy. ............................6

        D.      Freeman's Purported Notices of Error and Ocwen's Investigations,
                Responses, and Corrections to the Loan. ..........................................9

        E.      Freeman's Alleged Damages and Absence of Proof. .....................11

        F.      Present Status of the Loan. ............................................................13

II.     PROCEDURAL HISTORY .........................................................................14

SUMMARY OF ARGUMENT ...............................................................................21

ARGUMENT ........................................................................................................23

I.      FREEMAN'S SECOND AMENDED COMPLAINT WAS DEVOID OF
        NONCONCLUSORY FACTUAL ALLEGATIONS NECESSARY TO
        PROPERLY STATE A CLAIM UNDER THE FCRA. ..................................23

        A.      Standard of Review and Applicable Law .......................................23

        B.      Freeman failed to sufficiently plead nonconclusory factual
                allegations for all of the elements necessary to state a claim under
                the FCRA and the claim was properly dismissed. .........................24

1.      The limited number of allegations Freeman relies on to support her argument unequivocally consist of insufficient legal assertions and conclusions, general background information, and threadbare recitations of the elements of an FCRA claim. ........................................................................25

2.      Freeman's reliance on the non-precedential and unpublished Lang v. TCF Nat'l Bank decision is improper and misplaced. .........29

3.      Freeman waived her ability to argue that documents attached to the Second Amended Complaint should have been considered by the district court in assessing whether she sufficiently pled her FCRA claim, and those document otherwise do not correct the deficiencies in the pleading. ...............30

4.      Even if this Court were to reverse the district court's decision with respect to Freeman's claim for a negligent violation of the FCRA, Freeman has wholly failed to articulate how her Second Amended Complaint adequately stated a claim for a willful violation of the statute. ...............................................33

II.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DISMISSING FREEMAN'S FCRA CLAIM WITH PREJUDICE.............................34

        A.      Standard of Review and Applicable Law........................................34

        B.      The district court did not abuse its discretion in dismissing Freeman's FCRA claim because she was given numerous attempts to amend her pleadings, failed to demonstrate good cause for further leave to amend, and never attempted to demonstrate the ability to cure the deficiencies. .......................................34

III.    FREEMAN FAILED TO DEMONSTRATE SHE HAS ARTICLE III STANDING TO MAINTAIN ANY CLAIM UNDER THE FAIR DEBT COLLECTION PRACTICES ACT THROUGH ADMISSIBLE EVIDENCE OF A CONCRETE AND PARTICULARIZED INJURY-IN-FACT. ..........................38

        A.      Standard of Review and Applicable Law........................................39

        B.      The majority of Freeman's arguments regarding alleged intangible injuries are improper because they were raised for the first time in opposition to Ocwen's Motion for Summary Judgment and were not pled in her original complaint. ...................................................41

C.      Freeman failed to demonstrate through designation of admissible evidence offered at summary judgment that she suffered a concrete intangible harm that actually materialized, and otherwise asserts alleged intangible injury that Seventh Circuit does not recognize as sufficient to confer Article III standing. ...........................................................44

    1.      There is no evidence to support a claim for defamation and false light. ..............................................................................44

    2.      There is no evidence to support a claim of invasion of privacy and intrusion upon seclusion...................................47

    3.      Abuse of process does not confer Article III standing under this Court's precedent. ........................................................49

D.      Freeman failed to demonstrate through designation of admissible evidence offered at summary judgment that she suffered a concrete tangible harm that actually materialized........................................................50

CONCLUSION.................................................................................................52

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .......................................54

CERTIFICATE OF SERVICE...............................................................................55

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. City of Indianapolis*,
   742 F.3d 720 (7th Cir. 2014) ...............................................................................34

*Alioto v. Town of Lisbon*,
   651 F.3d 715 (7th Cir. 2011) ...............................................................................34

*Arreola v. Godinez*,
   546 F.3d 788 (7th Cir. 2008) ...............................................................................34

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)...........................24, 29, 30

*Bowers v. Equifax Info. Servs.*,
   Case No. 1:19-cv-02584, 2020 U.S. Dist. LEXIS 205157 (S.D. Ind. Nov. 3,
   2020) ....................................................................................................................... 30

*Builders NAB LLC v. Federal Deposit Ins. Corp.*,
   922 F.3d 775 (7th Cir. 2019) ...............................................................................31

*Choice v. Kohn Law Firm*,
   77 F.4th 636 (7th Cir. 2023) ........................................................................ *passim*

*Dawson v. Gen Motors Corp.*,
   977 F.2d 369 (7th Cir. 1992) ...............................................................................31

*Demarais v. Gurstel Chargo, P.A.*,
   869 F.3d 685 (8th Cir. 2017) ...............................................................................50

*Demona Freeman v. Ocwen Loan Servicing, Inc.*,
   Case No. 1:18-cv-03844-TWP-DLP ....................................................................14

*Felts v. Wells Fargo Bank, N.A.*,
   893 F.3d 1305 (11th Cir. 2018) ......................................................................27, 28

*Foster v. PNC Bank, Nat'l Ass'n*,
   52 F.4th 315 (7th Cir. 2022) ...............................................................................40

*In re Freeman,*
Case No. 12-04713-JKC ...................................................................4

*Friends of the Earth, Inc. v. Laidlaw Environmental Services,*
528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)........................39

*Genesis Healthcare Corp. v. Symczyk,*
569 U.S. 66 (2013) ............................................................................38

*Gorman v. Wolpoff & Abramson, LLP,*
584 F.3d 1147 (9th Cir. 2009) .........................................................25

*Jackson v. Blitt & Gaines, P.C.,*
833 F.3d 860 (7th Cir. 2016) ............................................................23

*James Cape & Sons Co. v. PCC Constr. Co.,*
453 F.3d 396 (7th Cir. 2006) ............................................................37

*Kirksey v. R.J. Reynolds Tobacco Co.,*
168 F.3d 1039 (7th Cir. 1999) ..........................................................24

*Kyle v. Morton High Sch.,*
144 F.3d 448 (7th Cir. 1998) ............................................................31

*Lang v. TCF Nat'l Bank,*
249 Fed. Appx. 464 (7th Cir. 2007) ....................................18, 29, 30

*Leones v. Rushmore Loan Management Services LLC,*
749 Fed. App'x. 897 (11th Cir. 2018) ...............................................27

*Lewert v. P.F. Chang's China Bistro, Inc.,*
819 F.3d 963 (7th Cir. 2016) ............................................................39

*Lujan v. Defs. Of Wildlife,*
504 U.S. 555 (1992) .....................................................................38, 40

*McCottrell v. White,*
933 F.3d 651 (7th Cir. 2019) ............................................................40

*O'Boyle v. Real Time Resolutions, Inc.,*
910 F.3d 338 (7th Cir. 2018) ............................................................33

*Pennell v. Glob. Tr. Mgmt. LLC,*
    990 F.3d 1041 (7th Cir. 2021) ..............................................................39, 41, 42, 43

*Pierre v. Midland Credit Mgmt.,*
    29 F.4th 934 (7th Cir. 2022) ........................................................................ *passim*

*Pollack v. U.S. Dep't of Just.,*
    577 F.3d 736 ....................................................................................................39

*Sanchez v. Equifax Information Services, LLC,*
    No. 20-15306 (SDW) (LDW), 2021 WL 2134923 (D.N.J. 2021) ........................28

*Spellacy v. Wells Fargo Bank, N.A.,*
    No. 8:20-cv-02101-FLA (ADSx), 2021 WL 7285997, at *6 (C.D. Cal. 2021) ...................28

*Tamayo v. Blagojevich,*
    526 F.3d 1074 (7th Cir. 2008) ..........................................................................24

*Thornley v. Clearview AI, Inc.,*
    984 F.3d 1241 (7th Cir. 2021) ..............................................................39, 40, 43

*Wadsworth v. Kross, Lieberman & Stone, Inc.,*
    12 F.4th 665 (7th Cir. 2021) ................................................................46, 47, 50

*Weaver v. Champion Petfoods USA Inc.,*
    3 F.4th 927 (7th Cir. 2021) ...............................................................................40

*Wheeler v. Hronopoulos,*
    891 F.3d 1072 (7th Cir. 2018) ..........................................................................31

*Whitaker v. Milwaukee Cty., Wis.,*
    772 F.3d 802 (7th Cir. 2014) ........................................................................39, 43

*Young v. Equifax Credit Info. Servs., Inc.,*
    294 F.3d 631 (5th Cir. 2002) ...........................................................................27

**Statutes**

U.S. Const. art. III, § 2 ...........................................................................................38

15 U.S.C. § 1681 *et seq.*......................................................................................1, 16

15 U.S.C. § 1681i(a)(2)(A) ...................................................................................27

15 U.S.C. § 1681s-2(b) ........................................................................ *passim*

15 U.S.C. § 1681s-2(b)(1) ................................................................... 26

15 U.S.C. § 1681s-2(b)(1)(A)–(E) ....................................................... 25

15 U.S.C. § 1692 *et seq.* ................................................................ 1, 16

15 U.S.C. § 1692e(5) ........................................................................... 42

15 U.S.C. § 1692e(8) ........................................................................... 41

15 U.S.C. § 1692f(1) ........................................................................... 42

28 U.S.C. § 1291 ................................................................................. 2

28 U.S.C. § 1331 ................................................................................. 1

28 U.S.C. § 1332 ................................................................................. 1

28 U.S.C. § 1367(a) ............................................................................. 1

**Other Authorities**

Fed. R. App. P. 32(a)(6) ..................................................................... 54

Fed. R. App. P. 32(a)(7)(B) ............................................................... 54

Fed. R. App. P. 32(f) .......................................................................... 54

Fed. R. Civ. P. 8(a) ............................................................................ 24

Fed. R. Civ. P. 12(b)(6) ..................................................................... 23

Fed. R. Civ. P. 58 .............................................................................. 20

Ind. R. Trial P. 12(G) ......................................................................... 8

# JURISDICTIONAL STATEMENT

The amended jurisdictional statement of Plaintiff-Appellant Demona Freeman's ("Freeman") is incomplete and incorrect. The district court had federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Freeman's claims arose, in part, under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* The district court also had supplemental jurisdiction over Freeman's state law claims because they arose out of the same nucleus of operative. *See* 28 U.S.C. § 1367(a).

The district court also had diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000. Freeman is a natural person who is a citizen of Indiana. Defendants-Appellees Ocwen Loan Servicing, LLC ("Ocwen") has been succeeded by merger by PHH Mortgage Corporation ("PHH"), a wholly owned subsidiary of Ocwen Financial Corporation ("OFC"). PHH is incorporated under the laws of the state of New Jersey and has a principal place of business located at 2000 Midlantic Drive, Suite 410A, Mount Laurel, New Jersey 08054-1515. OFC is a corporation organized under the laws of the state of Florida and has a principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409. The Bank of New York Mellon f/k/a The Bank of New York as successor in interest to JPMorgan Chase Bank, N.A., as Trustee for C-BASS Mortgage Loan Asset-Backed Certificates, Series 2005-RP1 ("BONY") is a corporation

organized under the laws of Delaware and has its principal place of business in New York.  Therefore, BONY is a citizen of Delaware and New York.  Accordingly, complete diversity is present as between Freeman, BONY, and Ocwen notwithstanding PHH's succession by merger to Ocwen and, therefore, diversity jurisdiction would still be present in the underlying litigation.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1291 because this is an appeal from the final decision of a district court.  On December 21, 2020, the district court dismissed Count V of Freeman's Second Amended Complaint with prejudice.  AA001-036.  On July 5, 2023, the district court granted summary judgment in favor of Ocwen on all remaining claims.  AA037-064.  The district court entered final judgment on July 5, 2023.  (*See* ECF No. 486).  On August 2, 2023, Freeman filed a notice of appeal.  (*See* ECF No. 489).

(i)     Did Plaintiff-Appellant Demona Freeman ("Freeman") fail to state a claim against Ocwen upon which relief can be granted under the Fair Credit Reporting Act where her Second Amended Complaint was devoid of sufficient factual allegations to plausibly allege multiple elements of the claim?

(ii)    Did the district court abuse its discretion in dismissing Freeman's Fair Credit Reporting Act claim against Ocwen with prejudice after Freeman made multiple amendments to her pleadings, failed to demonstrate good cause for leave to amend after the deadline to do so had expired, and made no attempt to demonstrate an ability to cure her pleading deficiencies?

(iii)    Are a majority of Freeman's arguments barred because they were not alleged in her original Complaint and instead were raised for the first time in opposition to summary judgment, and/or has Freeman failed to demonstrate she had Article III standing to bring a claim against Ocwen under the Fair Debt Collection Practices Act through admissible evidence demonstrating a concrete and particularized injury-in-fact?

## STATEMENT OF CASE

## I.    FACTUAL BACKGROUND

### A.    Origination and Ownership of the Loan.

On December 2, 2003, Freeman purchased a house located at 17373 Pine Wood Lane, Westfield, Indiana 46240 (the "Property"). *See* Appellant's Appendix ("AA")66

¶¶ 2–3.  In order to finance the purchase of the home, Freeman executed an Adjustable-

Rate Note (the "Note") and Mortgage (the "Mortgage") (collectively the "Loan").  *See id.*

The Loan was subsequently assigned to The Bank of New York Mellon f/k/a The Bank of

New York as successor in interest to JPMorgan Chase Bank, N.A., as Trustee for C-BASS

Mortgage Loan Asset-Backed Certificates, Series 2005-RP1 ("BONY").  *See id.* ¶ 5.

### B.      Freeman's Chapter 13 Bankruptcy.

In 2008, Freeman began experiencing financial difficulties that led to her falling

behind on her mortgage payments under the Loan.  *See* AA074 ¶ 56.  As a result, on April

13, 2009, BONY filed a foreclosure action against Freeman in the Hamilton County

Superior Court, Case No. 29D01-0904-MF-000484 (the "First Foreclosure Case").[1]  Ocwen

began servicing the Loan on September 1, 2011.  *See id.* ¶ 57.

Freeman (along with her husband) then filed for Chapter 13 Bankruptcy on April

23, 2012, in the United States Bankruptcy Court for the Southern District of Indiana, Case

No. 12-04713-JKC-13.  *See id.* ¶ 59.  A Proof of Claim was filed on BONY's behalf asserting

a secured claim in the amount of $133,064.46 and pre-petition arrearages of $22,668.03.

*See In re Freeman*, Case No. 12-04713-JKC, Claim No. 8-1 [hereinafter the "Proof of

---

[1] A Final Judgment in favor of BONY was entered on February 8, 2010, but BONY moved to have
that Judgment vacated and the First Foreclosure Case dismissed in May 2018 after Freeman's
Chapter 13 Bankruptcy was completed and closed.  As a result, the Hamilton Superior Court
granted the Order on May 2, 2018, vacating the foreclosure judgment and dismissing the First
Foreclosure Case.  *See* Order to Vacate Judgment and to Dismiss Case without Prejudice, Case
No. 29D01-0904-MF000484.

Claim"]. An objection to certain amounts in the Proof of Claim was filed by the Bankruptcy Trustee, which ultimately led to the Bankruptcy Court entering an order that disallowed $10,289.84 from the arrearage amount in BONY's Proof of Claim, leaving arrearages in the amount of $12,378.10. *See* Order on Trustee's Objection to Claim Number 8, Case No. 12-04713-JKC-13 (ECF No. 53). The Bankruptcy Court further disallowed a $300 fee claimed on BONY's behalf related to the litigation over the objection to the Proof of Claim. *See* Order on Trustee's Motion for Determination, Case No. 12-04713-JKC-13 (ECF No. 85).

Freeman's Chapter 13 Bankruptcy proceeded, with the Trustee making payments to Ocwen for both the pre-petition arrearages and the post-petition mortgage obligations. On April 12, 2017, the Bankruptcy Trustee filed a Notice of Final Cure Payment informing the Court that all of the allowed pre-petition arrearages and fees, as well as post-petition payments up to that point, had been paid. *See* Case No. 12-04713-JKC-13 (ECF No. 109). Ocwen filed a Response to Notice of Final Cure Payment on April 24, 2017 agreeing with the Trustee's filing, indicating the Loan would be due for its May 1, 2017 payment, and noting that the information provided therein was done so "to the best of [the filer's] knowledge, information and reasonable belief." *See* Response to Notice of Final Cure Payment, Case No. 12-04713-JKC-13; Official Form 4100R at 2.

An Order of Discharge was entered in the Chapter 13 Bankruptcy on November 21, 2017. Case No. 12-04713-JKC-13 (ECF No. 132). Freeman's Bankruptcy was then

closed on November 28, 2017, but reopened three days later due to an issue concerning her husband. A Final Decree was reentered on February 8, 2018, and the Bankruptcy was again closed. *See id. at* (ECF No. 153).

### C. Ocwen's Servicing of the Loan Post-Bankruptcy.

Ocwen's initial review of the Bankruptcy records accurately determined that the Proof of Claim had been reduced as a result of the Bankruptcy Court's October 26, 2012 Order, and that those amounts should be removed. *See* Declaration of Benjamin Verdooren [hereinafter "Verdooren Decl."] ¶ 17, Ocwen's Mem. Supp. Mot. Summ. J., Exhibit 1 (ECF No. 272-1). Ocwen's reconciliation process — the process by which all of the pre- and post-petition would be applied to the account — required the disallowed amounts to be manually removed in order to properly reconcile the account. *See id*. at ¶18; *see also* Excerpts of April 6, 2022, Deposition of Thomas Muldoon [hereinafter "Muldoon Dep."] 20:5–24 (PageID #4936); 23:8–20 (PageID #4939)[2], Ocwen's Mem. Supp. Mot. Summ. J., Exhibit 2 (ECF No. 272-2).

A human[3] error was made during the initial reconciliation after the close of the Bankruptcy in February 2018, and disallowed amounts were not removed from the Loan.

---

[2] The version of the Muldoon transcript included in the record did not contain its own page numbers. The page numbers used in the citations to the Muldoon transcript are the ECF page numbers and PageID # that appear in the heading of the exhibit for clarification. Unless stated otherwise, any other deposition transcript citations refers to the transcripts original pagination.

[3] Although Freeman contends that "Ocwen would eventually place the blame for these errors on an employee who failed to remove disallowed amounts [] without identifying who said individual is," *see* Brief of Appellant 10, any individuals that performed a bankruptcy

Verdooren Decl. ¶ 20; *see also* Muldoon Dep. 23:8–20 (PageID #4939). This human error occurred despite Ocwen's implementation and maintenance of procedures designed to prevent such an error. *See id*.

From May 2017 through May 2018, Ocwen accepted regular monthly payments from Freeman. *See* AA78 ¶¶ 90, 121; Verdooren Decl. ¶ 21. However, after the reconciliation was completed and because of the human error that occurred, the due date on the Loan was incorrect in Ocwen's records. Verdooren Decl. ¶ 21. This resulted in Freeman's Loan appearing to be delinquent when it was not. *Id*. The delinquency led to the Loan to being considered in default, which triggered property inspections and the beginning of the foreclosure process in May 2018. *Id*. Because of the default status on the Loan, Ocwen informed Freeman in a June 2018 phone call that it would only accept a full reinstatement payment as opposed to a regular monthly payment. *Id*. at ¶ 22. Freeman did not submit any payment at all to Ocwen in June 2018. *Id*. Ocwen also did not receive any payments from Freeman between July 2018 and December 2018.[4] *Id*.; *see also* AA256

reconciliation were identified in the Transaction History and Comment Log that was produced to Freeman in discovery.

[4] The District Court found this to be undisputed, *see* Order on Defendant's [BONY's] Motion for Summary Judgment and Plaintiff's Motion for Leave to File Surreply (ECF No. 475) [hereinafter "Order on BONY MSJ"] at 4-6 (omitting any reference to checks allegedly sent by Plaintiff to Ocwen that were purportedly rejected when granting summary judgment on Plaintiff's claim for breach of contract based, in part, on an alleged rejection of those payments) and further specifically admonished Freeman's counsel for making baseless misrepresentations to the District Court in an attempt to refute this fact. *See* AA062.

("Said she will have her attorney call us since we are not accepting 1 p[a]ym[en]t and we did not apply her p[a]ym[en]ts correctly."); Excerpts of Transaction History and Comment Log [hereinafter "THCL"] (Bates No. Ocwen_Freeman003636), Exhibit 2 to Pl.'s App'x in Resp. Opp. Ocwen's Mot. for Summ. J. (ECF No. 336-2) ("cu[stomer] very upset as not able to make the partial payment.").[5]

On August 15, 2018, a Complaint on Promissory Note and to Foreclose Mortgage was filed on behalf of BONY in Hamilton Superior Court, Case No. 29D03-1808-MF-007526 (the "Second Foreclosure Case"). On October 31, 2018, Freeman filed an Answer and Counterclaim in the Second Foreclosure Case. *See* Ans. and Counter Claim, Case No. 29D03-1808-MF-007525. Freeman's counterclaim alleged a breach of contract. *Id*. Under the *Indiana Rules of Trial Procedure*, a party is required to consolidate all its defenses under Rule 12 into a single motion and waives any defenses that are omitted. *See* Ind. R. Trial P. 12(G). BONY filed a Motion to Dismiss Freeman's counterclaim and consolidated it with a Motion to Strike her affirmative defenses as required by this Indiana Rule of Trial Procedure. As a result of subsequent investigations and corresponding corrections to the Loan — as described below — BONY agreed to voluntarily dismiss the Second Foreclosure Case, and the order dismissing BONY's claim and Freeman's counterclaim

---

[5] Although Freeman referenced this document pursuant to her opposition to Ocwen's Motion for Summary Judgment, Freeman did not include this document in the appendix submitted in support of her appeal.

was entered on January 23, 2019. *See* AA011 ("Then on January 23, 2019, the Second Foreclosure Case was dismissed without prejudice.").

**D.     Freeman's Purported Notices of Error and Ocwen's Investigations, Responses, and Corrections to the Loan.**

Between October 29, 2018 and December 7, 2018, Freeman's counsel several letters to Ocwen purporting to be a Notices of Error under the Real Estate Settlement Procedures Act. *See* Verdoorn Decl. ¶¶ 10–13. As a result of the investigations into Freeman's purported Notices of Error, between November 23, 2018 and January 3, 2019, Ocwen made several changes to the Loan in order to correct the previous failure to remove disallowed amounts from the Loan. *Id.* at ¶ 24; Muldoon Dep. 26:11–27:20 (PageID #4942-43). Specifically, Ocwen removed disallowed fees and escrow amounts, and made retroactive adjustments to the escrow charge on the Loan. *Id.* After the changes were made, another reconciliation was performed that caused the Loan to be paid through July 1, 2018, with an escrow surplus of $2,491.29. Verdooren Decl. ¶ 24. With the escrow surplus applied to outstanding payments, the Loan would be current through October 1, 2018, and due for its November 1, 2018 payment. *Id.* Following these changes, the only reason why the Loan was not current was because Freeman had not made any payments since May 2018. *Id.*; *see also* Expert Report of Michael Goldman ¶ 37, Exhibit to Ocwen's Reply in Supp. Mot. Summ. J, Exhibit 2 (ECF No. 370-2).

During the process of the investigation and while changes were being made to the Loan, Ocwen also began taking steps to decelerate the Loan and to stop the Second

Foreclosure Case. Verdooren Decl. ¶ 25; *see also* THCL pgs. 3-4 (Bates No. Ocwen_Freeman003744-45) ("Confirmation received on Foreclosure hold or stop notification sent to the attorney firm. . . . File Place on Hold."). On January 7, 2019, Ocwen sent a response to Freeman's first purported Notice of Error. *See* AA009. In the response, Ocwen's counsel explained that changes already had been made to the Loan. *See id.* ("The response noted that Ocwen made changes to the loan payment history by applying funds in escrow to the principal balance and by removing certain charges.") This response also enclosed a payment history showing the reconciliation of Freeman's payments and an updated payoff quote. *See id.* ("Ocwen had determined that an error occurred, and the removal of the fees and costs at issue were shown in the payment history provided on January 7, 2019."). The payoff quote showed that there were no longer any fees sought by Ocwen. *Id.* This response to the purported Notice of Error also explained that after conducting an investigation, Ocwen determined there was no error with respect to the allegation that it had failed to accept payments. *Id.* at 2. Specifically, the response explained that Ocwen's records did not reflect that any payments submitted had not been applied to the Loan. *Id.* And, as proved by the evidentiary record in this case, Freeman had not submitted any payment that was rejected, returned, or otherwise held without application after the close of her Chapter 13 Bankruptcy. Verdooren Decl. ¶ 26.

On January 22, 2019, after conducting an investigation, Ocwen responded the second purported Notice of Error sent by Freeman's counsel. *See* AA042. This second

response addressed the errors alleged in the purported Notice of Error and provided dozens of documents regarding those alleged errors. *Id.* As part of the overarching investigation into the purported Notices of Error, as detailed in the response, there were fees removed from the Loan, including a late fee and two property inspection fees. *See id.*

Ocwen also investigated and responded to Freeman's purported third Notice of Error on January 22, 2019. *See* AA042. The response explained that there was no record of refusing a payment from Freeman in December 2018 – assuming that was the year to which counsel was referring to in his letter. *See* AA010. And, as proved by the evidentiary record in this case, Ocwen did not receive any payment from Freeman in December 2018, so there was no refusal to accept one. Verdooren Decl. ¶ 27; *see also* Order on BONY MSJ at 4–6 (omitting any reference to checks allegedly sent by Plaintiff to Ocwen that were purportedly rejected when granting summary judgment on Plaintiff's claim for breach of contract based, in part, on an alleged rejection of those payments).

### E.     Freeman's Alleged Damages and Absence of Proof.

In regard to Freeman's alleged health-related damages, there is no evidence in the record that any medical professional or treatment provider has ever diagnosed or concluded that any physical or mental condition, ailment, and/or symptom purportedly experienced by Freeman is a result of the acts and/or omissions of Ocwen or BONY despite what she alleges in her lawsuit. *See* AA060 ("Freeman repeatedly argues that she

has suffered emotional or psychological harms that have resulted in physical manifestations of injury. However, there is no admissible evidence in the record of medical causation for Freeman's physical conditions, so she cannot support her allegation that Ocwen's [alleged] FDCPA violations caused her physical injury arising from mental distress."). At no point prior to this lawsuit has Freeman sought medical or psychological treatment for anxiety, depression, emotional distress, or any other similar mental condition. She testified that she has not seen a therapist. *See* Excerpts of March 11, 2022, Deposition of Demona Freeman [hereinafter "Mar. 11 Freeman Dep."] 50:19–20 (PageID #5129), Exhibit 15 to Ocwen's Mem. Supp. Mot. Summ. J. (ECF No. 272-15).

With respect to alleged credit damages, the only evidence in the record is Freeman's testimony that she applied for credit with two unidentified roofing companies, but she was not given any documents showing a credit denial. *See id.* at 167:24–168:4; 170:17–20. Instead, she claims only that she spoke with these two unidentified companies and they told her they were not able to lend to her. *Id.* at 167:24–168:4. Freeman does not have documents showing that the companies ever attempted to or did obtain her credit report. *See id.*

Most of Freeman's alleged damages center around different types of alleged emotional or psychological distress, which she testified during her deposition in March 2022 were tied to a pending foreclosure action at that time, which the record establishes is unfounded. For example, Freeman testified that she wakes up every day frustrated

because this litigation has not ended, but she also acknowledged she caused the litigation. *See id.* at 146:17–147:3. Freeman also testified that if there was no pending foreclosure action, she would not be frustrated. *Id.* at 151:24–152:4. She testified that if there was no pending foreclosure action, she would not be nervous or anxious with respect this matter. *Id.* at 153:21–25. She testified that if there was no pending foreclosure action, she would not be mentally distressed. *Id.* at 154:1–21. Freeman testified that if there was no pending foreclosure action, her quality of life would improve. *Id.* at 153:20–23. She testified that if there was no pending foreclosure action, she should not feel embarrassed. *Id.* at 159:24–160:10. She also testified that if there was no pending foreclosure action, there would be no tension in her relationship with her husband. *Id.* at 161:21–162:3. During all of this testimony in March 2022, Freeman indicated a total lack of knowledge regarding the fact that the Second Foreclosure Case had been dismissed more than three years ago in January 2019.

Regarding alleged reputational harm the record is devoid of actual evidence supporting Freeman's conclusory assertions. For example, Freeman admitted that no one has ever expressed to her that they think she cannot manage her finances. *Id.* at 156:7–15.

## F.     Present Status of the Loan.

Servicing of the Loan transferred from Ocwen to PHH Mortgage Services ("PHH")[6] effective June 1, 2019. Verdooren Decl. ¶ 29. PHH sent Freeman, through her

---

[6] PHH is the successor by merger to Ocwen Loan Servicing, LLC.

counsel, correspondence on June 7, 2019, notifying Freeman of this transfer of servicing, informing her where her monthly payments should be made, and providing her a document entitled "Mortgage Account Record – FDCPA Validation of Debt." *See* June 7, 2019 Correspondence Regarding Servicing Transfer, Exhibit 18 to Ocwen's Mem. Supp. Mot. Summ. J. (ECF No. 272-18). This correspondence informed Freeman there were no late charges, collection costs, escrow advances, or non-sufficient funds fees on the account. *See id*. at pg. 5. There was an escrow surplus in the amount of $1,839.46. *Id.* at pg. 2. The total unpaid debt amount of $7,177.33 represents the principal and interest amounts from the eleven monthly payments (August 2018 through June 2019) that had not been paid as of the date of the letter. *Id*.; Verdooren Decl. ¶ 30. Additionally, a payoff quote provided to Freeman on August 7, 2019 shows that none of the fees disallowed by the Bankruptcy Court, none of the fees associated with the Second Foreclosure Case, and none of the late charges were being sought from Freeman several months after servicing transferred to PHH. *See* August 7, 2019, Payoff Quote pgs. 1-2, Exhibit 19 to Ocwen's Mem. Supp. Mot. Summ. J. (ECF No. 272-19).

## II.    PROCEDURAL HISTORY

On December 6, 2018, Freeman filed a Complaint against Ocwen in the United States District Court for the Southern District of Indiana. *See generally* Complaint and Demand for Jury Trial (ECF No. 1), *Demona Freeman v. Ocwen Loan Servicing, Inc.*, Case No. 1:18-cv-03844-TWP-DLP. On March 14, 2019, more than three months after

commencing this litigation and without opposition from Ocwen, Freeman filed her First Amended Complaint.  *See generally* First Amended Complaint and Demand for Jury Trial (ECF No. 24).  On April 2, 2019, the parties jointly submitted a proposed Case Management Plan to the district court.  *See generally* Case Management Plan (ECF No. 33). Pursuant to the plan jointly proposed by the parties, all motions for leave to amend the pleadings were to be filed on or before June 7, 2019.  *See id.* at 3, Section III.D.  On April 19, 2019, the district court entered an Order approving the proposed Case Management Plan.  *See generally* Case Management Plan (ECF No. 41).  On June 7, 2019 — the deadline for amending pleadings and more than six (6) months after commencing this litigation — Freeman filed her second motion for leave to file an amended complaint without opposition from Ocwen.  *See generally* Motion for Leave (ECF No. 53).  Freeman's motion was granted, and her Second Amended Complaint was filed on July 10, 2019.  (*See* ECF No. 59).  Then, six days later, on July 16, 2019, Freeman filed a motion for leave to file a third amended complaint.  *See* Pl.'s Mot. for Leave to File Third Am. Compl. and Mem. Supp. (ECF No. 61).  In particular, Freeman sought to "add several mistakenly omitted allegations regarding the fourth [purported] Notice of Error letter sent by Freeman to Ocwen."  *See id* at pg. 1.  Ocwen and BONY opposed Freeman's motion for leave to file a third amended complaint to the extent she sought to add new claims or theories of liability but did not oppose her request to correct her erroneously attached exhibits.

On September 3, 2019, the district court entered an Order granting in part and denying in part Freeman's motion for leave to file a third amended complaint. *See* Order on Pl.'s Mot. for Leave to File Third Am. Compl. (ECF No. 83). In its Order, the district court denied leave to amend the Second Amended Complaint because "Freeman's briefing is void of any arguments that demonstrate due diligence to file this amendment before June 7, 2019, the deadline set forth in the Case Management Plan. Because Freeman has failed to show due diligence, and by extension, good cause, Freeman Rule 15 argument will not be considered." *See id.* at pg. 4 (citations omitted). However, Freeman was granted leave to reorder the exhibits attached to her Second Amended Complaint that had been erroneously prepared. *See id.* at pgs. 4-5.

On September 20, 2019, Freeman filed her corrected Second Amended Complaint in the District Court Case, which served as the operative complaint for the remainder of the litigation in the District Court. *See generally* AA065–116. In the Second Amended Complaint, Freeman asserted claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), as well as many other claims that are not relevant to this appeal. *See id.* at AA102–04 ¶¶ 252–60, AA107–08 ¶¶ 278–81. On September 24, 2019, Ocwen filed its Motion to Dismiss Counts II, III, V, VI, VII, VIII, X, and XI of Freeman's Second Amended Complaint, which included Freeman's claims brought under the FCRA and the FDCPA. *See* AA013, AA027–30.

On December 21, 2020, the District Court dismissed with prejudice Freeman's

claims for alleged violations of the FCRA — among others — on the grounds that:

> The allegations upon which Freeman relies consist of legal
> assertions, legal conclusions, legal and factual background
> information, and threadbare recitations of the elements of the
> claim. The allegations are devoid of nonconclusory factual
> assertions to support the legal elements of a dispute being
> made to a credit reporting agency, and the credit reporting
> agency in turn notifying Ocwen of the dispute. Such is
> required for an FCRA claim under § 1681s-2(b).

*See* AA030.

On January 11, 2021, Freeman filed a Motion to Reconsider with respect to the

District Court's Order on Defendants' Motion to Dismiss her Second Amended

Complaint. *See generally* Pl.'s Mot. to Reconsider (ECF No. 140). In relevant part, Freeman

requested that the district court reconsider its dismissal of her claim brought under the

FCRA by arguing that: (1) the district court erred in concluding that Freeman had failed

to adequately plead "non-conclusory factual assertions that [] a dispute had been made

[by Freeman to a credit reporting agency] and [that] the credit reporting agency in turn

notified Ocwen"; and (2) that Freeman had come into possession of purportedly newly

discovered evidence that mandated reconsideration of the dismissal of her claim. *See id.*

at pgs. 2-6.

On November 4, 2021, the district court entered an Order denying Freeman's

Motion to Reconsider. *See generally* Order on Pl.'s Mot. to Reconsider (ECF No. 194). In

relevant part, the Court held:

After three attempts at a complaint and after opposing and losing a motion to dismiss, Freeman now references ACDVs and asserts that they support her FCRA claim. However, the only reference to "Exhibit 1" in the Second Amended Complaint is not within any of the allegations concerning the FCRA claim, and the ACDVs consist of only twenty pages within the 101-page exhibit. Furthermore, Freeman attached fifteen exhibits consisting of 253 pages to her Second Amended Complaint. The ACDVs buried within the numerous pages of exhibits and not referred to or given context within the FCRA allegations did not provide factual detail to support the FCRA claim. Moreover, the TransUnion documents are not "newly discovered" evidence not previously known to Freeman, as she had this information in a different format prior to filing her Second Amended Complaint and opposing the motions to dismiss. And the *Lang* decision does not change the pleading requirement to allow a factually deficient pleading to survive a motion to dismiss. Freeman had arguments that she could and should have raised well before the Court issued its Order on Defendants' Motions to Dismiss, and importantly, she was given three attempts to adequately plead her FCRA claim. She failed to do so.

*Id*. at pg. 7.

On April 25, 2022, Ocwen moved for summary judgment as to Freeman's remaining claims. *See* AA044. Freeman filed her Opposition on August 18, 2022, which raised entirely new theories of liability to support her FDCPA claim. *See generally* Pl.'s Resp. Opp. Ocwen's Mot. Summ. J. (ECF No. 365). On July 25, 2023, the district court granted summary judgment in favor of Ocwen as to all of Freeman's remaining claims. *See generally* AA037–064. In particular, the district court found that Freeman "has failed

to establish that she suffered a concrete injury that is fairly traceable to Ocwen's alleged violations of the FDCPA . . . ."  *Id.* at AA058–059.

Of particular significance, the district court further specifically found that:

> **There is no evidence in the record to support Freeman's claim that she was concretely injured by having to incur attorney's fees from the foreclosure proceedings because that evidence was excluded by the Order in** *limine***.**  There also is no admissible evidence in the record that Freeman actually has paid fees, charges, or costs that were not proper.  **Similarly, Freeman has not designated any admissible evidence that her credit or reputation have been harmed by Ocwen's alleged FDCPA violations.  Regarding Freeman's argument that she has been concretely injured because her FDCPA claim is similar to other recognized common law claims, Freeman's conclusory assertions are not supported by admissible evidence of actual injury** . . . .  Freeman repeatedly argues that she has suffered emotional or psychological harms that have resulted in physical manifestations of injury.  However, there is no admissible evidence in the record of medical causation for Freeman's physical conditions, so she cannot support her allegation that Ocwen's [alleged] FDCPA violations caused her physical injury arising from mental distress. . . . Freeman argues that her loss of time dealing with Ocwen and working with her lawyers is sufficient to support a concrete injury. However, the Seventh Circuit very recently explained, 'Making a call to a debt collector is not closely related to an injury that our legal tradition recognizes as providing a basis for a lawsuit.  Nor is seeking legal advice.  **In light of the admissible evidence that has been designated by the parties and the Seventh Circuit's recent FDCPA standing case law, Freeman has not shown that she suffered a concrete injury that is fairly traceable to Ocwen's alleged FDCPA violations.  As such, she lacks standing to pursue her FDCPA claim against Ocwen.  Ocwen is entitled to summary judgment on this claim.**

*Id.* at AA059–060. (emphasis added).

Importantly, the district court found it was undisputed that:

> [b]ecause of its findings from the research and investigation, **Ocwen made changes to Freeman's account between November 23, 2018, and January 3, 2019, to correct its previous failure to remove disallowed amounts from Freeman account.** Ocwen removed disallowed fees and escrow amounts and made retroactive adjustments to the escrow charge on the account. After these changes were made, another reconciliation was undertaken, resulting in the account being paid through July 1, 2018, with an escrow surplus of $2,491.29. . . . On June 7, 2019, PHH sent correspondence to Freeman, notifying her of the loan servicing transfer. . . . The notice also informed Freeman that **there were no late charges, collection costs, escrow advances, or non-sufficient funds fees on her account.**

*Id.* at AA042 (emphasis added).

Following its Order granting summary judgment in Ocwen's favor, the district court entered final judgment on July 5, 2023. *See* Final Judgment Pursuant to Fed. R. Civ. Pro. 58 (ECF No. 486).

Notably, although Freeman indicated in her Notice of Appeal that she was seeking to appeal the district court's decision granting BONY's Motion for Summary Judgment,[7]

---

[7] In particular, Freeman's Notice of Appeal states that she intended to appeal "the order granting Defendant Bank of New York Mellon's motion for summary judgment entered on the docket in this case on March 31, 2023 [ECF No. 475]." *See* Notice of Appeal (ECF No. 489) at 1. However, in her brief, Freeman never addresses the district court's decision granting summary judgment in favor of BONY. Instead, the only issues that Freeman presented for review on appeal concern the Order granting Ocwen's Motion to Dismiss and the Order granting Ocwen's Motion for Summary Judgment. *See* Brief of Appellant 11–12.

she has abandoned that aspect of her appeal by failing to raise any arguments regarding the district court's decision granting BONY's Motion. *See generally* Brief of Appellant.

### SUMMARY OF ARGUMENT

This Court should affirm the final judgment of the United States District Court for the Southern District of Indiana  because its decisions on Ocwen's Motion to Dismiss and Motion for Summary Judgment were correctly decided based on the applicable law and the factual record developed over many years in this case.

The district court's dismissal with prejudice of Freeman's FCRA claim should be affirmed because Freeman's Second Amended Complaint is devoid of nonconclusory factual allegations necessary to properly state a claim under this statute. Specifically, Freeman failed to plead sufficient facts to plausibly allege three of the four elements necessary to state a claim for relief under the FCRA.  The limited number of allegations contained in the Second Amended Complaint that were actually directed at Freeman's claim under the FCRA consisted of legal assertions and conclusions, general statutory background information, and threadbare recitations of the statute's elements.

Freeman's contention that the district court imposed an impermissible or heightened pleading standard in assessing the sufficiency of her allegations is misplaced. It relies on inapposite and unauthoritative case law.  Additionally, Freeman waived her ability to argue that the district court should have discovered and relied upon documents buried within hundreds of pages of exhibits attached to the Second Amended Complaint.

Nonetheless, those documents do not — alone or in conjunction with Freeman's deficient allegations — plausibly state a claim under the FCRA.

Even if this Court is ultimately inclined to reverse the district court's dismissal of Freeman's FCRA claim, it should only do so with respect to her claim for a negligent violation of the FCRA. Indeed, Freeman has wholly failed to articulate how her Second Amended Complaint adequately stated a claim for a willful violation of the FCRA, nor could she, because there are no such allegations in the Second Amended Complaint.

This Court should affirm the dismissal of the FCRA without leave to amend because the district court did not abuse its discretion by dismissing the claim with prejudice. Freeman was given numerous attempts to amend her pleadings, failed to demonstrate good cause for further leave to amend after the district court's deadline, and never attempted to demonstrate the ability to cure the deficiencies. The district court adequately explained the basis for its dismissal with prejudice in denying Freeman's Motion to Reconsider, which Freeman fails to bring to this Court's attention.

This Court should affirm summary judgment in favor of Ocwen on Freeman's FDCPA claim because it was properly based on this Court's precedent and the evidentiary record developed in this case after years of litigation. The district court correctly concluded that Freeman cannot demonstrate that she has Article III standing to maintain a claim under the FDCPA. Moreover, the majority of Freeman's arguments asserted regarding alleged intangible injuries are improper because they were raised for

the first time in opposition to Ocwen's Motion for Summary Judgment and were not pled in her Second Amended Complaint. To that end, they should not be considered by this Court.

Freeman has failed to demonstrate through designation of admissible evidence offered at summary judgment that she suffered a concrete intangible harm that actually materialized. She otherwise asserts alleged intangible injuries that Seventh Circuit does not recognize as sufficient to confer Article III standing. Finally, Freeman has failed to demonstrate through designation of admissible evidence offered at summary judgment that she suffered a concrete tangible harm that actually materialized.

Based on the foregoing reasons, as explained further below, Ocwen respectfully requests this Court affirm the judgment of the district court.

## ARGUMENT

I. **FREEMAN'S SECOND AMENDED COMPLAINT WAS DEVOID OF NONCONCLUSORY FACTUAL ALLEGATIONS NECESSARY TO PROPERLY STATE A CLAIM UNDER THE FCRA.**

### A. Standard of Review and Applicable Law

The district court's dismissal based on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is subject to de novo review. *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 862 (7th Cir. 2016). When reviewing a motion to dismiss for failure to state a claim, this Court "construe[s] the complaint in the light most favorable to the plaintiff, accepting as true all ***well-pleaded facts alleged***, and drawing all possible inferences in her

favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (emphasis added).  To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

**B.      Freeman failed to sufficiently plead nonconclusory factual allegations for all of the elements necessary to state a claim under the FCRA and the claim was properly dismissed.**

Freeman's efforts to place blame for her deficient allegations on either Ocwen or the district court should be rejected.  It was not the district court's responsibility to defend the viability of Freeman's claims in the face of a motion to dismiss.  *See Cty. of McHenry*, 438 F.3d 813, 819 (7th Cir. 2006); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999).  Nor was it Ocwen's responsibility to bring the deficiency to Freeman's attention before filing its Motion to Dismiss, which it decided to file after the district court's deadline for amending pleadings had passed.  Indeed, the burden to adequately state a claim for which relief can be granted rested with Freeman alone.  *See* Fed. R. Civ. P. 8(a).  The handful of allegations concerning her alleged credit disputes were nothing more than legal statements, conclusions of law, generic information about the credit reporting process, or threadbare recitals of the elements of an FCRA claim.  Such allegations are insufficient to sufficiently state a claim under the FCRA and the district court's dismissal was proper.

**1.** **The limited number of allegations Freeman relies on to support her argument unequivocally consist of insufficient legal assertions and conclusions, general background information, and threadbare recitations of the elements of an FCRA claim.**

Under Section 1681s-2(b) of the FCRA, a furnisher which receives notice from a consumer reporting agency of a consumer's dispute as to the completeness or accuracy of information it previously provided must conduct an investigation with respect to the dispute, report the results of the investigation to the consumer reporting agency ("CRA") which sent the dispute to the furnisher, and take certain steps if the furnisher finds the information to be inaccurate, incomplete or impossible to verify. *See* 15 U.S.C. § 1681s-2(b). Thus, to state a claim under § 1681s-2(b), Freeman must allege sufficient facts to plausibly allege that she: (1) identified an inaccuracy in her credit report, (2) disputed the inaccurate information by submitting a dispute to a CRA, (3) the CRA transmitted a notice of the dispute to the furnisher of the information within five business days of the receipt of the dispute by the CRA, and (4) the furnisher failed to conduct a reasonable investigation or otherwise follow the requirements set forth in 15 U.S.C. § 1681s-2(b)(1)(A)–(E). *See, e.g., Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162 (9th Cir. 2009).

To begin with, Freeman's Second Amended Complaint does not plausibly allege that she disputed her credit information with any CRA. Instead, she alleged that "[o]n information and belief, Ocwen has improperly and incorrectly reported to various CRAs

that the Loan was and/or is '90-119 Days Late.'" AA097 ¶ 222. This is insufficiently pleaded because a claim under Section 1681s-2(b) is only available where the furnisher received notice of the underlying credit dispute from a *CRA*. 15 U.S.C. § 1681s-2(b)(1) ("After [a furnisher] receiv[es] notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the [furnisher] shall . . . ."). The duty to investigate *only* arises after a CRA *notifies* Ocwen of a dispute. It does not, as generally alleged here, arise when the information is disputed by a consumer directly to Ocwen. Thus, as pleaded on her third attempt, Freeman's allegations do not sufficiently state a claim under Section 1681s-2(b) because the district court could not reasonably infer that Ocwen's duties under the statute were triggered where there is no factual allegation to that effect. Freeman does not allege when she submitted a dispute to a CRA, the number of disputes submitted to a CRA, to which (if any) of the CRAs she submitted a dispute, the format in which a dispute was submitted to each CRA, or the contents of a dispute sent to each CRA. Factual allegations as to each of these elements are required to sufficiently plead a claim under the FCRA, but they do not appear in Freeman's Second Amended Complaint.

Freeman also fails to make any factual allegation that any CRA sent Ocwen a notice of a credit dispute within the five (5) business days of a CRA receiving a dispute from Freeman, which is also required to plead a viable claim under the FCRA. *See* 15

U.S.C. § 1681s-2(b)(1); 15 U.S.C. § 1681i(a)(2)(A). A dispute to at least one of the CRAs and a CRA providing notice within five business days to Ocwen is "necessary to trigger the [data] furnisher's duties under Section 1681s-2(b)." *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002). Courts consistently have held that where the plaintiff "points to no evidence tending to prove that [the furnisher] received notice of a dispute from [the CRA] within five days, as is required to trigger [the furnisher's] duties under Section 1681s-2(b)," the plaintiff has failed to establish an essential element of the FCRA claim and the claim must fail as a matter of law. *Id*. The Second Amended Complaint is wholly devoid of any **_factual_** allegations to plausibly allege this element of Freeman's claim under the FCRA against Ocwen.

Finally, even if all of the previously discussed required elements were sufficiently alleged, which they are not, Freeman's allegations still fail to include any facts to support her claim that Ocwen failed to conduct a reasonable investigation into her disputes or otherwise comply with the requirements of § 1681s-2(b). On this point, Freeman merely asserts conclusory legal statements that Ocwen either negligently or willfully violated the FCRA by failing to conduct a reasonable investigation. AA107–08 ¶ 279. She does not in any way describe how, in her view, Ocwen's investigation was not reasonable or that a different investigation would have led to a different result. *See, e.g., Leones v. Rushmore Loan Management Services LLC,* 749 Fed. App'x. 897, 901 (11th Cir. 2018) ("As we explained in *Felts*, '[r]egardless of the nature of the investigation a furnisher conducted, a plaintiff

asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different . . . .' Plaintiff failed to allege any facts Defendant could have uncovered that establish the reported information was, in fact, inaccurate or incomplete.") (quoting *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018)); *Spellacy v. Wells Fargo Bank, N.A.*, No. 8:20-cv-02101-FLA (ADSx), 2021 WL 7285997, at *6 (C.D. Cal. 2021) ("Plaintiff includes no factual allegations regarding, for example, the information on his credit report before he submitted his disputes to the CRAs, whether and how that information was inaccurate, and whether the information after the disputes remained inaccurate."); *Sanchez v. Equifax Information Services, LLC*, No. 20-15306 (SDW) (LDW), 2021 WL 2134923, at *3 (D.N.J. 2021) ("Like in *Briscoe*, Plaintiff's Amended Complaint includes vague allegations that First Premier 'failed to conduct a proper reinvestigation,' without describing how that investigation, if conducted properly, would have led a reasonable Furnisher to remove the notations from Plaintiff's credit report.") (citations omitted). Such threadbare recitals of one of the elements of an FCRA claim is insufficient to state a plausible claim for relief.

In the face of these deficiencies, Freeman continues to point to the same conclusory statements of law or threadbare recitals of the elements of an FCRA claim in her Second Amended Complaint that led to dismissal in the first place. Brief of Appellant 24.

Reliance on these deficient allegations demands a similar result — affirming the district court's dismissal of the FCRA claim.

> **2.** **Freeman's reliance on the non-precedential and unpublished Lang v. TCF Nat'l Bank decision is improper and misplaced.**

As part of her argument that the district court somehow imposed an improper and heightened pleading requirement on her, Freeman erroneously contends that the district court's dismissal of her FCRA claim is "contrary to the rationale provided by th[is] Court in *Lang v. TCF Nat'l Bank*, 249 Fed. Appx. 464, 466 (7th Cir. 2007)." Brief of Appellant 22. Freeman's reliance on *Lang* is both improper and misplaced.

To begin with, *Lang* — which is a non-precedential, unpublished decision — is outdated and inapplicable. *Lang* was decided prior to the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the Supreme Court explained that "sufficient facts" must be pled to state a plausible claim for relief. In other words, the pleading standards described in *Lang*, which were not controlling to begin with, were rendered obsolete by the Supreme Court's decision more than nearly fifteen years ago in *Iqbal*.

Additionally, the allegations in the complaint at issue in *Lang* were materially different than the allegations in Freeman's Second Amended Complaint. As explained in a similar case shortly before the district court's decision on Freeman's Motion to Dismiss, "the complaint in *Lang* included extensive factual details supporting the Seventh Circuit's conclusion that the defendant was on 'fair notice' of the claims against it, regardless of

whether the complainant expressly alleged that the defendant had been formally notified of the dispute." *See Bowers v. Equifax Info. Servs.*, Case No. 1:19-cv-02584, 2020 U.S. Dist. LEXIS 205157 at *6, n.2 (S.D. Ind. Nov. 3, 2020). In this case, like in *Bowers* and unlike in *Lang*, Freeman's Second Amended Complaint "offers no insight, assuming *arguendo* that [Ocwen] did receive notice of the dispute, as to whether and to what extent it conducted an investigation of th[e] dispute as is required for the Court to determine the 'reasonableness' of [Ocwen's] efforts under the FCRA." *Id*. at *6. Freeman's Second Amended Complaint is devoid of the *factual* allegations necessary to state a cognizable claim under § 1681s-2(b) because it never discusses anything at all about "whether and to what extent" Ocwen "conducted an investigation" of Freeman's dispute. *Id*. Instead, it merely contains legal conclusions and threadbare recitals of the elements of the claim — both of which are insufficient to satisfy the pleading standards as articulated by the Supreme Court in *Iqbal*.

3. **Freeman waived her ability to argue that documents attached to the Second Amended Complaint should have been considered by the district court in assessing whether she sufficiently pled her FCRA claim, and those document otherwise do not correct the deficiencies in the pleading.**

In addition to arguing that the paragraphs considered by the district court were sufficient to state a claim under the FCRA, Freeman suggests that her allegations were further supported by documents buried in two hundred and fifty-three (253) pages of exhibits attached to her Second Amended Complaint, despite the fact that those

documents are not referenced, cited to, or relied upon in connection with Freeman's FCRA claim. *See* Brief of Appellant at 26; *see generally* Order on Pl.'s Mot. to Reconsider (ECF No. 194) at pg. 7 ("The ACDVs buried within the numerous pages of exhibits and not referred to or given context within the FCRA allegations did not provide factual detail to support the FCRA claim."). Freeman neglects to acknowledge that she never argued that such documents should be considered in assessing the sufficiency of her pleading when opposing Ocwen's Motion to Dismiss. *See generally id.* ("Freeman had arguments that she could and should have raised well before the Court issued its Order on Defendants' Motions to Dismiss . . . ."). Freeman cannot rely on arguments that were not raised before the district court in opposition to Ocwen's Motion to Dismiss. *See Cty. of McHenry*, 438 F.3d at 819–20 ("Although we may consider factual allegations raised for the first time on appeal, we ordinarily will not address new *issues* raised for the first time on appeal.") (citing *Kyle v. Morton High Sch.*, 144 F.3d 448, 454 (7th Cir. 1998); *Dawson v. Gen Motors Corp.*, 977 F.2d 369, 373 n.* (7th Cir. 1992)); *see also Wheeler v. Hronopoulos*, 891 F.3d 1072 (7th Cir. 2018); *Builders NAB LLC v. Federal Deposit Ins. Corp.*, 922 F.3d 775, 778 (7th Cir. 2019) (legal contentions must be presented in the district court before it acts rather than in a motion filed after judgment). As a result, any argument that this Court should consider those documents has been waived and should not be considered by this Court on appeal.

However, even if this Court were to consider those documents in conjunction with Freeman's conclusory and threadbare allegations, the deficiencies in her pleading would not be overcome. Freeman does not allege in the Second Amended Complaint, for example, any facts about when she submitted disputes to a CRA, when or if that dispute or any other information was provided by a CRA to Ocwen, how (assuming there was a notice of dispute transmitted) any specific investigation into the dispute by Ocwen was unreasonable, and/or how — as a factual matter — the responses to the disputes were inaccurate or otherwise violated the FCRA. Nor does Freeman attempt to explain — in the Second Amended Complaint or elsewhere — how these documents show or constitute the factual underpinnings of a plausible FCRA claim against Ocwen in this case. Again, there is no reference, explanation, or reliance in the Second Amended Complaint on these documents. Freeman's apparent hope remains that despite her failure to rely on these documents until filing a Motion for Reconsideration, the Court will do the work for her of piecing together her claim. But these documents standing alone do not independently, or in connection with Freeman's factually devoid allegations, overcome the deficiencies identified by the district court when dismissing her claim.

**4.**     **Even if this Court were to reverse the district court's decision with respect to Freeman's claim for a negligent violation of the FCRA, Freeman has wholly failed to articulate how her Second Amended Complaint adequately stated a claim for a willful violation of the statute.**

In her opposition to the Motion to Dismiss, Motion for Reconsideration, and this Appeal, Freeman fails to address whether her allegations in the Second Amended Complaint were sufficient to state a claim for a willful violation of the FCRA. Indeed, Freeman's single-count claim under the FCRA sought two separately alleged avenues of relief — one for a negligent violation and one for a willful violation. *See* AA107 ¶ 279. Even if Freeman were to convince this Court that there were sufficient facts alleged to support a claim for a negligent violation of the FCRA, she has wholly failed to identify or argue in her Brief why her purported claim for a willful violation of the FCRA should be resurrected. No part of Freeman's Opposition to the Motion to Dismiss or Motion to Reconsider addressed how her allegations in the Complaint sufficiently stated a plausible claim for relief for a willful violation. No part of the Second Amend Complaint contains factual allegations suggesting that there was a willful violation of the FCRA. Only a singular threadbare recital of the statutory language — that "Ocwen willfully and/or negligently violated 15 U.S.C.A. § 1681s-2(b) by failing to conduct a reasonable investigation . . . ." — serves as the basis for her willfulness claim. *Id.* Thus, even if Freeman's FCRA claim was revived as to an alleged negligent violation — which it should

not be — there is no basis, much less one articulate by Freeman, why her claim for a willful violation should be revived.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DISMISSING FREEMAN'S FCRA CLAIM WITH PREJUDICE.

### A. Standard of Review and Applicable Law

A denial of leave to amend is reviewed under an abuse of discretion standard. *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 347 (7th Cir. 2018) ("We generally review denial of leave to amend for abuse of discretion."). When a request for leave to amend is made after the deadline for amending the pleadings has elapsed, a district court is entitled to apply a good cause standard before deciding whether to allow further amendment. *See Adams v. City of Indianapolis*, 742 F.3d 720, 733–34 (7th Cir. 2014) (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011)). District courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

### B. The district court did not abuse its discretion in dismissing Freeman's FCRA claim because she was given numerous attempts to amend her pleadings, failed to demonstrate good cause for further leave to amend, and never attempted to demonstrate the ability to cure the deficiencies.

Freeman's arguments are based largely on a revisionist history of what occurred in the district court. To begin with, while it is true that the district court did not grant leave to amend after dismissing Freeman's FCRA claim, the district court had already

granted her leave to amend her complaint on two prior occasions. In other words, at the time Freeman's FCRA claim was dismissed, she was already on her third iteration of her Complaint. Throughout this period of time, Freeman was propounding extensive and burdensome discovery that often exceeded the scope of the operative Complaint — contributing to her seeking leave to amend the first two times. Freeman also conveniently glosses over the fact that after having amended twice within the time period permitted by the district court's Case Management Plan, she sought leave to amend for a *third* time after the deadline to amend the pleadings had passed. In addition to seeking to add additional theories of liability to the Complaint, Freeman also sought to correct errors with her exhibits. Ocwen partially opposed the motion for leave to file a third amended complaint, and the court ultimately denied the request to amend to add new theories of liability — specifically finding that Freeman had failed to demonstrate good cause to amend for a third time after the district court's deadline for amending pleadings. Freeman numerous amendments and filing errors were inexcusable, dilatory, and creating unnecessary and costly litigation. For almost a year Freeman's operative pleading had been a moving target while Ocwen was inundated with written discovery requests that often exceeding the scope of the operative complaint. In denying leave to amend for a third time, the district court found that the theories of liability Freeman sought to add were based on information that had already been available to her during the time period the district court permitted for amending pleadings under its Case

Management Plan. In other words, the district court recognized a lack of due diligence in Freeman's efforts to set forth her claims and, as a result, determined Freeman had failed to demonstrate good cause.

Once the district court had finally put a stop to further amendments — providing finality to the scope of Freeman's allegations and theories of liability — Ocwen timely moved to dismiss the Second Amended Complaint. While Freeman goes to great lengths to suggest that there was some undue delay by Ocwen or that she could not have known that her FCRA claim could be considered deficient without Ocwen filing its motion to dismiss explaining this to her, the procedural history of the case demonstrates the opposite. Notably, there is no dispute that Ocwen's Motion to Dismiss was timely filed as its pleading in response to Freeman's Second Amended Complaint. Despite having sought leave to amend on three previous occasions, after Ocwen filed its Motion to Dismiss, Freeman did not file another motion for leave or otherwise propose amendments to her Second Amended Complaint to address the deficiencies in her FCRA claim. Instead, she dug in her heels and — to this day — continues to assert that her conclusory and generic allegations were sufficient to state a claim under the FCRA.

With the above procedural history in mind, the district court considered whether to allow Freeman to amend her complaint for a third time based on a single line found at the end of her Opposition to Ocwen's Motion to Dismiss. *See* Pl.'s Resp. in Opp. to Def. Ocwen Loan Servicing, LLC's Mot. to Dismiss (ECF No. 90) at 32 ("However, should the

Court grant Defendant's Motion to Dismiss, in whole or in part, Freeman respectfully requests leave to amend her Complaint of any deficiencies."). Now, without having ever provided any insight into *how* she would fix the deficiencies in her FCRA claim, Freeman argues that the district court should have given her leave to amend. Ironically, Freeman fails to acknowledge that she had a burden to demonstrate good cause for leave given the posture of the case. Given her failure to offer any insight into how she might cure the deficiencies in the Second Amended Complaint or why there was good cause to permit her leave for further amendment, the district court was well within its discretion to dismiss the FCRA claim without prejudice. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 401 (7th Cir. 2006) (finding district court did not abuse discretion in dismissing with prejudice where request for leave was presented in penultimate paragraph of opposition to motion to dismiss and plaintiff failed to offer insight into how deficiencies would be fixed).

Finally, Freeman fails to acknowledge to this Court that after Ocwen's Motion to Dismiss was granted, she filed a Motion to Reconsider. Despite having the opportunity to do so in her Motion to Reconsider, she again failed to identify how she would fix the deficiencies in her Second Amended Complaint if she was granted leave to amend. The district court denied the Motion to Reconsider, and in its decision explicitly addressed why leave to amend was not given. As a result, Freeman's position in this appeal that the district court did not provide justification for not allowing leave to amend is incorrect.

While the reason may have come in the Order denying the Motion to Reconsider, the district court explained that Freeman — once again — had failed to demonstrate good cause justifying leave to amend, particularly after having three previous attempts at adequately pleading her claim.

The procedural history and Freeman's failure to show good cause demonstrate that the district court acted properly within its discretion to dismiss the FCRA claim with prejudice. Accordingly, this Court should affirm the district court's dismissal of Freeman's FCRA claim.

III. **FREEMAN FAILED TO DEMONSTRATE SHE HAS ARTICLE III STANDING TO MAINTAIN ANY CLAIM UNDER THE FAIR DEBT COLLECTION PRACTICES ACT THROUGH ADMISSIBLE EVIDENCE OF A CONCRETE AND PARTICULARIZED INJURY-IN-FACT.**

Article III limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "The case-or-controversy requirement ensures that the judiciary 'confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved.'" *Pierre v. Midland Credit Mgmt.*, 29 F.4th 934, 937 (7th Cir. 2022) (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013)). A plaintiff must demonstrate they have Article III standing in order for a court to maintain jurisdiction and adjudicate their claim. *See id*. "Standing has three elements. A plaintiff must have (1) a concrete and particularized injury-in-fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by judicial relief." *Id*. (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The majority of alleged injuries that Freeman contends establish she has the requisite Article III standing to maintain her FDCPA claim were improperly raised for the first time in opposition to Ocwen's Motion for Summary Judgment and do not appear in her original (or any subsequent amendment to her) Complaint. As a result, this Court should not entertain the bulk of Freeman's arguments. Notwithstanding, the district court properly granted summary judgment in Ocwen's favor because Freeman has failed to demonstrate through designation of admissible evidence that she has Article III standing to maintain any claim under the FDCPA. As a result, this Court should affirm.

## A.    Standard of Review and Applicable Law

"Whether a plaintiff has established Article III standing is reviewed de novo." *Pierre*, 29 F.4th at 939 (citing *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016)). When analyzing standing, this Court first analyzes whether Freeman had standing at the time she filed suit based on the claims she alleged in her complaint. *See Pennell v. Glob. Tr. Mgmt. LLC*, 990 F.3d 1041, 1044 (7th Cir. 2021) ("The plaintiff must establish standing at the time suit is filed and cannot manufacture standing afterwards."); *see also Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 180, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000) (stating that the court considers whether a plaintiff had standing "at the outset of the litigation"); *Pollack v. U.S. Dep't of Just.*, 577 F.3d 736, 742 n.2 ("[A] plaintiff must establish standing at the time the suit is filed . . . .").

The Seventh Circuit has long recognized that "a party may neither amend its pleadings by argument in opposition to summary judgment nor introduce new theories of liability in opposition to summary judgment." *Whitaker v. Milwaukee Cty., Wis.*, 772 F.3d 802, 808 (7th Cir. 2014). The same is true at the appellate level. *Pennell*, 990 F.3d at 1045; *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1246, 1248 (7th Cir. 2021) ("Our job is to decide whether [plaintiffs] have Article III standing to pursue the case they have presented in their complaint.").

Assuming a plaintiff has alleged a particular theory of liability in the complaint, "[s]tanding must be established 'with the manner and degree of evidence required at the successive stages of litigation.'" *Id*. (citing *Lujan*, 504 U.S. at 561). Thus, at the summary judgment stage or on appellate review, Freeman must show that she established standing through designation of admissible evidence offered at summary judgment. *See id*. While it is true that courts should generally not make credibility determinations at the summary judgment stage, *McCottrell v. White*, 933 F.3d 651, 657 (7th Cir. 2019) (citation omitted), a nonmoving party like Freeman at the summary judgment stage cannot rest "upon conclusory statements in affidavits; [they] must go beyond the pleadings and support [their] contentions with proper documentary evidence." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (citation omitted); *see also Foster v. PNC Bank, Nat'l Ass'n*, 52 F.4th 315, 320 (7th Cir. 2022).

**B.**    **The majority of Freeman's arguments regarding alleged intangible injuries are improper because they were raised for the first time in opposition to Ocwen's Motion for Summary Judgment and were not pled in her original complaint.**

Freeman's appeal of the district court's finding that she failed to establish Article III standing to maintain her FDCPA claim relies almost entirely on alleged intangible injuries that were not introduced until her Opposition to Ocwen's Motion for Summary Judgment.[8]  Freeman's arguments that she suffered injury akin to common-law torts for (i) defamation and false light, and (ii) invasion of privacy and intrusion upon seclusion do not appear in her original Complaint or any of her subsequent amendments.  Instead, these claims were raised for the first time in Freeman's Opposition to Ocwen's Motion for Summary Judgment in an apparent attempt to "save her claim" after Ocwen demonstrated that Freeman could not produce any evidence of a tangible concrete injury to establish standing under the FDCPA.  *See Pennell*, 990 F.3d at 1045 (holding that plaintiff could not introduce new argument alleging invasion of privacy in response to an appeal where "Pennell did not complain that her injuries included any perceived invasion of privacy [in her original complaint]").

---

[8] Notably, Freeman has abandoned many of her alleged injuries that she argued conferred standing under the FDCPA in her Opposition to Ocwen's Motion for Summary Judgment.  *See* Pl.'s Resp. Opp. Ocwen's Mot. Summ. J. pg. 43 (arguing that Freeman allegedly had fees assessed against the Loan and allegedly suffered a loss of time and physical manifestations of emotional distress), *id*. at pg. 50 (arguing that Freeman allegedly suffered a physical manifestation of emotional distress), *id*. at pgs. 52-54 (arguing that Freeman allegedly suffered a physical manifestation of emotional distress and hypertension).

Regarding the alleged injuries akin to common-law claims for defamation or false light, Freeman argues to this Court that "Ocwen's repeated dissemination of inaccurate credit reporting to the effect her loan was in default, and without any indication of her prior disputes," caused her reputational harm akin to the type of harm suffered from a common law claim for defamation or false light.  Brief of Appellant 30.  But Freeman's original Complaint does not include a claim under the FDCPA related to credit reporting, in particular it does not include a claim for failing to report her debt as disputed in violation of 15 U.S.C. § 1692e(8), nor do any of the subsequently filed amended complaints.[9]  Freeman's original Complaint and her subsequently amended complaints are also devoid of any allegation that "Ocwen's pursuit of foreclosure without cause" in violation of the FDCPA caused injury akin to a common-law claim for defamation or false light.  While Freeman does allege a violation of 15 U.S.C. § 1692e(5), that claim concerns attempts to collect a debt through threatening to take action that cannot legally be taken or is not intended to be taken, not dissemination of inaccurate or false information to third parties.

---

[9] The only reference to credit reporting in connection with her FDCPA claim is a conclusory legal statement that "Ocwen violated 15 U.S.C. § 1692f(1) by . . . reporting false information by reporting the loan delinquent to the credit bureaus."  AA103 ¶ 257.  But that section of the FDCPA concerns the prohibition on use of "unfair or unconscionable means to collect or attempt to collect any debt. . . through "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  In other words, the only reference to credit reporting in Freeman's Complaint relating to her FDCPA claim concerns alleged attempts to collect unauthorized amounts, not disseminating inaccurate or false information about her to third parties (i.e., a claim akin to defamation or false light).

With respect to her alleged injuries akin to common-law claims for invasion of privacy or intrusion upon seclusion, Freeman's original Complaint is devoid of any factual allegations that any of the claimed violations of the FDCPA "included any perceived invasion of privacy" or intrusion upon seclusion. *See Pennell*, 990 F.3d at 1045. For example, while Freeman's original Complaint makes reference to receiving calls, *see* AA083 ¶ 127, she does not allege any facts that the calls caused her any specific harm akin to an invasion of privacy or intrusion upon seclusion such as hearing a phone ring or interrupting some activity she was engaged in. As Freeman concedes, at most these calls caused her "fear" or other vague psychological distress that is insufficient to confer standing. *See* Brief of Appellant 33 ("Ocwen's placement of over twelve collection calls within a month . . . caused her to live in fear of losing her home . . . .); *Pierre*, 29 F.4th at 939 ("worry, like confusion, is insufficient to confer standing . . . ."). Freeman's original Complaint and all of her amended complaints also contain no allegations whatsoever concerning the alleged "door knocks" that she asserts constitute an invasion of privacy or intrusion on seclusion. Of course, this is because her claim that "door knocks" and/or leaving of door tags violated the FDCPA was raised for the first time in her opposition to Ocwen's Motion for Summary Judgment and there is no evidence in the record to support these claims raised for the first time more than three years after Freeman commenced this litigation and nearly five (5) months after discovery had closed in this case.

Like *Pennell*, Freeman's original Complaint is devoid of any factual allegations that as a result of Ocwen's alleged violations of the FDCPA she suffered injuries akin to common-law torts for defamation, false light, invasion of privacy, or intrusion upon seclusion. The same is true of her amended complaints. As a result, this Court "need not entertain" Freeman's defamation, false light, invasion of privacy, or intrusion upon seclusion arguments because they were improperly raised for the first time in opposition to Ocwen's Motion for Summary Judgment and are not otherwise factually alleged in Freeman's Complaint. *See Pennell*, 990 F.3d at 1045; *Thornley*, 984 F.3d at 1246, 1248; *see also Whitaker*, 772 F.3d at 808.

**C.** **Freeman failed to demonstrate through designation of admissible evidence offered at summary judgment that she suffered a concrete intangible harm that actually materialized, and otherwise asserts alleged intangible injury that Seventh Circuit does not recognize as sufficient to confer Article III standing.**

Even if the Court were to overlook Freeman's improper pursuit of alleged injuries for defamation, false light, invasion of privacy, or intrusion upon seclusion, Freeman's arguments fail because she cannot demonstrate through designation of admissible evidence that she suffered a concrete intangible harm that *actually* materialized. *See Pierre*, 29 F.4th at 938 (citing *TransUnion*, 141 S. Ct. at 2210–11). Additionally, with respect to Freeman's alleged injury akin to a common-law claim for abuse of process, this Court's precedent is clear that no Article III standing exists from Freeman hiring a lawyer and engaging in litigation.

### 1. There is no evidence to support a claim for defamation and false light.

In support of her alleged injury akin to defamation or false light, Freeman argues that "Ocwen's incorrect reporting had an undeniably negative effect on Ms. Freeman's credit, *at least plausibly resulted in her being denied credit* and, later, not seeking credit opportunities out of fear of embarrassment." Brief of Appellant 31 (emphasis added). Freeman manages to miss the mark numerous times with this single conclusory statement.

To begin with, Freeman's allegation that "Ocwen's incorrect reporting had an undeniably negative effect on Ms. Freeman's credit" is not supported by any admissible evidence in the record demonstrating that she suffered credit-related injury. The only thing Freeman can cite to is her own conclusory statements that she was denied a loan in February 2018 from OneMain and vague testimony by Allen Freeman that "[c]redit is messed up because of this whole situation. She's not able – we were trying to get a roof on credit. We couldn't even do that." *Id*. (citing AA219 ¶¶ 33–34; AA233 ¶¶ 2–5). Freeman does not have any proof that her credit report was ever obtained by these companies and never produced any documents showing a denial of a credit application following a third party receiving her credit report. Freeman's failure led the district court to correctly recognized, "Freeman has not designated any admissible evidence that her credit or reputation have been harmed by Ocwen's alleged FDCPA violations . . .

Freeman's conclusory assertions are not supported by admissible evidence of actual injury."  AA059.

Freeman's suggestion that Ocwen's reporting "at least *plausibly* resulted in her being denied credit," is woefully deficient for the purpose of establishing Article III standing at the summary judgment stage.  *See Pierre*, 29 F.4th at 939.  Freeman must demonstrate through admissible evidence that harm *actually* occurred.  *Id*. at 938–39.  Similarly, Freeman assertion that she refrained from seeking credit out of fear of being denied again and experiencing further embarrassment is based on nothing more than pure speculation and conjecture.  *See* AA219 ¶ 34.  Such speculation is not evidence of a concrete injury-in-fact that "ha[s] in fact materialized" such that Article III standing exists.  *See Pierre*, 29 F.4th at 938 (citing *TransUnion*, 141 S. Ct. at 2210–11).  Moreover, this Court has repeatedly stated that embarrassment is not an injury-in-fact sufficient to confer Article III standing.  *See Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) ("As our bevy of recent decisions on FDCPA standing makes clear, anxiety and embarrassment are not injuries in fact.").

Freeman's arguments suggesting that the filing of the Second Foreclosure Action caused her injury akin to a common law claim for defamation or false light are equally unavailing.  To begin with, this Court has already rejected the notion that hiring a lawyer or engaging in litigation confers Article III standing.  *See Pierre*, 29 F.4th at 939; *see also Choice v. Kohn Law Firm*, 77 F.4th 636, 639 (7th Cir. 2023) (finding plaintiff who hired

lawyer to defend against lawsuit filed by debt collector and paid an appearance fee had

not established Article III standing).  Additionally, neither in opposition to summary

judgment nor here to this Court has Freeman identified any evidence that she actually

suffered an injury akin to defamation or false light as a result of the Second Foreclosure

Case being filed.  There is no evidence that Freeman's reputation has been harmed or that

anyone outside of the interested parties is or was aware of the Second Foreclosure Case.

Moreover, Freeman has not cited any authority suggesting that filing of a lawsuit or

related pleadings can serve as the basis for a defamation or false light claim.  More

fundamentally, it does not logically follow that Freeman cannot establish standing by

hiring a lawyer and engaging in litigation, but that the creditor's filing of the litigation

itself would confer standing.  *See Choice*, 77 F.4th at 639.  Such a conclusion would render

this Court's precedent superfluous because it result in a situation where hiring a lawyer

and engaging in litigation brought by a creditor would <u>not</u> confer standing, but a

creditor's act of filing litigation would confer standing.  While Freeman may have felt

anxious, fearful, embarrassed, frustrated, or some other variety of emotional distress,

none of that is sufficient to establish Article III standing.  *See Pierre*, 29 F.4th at 939; *Choice*,

77 F.4th at 639-640; *Wadsworth*, 12 F.4th at 668.

Accordingly, because Freeman has not demonstrated that she suffered a concrete

intangible injury that actually materialized and otherwise takes a position that is

inconsistent with this Court's precedent, she has failed to establish Article III standing to

maintain a claim under the FDCPA based on injury akin to a common law claim for defamation or false light.

> **2.** **There is no evidence to support a claim of invasion of privacy and intrusion upon seclusion.**

Freeman claims that she has suffered concrete intangible injuries akin to a common law claim for invasion of privacy and intrusion upon seclusion due to receiving phone calls from Ocwen and the alleged "door knocks" and/or door tags allegedly left at her home. Brief of Appellant 32–33. However, Freeman's arguments fail because she has failed to designate admissible evidence that an injury akin to a claim for invasion of privacy and intrusion upon seclusion actually materialized.

With respect to the phone calls, Freeman does not point to any evidence that the calls caused her any specific harm akin to an invasion of privacy or intrusion upon seclusion such as hearing a phone ring or interrupting some activity she was engaged in. As mentioned above, Freeman suggests that the calls caused her "fear" or other vague psychological distress that is insufficient to confer standing. *See* Brief of Appellant 33 ("Ocwen's placement of over twelve collection calls within a month . . . caused her to live in fear of losing her home . . . .). But emotional distress, fear, worry, or any other sort of non-physical manifestation is insufficient to confer Article III standing. *Pierre*, 29 F.4th at 939 ("worry, like confusion, is insufficient to confer standing . . . ."). Freeman also fails to point to any evidence that the alleged "door knocks" or door tags caused her an injury that actually materialized. For example, Freeman does not point to evidence

demonstrating that she heard anyone knock on her door or otherwise encountered someone visiting her home.  Even if she had, such innocuous activity would not confer Article III standing as people visiting one's property or leaving something on a front door is not closely related to a common law claim for invasion of privacy or intrusion upon seclusion.  Indeed, anyone in the public can walk up to Freeman's front door and knock or leave something.  This likely happens every day when mail is delivered to her house.  The fact that the visitor may be unwanted does not convert otherwise innocent behavior into an unlawful invasion of privacy or intrusion upon seclusion.  More fundamentally, Freeman does not cite to or suggest that there is any inherent right to privacy or seclusion outside of one's home or personal belongings.  Basic principles of law suggest there is not.  For example, there is no inherent right to privacy to anything that can be readily viewed from a public place.

Accordingly, because Freeman has failed to point to any admissible evidence that demonstrates a concrete intangible injury akin to a common law claim for invasion of privacy or intrusion upon seclusion, she has failed to demonstrate she has Article III standing.

### 3. Abuse of process does not confer Article III standing under this Court's precedent.

Freeman argues that she has suffered an intangible injury akin to a common law claim for abuse of process as a result of having to defend herself in the Second Foreclosure Action.  In support of her argument, she relies on out-of-circuit case law and a legal

treatise on tort law.  *See* Brief of Appellant 33–34.  But this Court has rejected the notion that hiring a lawyer or engaging in litigation (even when defending against suit) confers Article III standing.  *See Choice*, 77 F.4th at 639 (finding plaintiff who hired lawyer to defend against lawsuit filed by debt collector and paid an appearance fee had not established Article III standing); *see also Pierre*, 29 F.4th at 939.

The arguments advanced by Freeman track the same reasoning taken by the dissent in *Choice*, which was rejected by the majority of the panel in that case.  Like the plaintiff in *Choice*, Freeman does not assert an FDCPA claim that challenges the underlying debt — in this case the mortgage loan — itself.  *See Choice*, 77 F.4th at 639, n.3. There is no dispute that Freeman has a mortgage loan that was serviced by Ocwen, and that Ocwen had a right to collect on the mortgage loan.  Instead, Freeman is challenging collection efforts and inaccurate representations about status and character of the debt that resulted from an accounting error during a specific period of time.  Freeman's reliance on the Eighth Circuit case *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691–92 (8th Cir. 2017) is unpersuasive.  Indeed, the Eighth Circuit's reasoning that "an individual is harmed because he is compelled to defend against a fabricated claim which . . . subjects him to the panoply of psychological pressures most civil defendants suffer . . .," *Demarais*, 869 F.3d at 691, is inconsistent with this Court's precedent that such psychological harms are insufficient to confer Article III standing.  *See Pierre*, 29 F.4th at 939; *Choice*, 77 F.4th at 639–640; *Wadsworth*, 12 F.4th at 668.

In light of this Court's prior holdings in *Choice* and *Pierre*, Freeman's argument fails because this Court does not recognize a concrete intangible injury akin to a claim for abuse of process under the factual circumstances presented in Freeman's case.

**D.    Freeman failed to demonstrate through designation of admissible evidence offered at summary judgment that she suffered a concrete tangible harm that actually materialized.**

In addition to her improper and unavailing claims for concrete intangible injury, the one remaining concrete tangible injury that Freeman advances on appeal is for alleged debt she incurred from hiring her counsel to represent her in the Second Foreclosure Case. Brief of Appellant 34–35. As discussed above, this Court's holdings in *Choice* and *Pierre* foreclose the arguments advanced by Freeman that the cost of hiring an attorney is a concrete harm that can confer Article III standing. *See Choice*, 77 F.4th at 639; *see also Pierre*, 29 F.4th at 939.

Even without considering the effect of those holdings on this alleged concrete *tangible* harm, Freeman has nonetheless failed to establish through designation of admissible evidence that she has actually "incurred" a "debt" as she claims. Specifically, the evidentiary record does not establish whether she presently owes the amount claimed or if she is merely required to pay the alleged fees if she obtains a monetary award in connection with this lawsuit. Additionally, aside from Freeman's conclusory statement that she owes the fees, the only evidence establishing the existence of these alleged fees was excluded by the district court because Freeman failed to produce it in discovery.

AA059 ("In its Orders on the Defendants' motions in *limine*, . . . [t]he Court also excluded

. . . the statement of attorney's fees allegedly incurred in connection with her

foreclosure."). Notably, in addition to the excluded fee affidavit itself, the alleged

amount owed was never claimed or disclosed by Freeman prior to the close of discovery.

The declaration that Freeman relies on to establish the existence of this debt — like the

fee affidavit — was not produced until *after* the close of discovery and *after* Ocwen had

already filed its Motion for Summary Judgment. To that end, Ocwen disagrees with

Freeman's assertion that the district court's exclusion of the fee affidavit has no bearing

on Freeman's declaration. The district court, in concluding that Freeman had failed to

designate admissible evidence to establish standing, specifically referenced its exclusion

of "the statement of attorney's fees allegedly incurred." *See* AA059. Thus, the district

court's decision clearly establishes that it will not accept the same excluded information

in a different format. Indeed, it would be unreasonable and unjust to suggest that

Freeman can be sanctioned via exclusion of a document she failed to produce in discovery

to Ocwen's prejudice — a decision that Freeman does not challenge on appeal — but that

she can simply introduce that same untimely and prejudicial evidence through a

conclusory statement in a declaration submitted in opposing to summary judgment.

Thus, in addition to the fact that Freeman's conclusory statement does not actually

establish that she owes the alleged fees such that she has demonstrated a concrete harm

sufficient to confer Article III standing, this Court should refuse to consider Freeman's

declaration to the extent it seeks to introduce evidence that was excluded, particularly where the exclusion is not challenged on appeal.

## CONCLUSION

Based on the foregoing reasons, Defendants-Appellees Ocwen Loan Servicing, LLC, and The Bank of New York Mellon f/k/a The Bank of New York as successor in interest to JPMorgan Chase Bank, N.A., as Trustee for C-BASS Mortgage Loan Asset-Backed Certificates, Series 2005-RP1 respectfully request this Court affirm the district court's judgment of dismissal and grant them such other and further relief as this Court deems appropriate and just.

Dated: November 15, 2023

Respectfully submitted,

*/s/ John C. Lynch* _____
John C. Lynch
Ethan G. Ostroff
Carter R. Nichols
TROUTMAN PEPPER
HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23454
Telephone: (757) 687-7500
E-mail: john.lynch@troutman.com
E-mail: ethan.ostroff@troutman.com
E-mail: carter.nichols@troutman.com

*Counsel for Defendants-Appellees*
*Ocwen Loan Servicing, LLC and*
*The Bank of New York Mellon f/k/a The*
*Bank of New York as successor in interest to*
*JPMorgan Chase Bank, N.A., as Trustee for*
*C-BASS Mortgage Loan Asset-Backed*
*Certificates, Series 2005-RP1*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because this document contains 13,892 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word 2016 in 12-point Palatino Linotype style font.

Dated: November 15, 2023

/s/ John C. Lynch
John C. Lynch
*Counsel for Defendants-Appellees*
*Ocwen Loan Servicing, LLC and*
*The Bank of New York Mellon f/k/a The*
*Bank of New York as successor in interest to*
*JPMorgan Chase Bank, N.A., as Trustee for*
*C-BASS Mortgage Loan Asset-Backed*
*Certificates, Series 2005-RP1*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2023, the Brief of Appellees was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ John C. Lynch*
John C. Lynch