No. 23-2512
_____

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT
_____

Demona Freeman,

       *Plaintiff-Appellant,*

   v.

Ocwen Loan Servicing, LLC., and
The Bank of New York Mellon f/k/a
The Bank of New York  as successor in
interest to JPMorgan Chase Bank, N.A., as Trustee
for C-BASS Mortgage Loan Asset-Backed
Certificates, Series, 2005-RPI,

       *Defendants-Appellees.*


_____

Appeal from the United States District Court
for the Southern District of Indiana
Case. No. 1:18-cv-03844-TWP-MKK
The Honorable Judge Tonya Walton Pratt
_____

## REPLY BRIEF

## OF PLAINTIFF-APPELLANT, DEMONA A. FREEMAN
_____

Travis W. Cohron
Clark, Quinn, Moses, Scott & Grahn, LLP
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
(317) 637-1321
tcohron@clarkquinnlaw.com
*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................... 3

Introduction ...................................................................................................................... 4

Argument .......................................................................................................................... 5

    I.    Appellee's Arguments for Affirming the Dismissal of Plaintiff's Fair Credit
Reporting Act Claim are Unavailing. ...................................................................... 5

        A.    Freeman Plausibly Alleged a Claim for Relief Under Section 1681s-2(b) of
the FCRA. ............................................................................................................. 5

        B.    Ocwen's Alternative Arguments About the "Reasonableness" of its
Investigations and "Willfulness" Were Also Not Raised Below and Lack Merit. .... 6

    II.    Appellee's Arguments for Affirming the Dismissal of Ms. Freeman's FCRA Claim
with Prejudice are Unavailing. ................................................................................ 7

        A.    Ms. Freeman's Request for Leave to Amend was Proper and the District
Court Abused its Discretion in Denying Freeman Leave to Amend. ........................ 7

    III.    Appellee's Arguments for Affirming the District Court's Determination Freeman
Lacks Standing are Unavailing. ............................................................................. 10

        A.    Concrete Article III Injury in the Context of a Statutorily Defined Harm,
Does "Not Require an Exact Duplicate" of the Common-law Analogue—Just "a
Close Relationship." ........................................................................................... 10

            1.    *Freeman introduced evidence of harm analogous to that caused by
defamation or false light.* ............................................................................. 11

            2.    *Freeman introduced evidence of harm analogous to that caused by
invasion of privacy or intrusion upon seclusion.* ........................................... 13

            3.    *Harm analogous to abuse of process can confer standing.* ................... 15

        B.    The Operative Complaint Alleges Injury Akin to the Common Law Torts
of Defamation or False Light, Invasion of Privacy or Intrusion Upon Seclusion, and
Abuse of Process. ............................................................................................... 17

        C.    Freeman submitted evidence of concrete tangible harm. ........................... 19

Conclusion ....................................................................................................................... 21

Certificate of Compliance ............................................................................................... 21

Certificate of Service ...................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases:**

*Albert v. Carovano*, 851 F.2d 561 (2d Cir. 1988) ...............................................................18

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.E.2d 868 (2009) ...............................6

*Bailey v. International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local 374*, 175 F.3d 526 (7th Cir. 1999) ..................................................6, 7

*Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073 (7th Cir. 1992)......................................18

*Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010)...................................................8, 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ...............6

*Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020) ................................15

*Chapman v. Yellow Cab Cooperative*, 875 F.3d 846 (7th Cir. 2017)......................................18

*Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852 (7th Cir. 2017) ...........................19

*Choice v. Kohn Law Firm, S.C.*, 77 F.4th 636 (7th Cir. 2023) ................................. 15, 16, 20

*CMFG Life Insurance Co. v. RBS Securities, Inc.*, 799 F.3d 729 (7th Cir. 2015) .........................19

*Contra. Santos v. Healthcare Revenue Recovery Grp., LLC*, 85 F.4th 1351 (11th Cir. 2023).............12

*Demaris v. Gurstel Chargo, P.A.*, 869 F.3d 685 (8th Cir. 2017) ...........................................16

*Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023)..........................................................14

*Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146 (7th Cir. 2022) .........................................12, 13

*Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305 (11th Cir. 2018) .........................................6

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct 227, 9 L.Ed.2d 222 (1962) ...............................9, 10

*Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020) .......................................10, 14

*Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) .......................................11

*Hurst v. Caliber Home Loans, Inc.*, 44 F.4th 418 (6th Cir. 2022) .........................................20

*In Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) ...................................19

*James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396 (7th Cir. 2006) .................................8

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ........................................11

*Lang v. TCF Nat'l Bank*, 249 Fed. Appx. 464 (7th Cir. 2007)...............................................6

*Leones v. Rushmore Loan Management Services, LLC.*, 749 Fed. App'x. 897 (11th Cir. 2018) ...............7

*Loewe v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 19-12187, 2020 WL 409655, at *4 (E.D. Mich. Jan. 24, 2020)..........................................................................................20

*Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041 (7th Cir. 2021)...........................................19

*Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934 (7th Cir. 2022) .................................15, 20

*Santos v. Healthcare Revenue Recovery Grp., LLC*, 85 F.4th 1351 (11th Cir. 2023)........................12

*Smith v. Pro. Transportation, Inc. 5 F.4th 700 (7th Cir. 2021)......................................6, 18

*Spokeo Inc. v. Robins*, 578 U.S. 330, 340–41, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) ..............10, 11

*TransUnion LLC v. Ramirez, 594 U.S. -*, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021)...............10, 11, 12

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) .................................14

*Whitaker v. Milwaukee Cty., Wis.*, 772 F.3d 802 (7th Cir. 2014) .........................................18

*Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631 (5th Cir. 2oo2) .................................6

*Zall v. Standard Ins. Co.*, 58 F.4th 284 (7th Cir. 2023) .................................................19

**Statutes:**

15 U.S.C. § 1692e(8)..................................................................................12, 13

15 U.S.C.A. § 1692f ......................................................................................16

## INTRODUCTION

Ocwen's defense of the district court's decision asks this Court to ignore allegations in the complaint and erect an artificially high pleading barrier in defiance of well-settled law that a plaintiff need not plead legal theories. First, on the FCRA claim, Ocwen cherry-picks a single paragraph in the complaint about the nature of the falsehood reported and argues that the paragraph, alone, supports the district court's holding that Ms. Freeman did not allege that she notified a credit-reporting agency of her dispute. But the complaint, of course, must be taken as a whole, and Ocwen fails to grapple with the totality of Ms. Freeman's allegations and their clear import: that she did allege—as Ocwen indisputably knew in the real world—that she notified the CRAs. This alone warrants reinstatement of the FCRA claim.

Second, Ocwen tries to avoid clear evidence of Article III injury under the FDCPA at summary judgment by arguing that Ms. Freeman's complaint did not clearly articulate how her allegations of injury corresponded to her legal theories on standing. But, again, it is well-settled that a plaintiff need not plead legal theories. Ocwen also asks this Court to disregard its own precedent and create a circuit split by holding that a plaintiff does not establish a concrete injury when a defendant falsely reports credit to third parties, places intrusive non-consensual phone calls, or forces a plaintiff to defend against a frivolous debt-collection suit. In so doing, Ocwen fails to acknowledge the substantial evidence Ms. Freeman submitted demonstrating the kinds of harm associated with common-law analogues to the FDCPA. The district court should be reversed for the reasons stated below and in Appellant's Brief.

<u>**ARGUMENT**</u>

I.  **Appellee's Arguments for Affirming the Dismissal of Plaintiff's Fair Credit Reporting Act ("FCRA") Claim are Unavailing.**

    A.  **Freeman Plausibly Alleged a Claim for Relief Under Section 1681s-2(b) of the FCRA.**

The sole reason given by the district court gave for dismissing Ms. Freeman's FCRA claim was that her allegations were "devoid of nonconclusory factual assertions to support the legal elements of a dispute being made to a credit reporting agency, and the credit reporting agency in turn notifying Ocwen of the dispute." Ord. Def.'s Mot. Dismiss., *Freeman v. Ocwen Loan Servicing, LLC*, Case 1:18-cv-03844-TWP-MKK (S.D. Ind.) (ECF 133 at 30). Thus, in her opening brief, Ms. Freeman identified the specific statements in her complaint that alleged she disputed Ocwen's reporting with credit reporting agencies. *See* Pl.'s Resp. in Opp. to Def.'s Mot. Dismiss. (ECF 90 at 24-25). Freeman also highlighted paragraphs in her complaint describing the credit reporting agencies ("CRAs") involved, alleging that Ocwen "receiv[ed] notice of Freeman's disputes from" said CRAs, identifying the inaccurate reporting at issue, and detailing the CRAs' process for conveying disputes to furnishers like Ocwen. *Id*.; AA072-073, ¶¶ 47, 49; AA097 ¶ 222, AA107-108, ¶ 279.

In response, Ocwen does not contest the presence of these allegations or that it did not in fact receive Ms. Freeman's disputes from the CRAs, as reflected in exhibits attached to Ms. Freeman's complaint.[1] Instead, Ocwen defends the district court's parsimonious reading of the Complaint by self-servingly describing the relevant portions as "threadbare" and pursuing a considerable enhancement to Rule 8's pleading requirements that no consumer could ever satisfy. It argues that Freeman's FCRA claim fails because she did not allege "the number of disputes submitted to a CRA, to which (if any) of the CRAs she submitted dispute, the format in which a

---

[1] Indeed, this may explain why Ocwen twice answered the same allegations before moving to dismiss.

dispute was submitted to each CRA, or the contents of a dispute sent to each CRA." Appellee's Br. 26 (ECF No. 21).[2]

But these arguments do not justify the district court's decision. To start, Ocwen did not argue these alleged deficiencies below and they should not be considered for the first time on appeal. *See Bailey v. International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local 374*, 175 F.3d 526, 529 (7th Cir. 1999) ("It is well settled that arguments presented for the first time on appeal are waived."). Notwithstanding, Ms. Freeman was not obligated to plead her claim in such painstaking detail nor could she. *Twombly* and *Iqbal* did not elevate the pleading standard applicable to a motion to dismiss to something akin to the standard which applies at the summary judgment stage. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.E.2d 868 (2009). Yet Ocwen's arguments, the immense factual detail it deems required without regard to plausibility, seeks to inappropriately conflate these two standards. This is evidenced in part by the fact the authority it relies upon explore the absence of these "facts" in relation to motions for summary judgment. *See, e.g., Young v. Equifax Credit Info. Servs., Inc.,* 294 F.3d 631 (5th Cir. 2002); *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305 (11th Cir. 2018).

## B. Ocwen's Alternative Arguments About the "Reasonableness" of its Investigations and "Willfulness" Were Also Not Raised Below and Lack Merit.

Ocwen also argues Ms. Freeman failed to adequately allege the investigations responsive to her credit reporting disputes were "unreasonable" or that it acted "willfully."[3] But once more, Ocwen

---

[2] Ocwen also contends the paragraph of Freeman's complaint identifying the inaccuracy at issue (AA097 ¶ 222) was not sufficient "on its own" to allege that Freeman raised a dispute with a CRA. Appellee's Br. 25-26 (ECF No. 21). But no authority or rule requires a claim be pled in a single paragraph. Her allegations "taken as a whole," as they must be, more than meet her burden. *See Smith v. Pro. Transportation, Inc.*, 5 F.4th 700, 705 (7th Cir. 2021).

[3] Ocwen also summarily seeks to distinguish this case from *Lang v. TCF Nat'l Bank*, 249 Fed. Appx. 464 (7th Cir. 2007) for reasons including "the allegations in the complaint at issue in *Lang* were materially different" than those at issue here.

did not raise either of these arguments to the district court and they should be deemed waived. *See* *Bailey*, 175 F.3d at 529. In any event, Ocwen's position is fatally tied to ignoring plausibility or appropriate inferences. Ms. Freeman alleged without limitation that Ocwen failed to reasonably investigate, what a reasonable investigation would have resulted in, and that a verdict had been entered against Ocwen for nearly identical conduct. *See, e.g.,* AA093, ¶186-87; AA086, ¶146-49; AA087, ¶152; AA089, ¶165, 167; AA090, ¶169-71, 174; AA092-093, ¶184-85. Notwithstanding, in arguing "reasonableness" or "willfulness" (information about which is solely in possession of the defendant) is something that must be alleged with greater specificity, Ocwen asks the Court to impose an impossible standard and misconstrues the holding in *Leones v. Rushmore Loan Management Services, LLC.,* 749 Fed. App'x. 897 (11th Cir. 2018) - a case that turns on the absence of any inaccurate credit reporting.

## II. Appellee's Arguments for Affirming the Dismissal of Ms. Freeman's FCRA Claim with Prejudice are Unavailing.

### A. Ms. Freeman's Request for Leave to Amend was Proper and the District Court Abused its Discretion in Denying Freeman Leave to Amend.

Ms. Freeman was denied any opportunity to cure purported factual deficiencies with her FCRA claim.[3] Ocwen cannot dispute that reality, so instead it quibbles with the manner in which Ms. Freeman requested leave for amend, argues justification for leave being denied was provided by way of the Order on Motion to Reconsider, and asserts for the first time the absence of "good cause."[5] But these arguments are unavailing.

---

However, nothing in the record supports this assertion and it is dubious given the nature of the credit dispute process underpinning claims brought under the FCRA.

[4] Ocwen also provides a very lengthy rendition of the purported procedural history but neglects to mention discovery in this matter was stayed from January 8, 2020 to October 8, 2020. *See* Minute Entry (ECF No. 111); *see also* Order on Joint Mot. to Extend Stay (ECF No. 117).

[5] Ocwen again distorts the district court's findings, failing to mention that the district court did not explicitly find a lack of "good cause" in denying Freeman's request for leave to amend.

To start, Ms. Freeman's request for leave was procedurally proper. A formal motion for leave to amend is not necessary at the Rule 12(b)(6) stage. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (concluding that the district court abused its discretion in denying leave to amend when it concluded plaintiff had failed to file a motion for leave to amend and instead requested leave in her response to defendant's motion to dismiss). At the 12(b)(6) stage, a plaintiff is entitled to "wait and see" if any pleading problems the court might find can be corrected. *Id.*

Further, Ms. Freeman's ability to cure the deficiencies identified by the district court could not have been reasonably doubted. The district court did not dismiss Ms. Freeman's FCRA claim due to an unworkable legal theory; it dismissed Ms. Freeman's FCRA claim based upon a purported failure to allege sufficient factual detail about actions required by law (and specific details about which are solely in the possession of others) and what she, *herself,* did. This distinction makes the instant matter incongruous to *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396 (7th Cir. 2006), the sole case on which Ocwen relies concerning the appropriateness of the district court's denial of leave to amend. In *James Cape,*, this Court found no abuse of discretion in dismissing with prejudice where the district court had "no way of knowing what the proposed amendment entailed." *Id.* at 401. But *James Cape* involved a difficult-to-plead antitrust claim, where not only factual allegations of the defendant's conduct was at issue but also the soundness of the overarching legal theory itself. Thus, the district court in *James* had good reason to question the plaintiff's ability to cure the complaint.

As for Ocwen's contention the district court provided ample justification for the denial of leave to amend within its Order on Freeman's Motion to Reconsider, it misrepresents the language contained therein while inappropriately seeks to stitch together two different orders. To be clear, following the district court's dismissal of her FCRA claim with prejudice, Freeman filed a Motion to Reconsider to highlight potentially overlooked allegations and notify the district court she had received discovery responses from a CRA (TransUnion, LLC) which contained information that

would allow her to not only cure the purported deficiencies with her FCRA claim but supplement it with incredible detail. *See* Mot. Reconsider. (ECF 140 at 5). Ms. Freeman attached copies of the TransUnion discovery responses to her Motion to Reconsider that evidenced such facts and even highlighted specific portions thereof. *See id.*; *see also* Reply Further Supp. of Pl.'s Mot. Reconsider (ECF No. 161). In short, while true the Motion to Reconsider could be construed as somewhat of a supplement to Ms. Freeman's prior request for leave to amend, it provided additional justification about why leave should be granted. Nevertheless, the district court denied Ms. Freeman's Motion to Reconsider, concluding "Freeman had arguments that she could and should have raised before the [District] Court issued its Order on Defendant's Motion to Dismiss, and importantly, she was given three attempts to adequately plead her FCRA claim." *See* Ord. Pl.'s Mot. Recons. (ECF 194 at 7).

This is far from what Ocwen suggests is in the Order and, nevertheless, wholly fails to provide adequate justification for the district court's denial of leave to amend. None of the arguments could have been raised previously because Ms. Freeman did not have the benefit of the district court's view of her Complaint until it entered its Order on Ocwen's Motion to Dismiss. And even if she could have foreseen the exact factual deficiencies identified by the district court, Ms. Freeman was entitled to "wait and see" if any pleading problems the court might find can be corrected rather than guess precisely what possible pleading problems there might be. *See Bausch*, 630 F.3d at 562. Moreover, while true Ms. Freeman was granted leave to amend (more appropriately, supplement) on two prior occasions (not three), she was never provided an opportunity to cure.

Thus, what the Motion to Reconsider and resulting Order does confirm - having now been raised by Ocwen, is there was never any question about whether Ms. Freeman could cure the purported factual deficiencies with her FCRA claim and that the district court did not (explicitly or otherwise) find a *Foman* factor justifying its decisions because none existed. *See Foman v. Davis*,

371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (in making such a determination, courts are to consider the following factors as outlined by the Supreme Court: (1) undue delay on the part of the moving party; (2) bad faith on the part of the moving party; (3) dilatory motive on the part of the moving party; (4) the moving party's repeated failure to cure deficiencies by previously allowed amendments; (5) undue prejudice to the opposing party; and (6) futility).

### III. Appellee's Arguments for Affirming the District Court's Determination Freeman Lacks Standing are Unavailing.

#### A. Concrete Article III Injury in the Context of a Statutorily Defined Harm, Does "Not Require an Exact Duplicate" of the Common-law Analogue—Just "a Close Relationship."

Ocwen does not meaningfully dispute that the injuries caused by its FDCPA violations are analogous to injuries caused by (1) defamation or false light, (2) invasion of privacy or intrusion upon seclusion, and (3) abuse of process. Rather, Ocwen contends they are not analogous *enough* and implicitly seeks to impose a heightened evidentiary burden requiring proof of both the statutory violation *and* the analogous historical tort. Ocwen's position contravenes the Supreme Court's Article III jurisprudence, which holds that concrete intangible injury in the context of a statutorily defined harm exists when there is "a close relationship" between the harm caused by the statutory violation and a common-law analogue; "an exact duplicate" is not required. *TransUnion LLC v. Ramirez*, 594 U.S. —, 141 S.Ct. 2190, 2209, 210 L.Ed.2d 568 (2021); *see also Spokeo Inc. v. Robins*, 578 U.S. 330, 340–41, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016).

This Court has also weighed in. In *Gadelhak v. AT&T Servs., Inc.*, now-Justice Barrett observed that when asked "to analogize to harms recognized by the common law, [courts] are meant to look for a 'close relationship' in kind, not degree." 950 F.3d 458, 462 (7th Cir. 2020). The approach Ocwen advocates would subvert *Gadelhak*'s admonition that although the common law provides guidance, "it does not stake out the limits of Congress's power to identify harms deserving

a remedy. Congress's power is greater than that: it may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* at 462-63 (quoting *Spokeo*, 136 S. Ct. at 1549). Article III does not require courts to "import the elements of common law torts, piece by piece, into any scheme Congress may devise." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 653–54 (4th Cir. 2019); *see also Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) (reaffirming *Krakauer* after *TransUnion*). In other words, plaintiffs are not required to prove harm that would support a common-law cause of action to establish standing. Rather, the "inquiry is focused on *types of harms* protected at common law, *not the precise point at which those harms become actionable.*" *Krakauer*, 925 F.3d at 653-54 (emphasis added).

1.    *Freeman introduced evidence of harm analogous to that caused by defamation or false light.*

As Freeman explained in her opening brief, evidence that Ocwen disseminated false information about her was sufficient proof that she suffered an Article III injury in fact–an injury akin to that suffered by plaintiffs in common law defamation and false light cases. In response, Ocwen does not defend the district court's assertion that Freeman offered only a "conclusory" comparison to common law claims without evidence. Nor could it. Ms. Freeman submitted evidence that "[o]n February 24, 2018, Quicken Loans obtained Freeman's credit file from TransUnion, LLC. See TU-000101 and TU-000119 [Filing No. 336-35]. It contained Ocwen's inaccurate reporting," and "[o]n May 12, 2018, Chase Card obtained Freeman's credit file from Trans Union, LLC. See TU-000101 and TU-000105 [Filing No. 336-35]." Pl.'s Resp. in Opp. Def.'s Mot. Summ. J., (ECF No. 365 at 22 ¶¶ 6, 8. Undeterred, Ocwen argues summary judgment was appropriate because "Freeman does not have any proof that her credit report was ever obtained by [potential creditors] and never produced any documents showing a denial of a credit application following a

third party receiving her credit report." Appellee's Br. 45 (ECF No. 21). This argument ignores the teaching of *TransUnion*, as shown by *Ewing v. MED-1 Sols., LLC*, 24 F.4[th] 1146, 1153-54 (7th Cir. 2022).

In *Ewing*, the defendants violated 15 U.S.C. § 1692e(8) by reporting as undisputed debts that the plaintiffs had, in fact, disputed. *Id.* at 1149. Like Ocwen, the debt collectors in *Ewing* argued there was no concrete injury because there was no evidence the credit bureau sent the inaccurate credit reports to potential creditors. However, the court declared this argument to be a "red herring." *Id.* at 1152-53. The common-law analogue to the harm Congress sought to remedy through 15 U.S.C. § 1692e(8) is defamation. *Id.* at 1153. The court stated: "If the Consumers' harm is analogous to defamation, then they must demonstrate that the Debt Collectors disseminated false information about them to a third party. *The Consumers do not have to make a further showing that the third party also shared that false information.*" *Id.* (emphasis added).

Although Ms. Freeman discussed *Ewing* in her opening brief, Ocwen has no answer for it, and the case clearly rejects Ocwen's argument that plaintiffs must demonstrate "fourth-party publication, which *TransUnion* does not require." *Id.* In fact, Ocwen goes farther than the *Ewing* debt collectors and argues Freeman is obligated to produce proof not just of fourth-party publication, but of a denial based on a fourth-party publication. *Contra. Santos v. Healthcare Revenue Recovery Grp., LLC*, 85 F.4th 1351, 1358 (11th Cir. 2023) ("The consumer need not prove "that the false reporting caused his credit score to plummet; the false reporting itself [i]s the injury."). Ocwen makes essentially the same flawed argument about the necessity of a fourth-party publication with respect to its false statements in the Second Foreclosure filings. *See* Appellee's Br. 47 (ECF No. 21).

As in *Ewing*, the statutory violation in this case is clear: Ocwen reported to credit bureaus and made representations in connection with the Second Foreclosure Case that Freeman's loan was delinquent with a large past-due balance when Ocwen knew or should have known that information to be false. *See* 15 U.S.C. § 1692e(8). Freeman cited evidence of Ocwen's false statements in opposition to the summary judgment motion and, as noted above, that two creditors or potential creditors obtained reports from TransUnion. *See* Pl.'s Resp. in Opp. Def.'s Mot. Summ. J. (ECF No. 365 at 22-24, 41-42, 46-47); *see also* Ex. W to App. to Pl.'s Resp. in Opp. Def.'s Mot. Summ. J. (ECF No. 336-23 at ¶ 30, ¶ 32-33) (regarding Freeman's disputes to Ocwen's reporting and Ocwen's disregard thereof). Ocwen also made numerous false and disparaging statements in its foreclosure related pleadings, including that Freeman was in default and had abandoned her home in the bankruptcy case. *See* Pl.'s Resp. in Opp. Def.'s Mot. Summ. J. (ECF No. 365 at 22 ¶ 5, 24 ¶ 12); Ex. W to App. to Pl.'s Resp. in Opp. Def.'s Mot. Summ. J. (ECF No. 336-23 ¶¶ 90-91, 93); Ex. KK to App. to Pl.'s Resp. in Opp. Def.'s Mot. Summ. J. (ECF No. 336-37); Ex. L to Pl.'s Second Am. Compl. (ECF No. 84-12). The evidence Freeman submitted more than satisfies the standard enunciated in *Ewing*. This is not a mere technical violation of the statute. Ocwen reported Freeman's loan as severely delinquent when it was not. This is precisely the type of harm the FDCPA was enacted to address.

2.  *Freeman introduced evidence of harm analogous to that caused by invasion of privacy or intrusion upon seclusion.*

Ocwen contends Ms. Freeman did not designate admissible evidence of harm akin to a common-law claim for invasion of privacy or intrusion upon seclusion and implies that the only way she can demonstrate sufficient injury is to produce specific evidence of activities Ocwen interrupted. For instance, citing no authority for its position, Ocwen claims Ms. Freeman falls short of establishing

standing because she "does not point to evidence demonstrating that she heard anyone knock on her door or otherwise encountered someone visiting her home" and that "[e]ven if she had, such innocuous activity would not confer Article III standing . . . ." Appellee's Br. 48-49 (ECF No. 21). Similarly, Ocwen complains that with respect to its many telephone calls, "Freeman does not point to any evidence that the calls caused her any specific harm akin to an invasion of privacy or intrusion upon seclusion such as hearing a phone ring or interrupting some activity she was engaged in." Appellee's Br. 48 (ECF No. 21). As with the harm related to defamation or false light, Ocwen is asking the court to impose a higher evidentiary burden on Freeman than the law permits. Nothing in the case law demands such a showing and to require it would plainly contravene *Gadelhak*.

In *Gadelhak*, this court found standing was established based on less intrusive activities than Ocwen's (*see* Appellant's Br. 17-18 (ECF No. 15)) with no showing of the details to which Ocwen alludes. The court stated: "A few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same *kind* of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable." *Id.* at 463 (emphasis in original) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)).

Sitting en banc in *Drazen v. Pinto*, the Eleventh Circuit elaborated on this principle, stating that "[t]o find the sweet spot between similar yet not identical," the question is "whether the harms share 'a close relationship in kind, not degree.'" 74 F.4th 1336, 1343-44 (11th Cir. 2023) (quoting *Gadelhak*, 950 F.3d at 462) (internal quotation marks omitted). "Following this approach," the court noted, "seven of our sister Circuits have declined to consider the *degree* of offensiveness required to state a claim for intrusion upon seclusion at common law. Instead, they have held that receiving either one or two unwanted texts or phone calls resembles the *kind* of harm associated with intrusion upon seclusion." *Id.* at 1344 (emphasis in original). Inquiry into the degree of harm is thus

inappropriate if the elements of the "comparator tort" are present, and the court held that the harm associated with a single unwanted text message is sufficient to confer standing. *Id.* at 1345.

The court should decline Ocwen's invitation to inquire into the degree of harm.

3.   *Harm analogous to abuse of process can confer standing.*

Ocwen fares no better in challenging as insufficient the injuries that Ms. Freeman sustained from its meritless state-court litigation. According to Ocwen, *Choice v. Kohn Law Firm, S.C.*, 77 F.4th 636 (7th Cir. 2023), firmly created a circuit split with the Eighth Circuit and held that a plaintiff who is the subject of frivolous state-court action never has standing to bring an FDCPA claim for the injuries from that litigation even though the FDCPA was enacted precisely to provide a remedy for that type of injury. *Choice* does not support that far-reaching claim. In *Choice*, the plaintiff alleged the defendant law firm violated the FDCPA by making contradictory statements about the availability of statutory attorney fees in a state-court collection complaint, which purportedly led the plaintiff to hire counsel and pay an appearance fee to defend the action rather than try to settle the debt. Noting that "confusion leading one to hire a lawyer is insufficient to establish standing," the court concluded there is "no material distinction between hiring a lawyer and paying an appearance fee for purposes of Article III standing." *Id.* at 639 (citing *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) and *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1069 (7th Cir. 2020)). *Choice*, in other words, merely reiterates that a consumer's actions taken due to confusion do not establish standing.

Ms. Freeman, in contrast, did not hire counsel due to confusion about representations contained in the foreclosure complaint. She hired counsel because the second foreclosure action was wholly inappropriate, and she had to defend it to keep her home—the very type of wrongful

conduct the FDCPA was designed to provide redress for. *See, e.g., Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691 (8th Cir. 2017) ("With § 1692f(1), Congress identified a harm—being subjected to attempts to collect debts not owed"). This distinction is critical: the majority in *Choice* rejected the dissent's analogy "to a common-law tort claim, like malicious prosecution or abuse of process," because the plaintiff had "not allege[d] an FDCPA claim based on the underlying debt." *Id.* Thus, in the majority's view, Judge Hamilton's characterization of "[h]iring a lawyer to defend yourself in state court in an action where the debt collector violated the FDCPA" as distinguishable "from consulting a lawyer to clear up your own confusion or to file your own lawsuit" was not implicated in *Choice*. *Id.* at 641 (Hamilton, J., dissenting).

But that distinction is implicated in this case. In *Choice*, the plaintiff's complaint about the underlying collection action was that the collection agency's pleading contained contradictory assertions about the availability of statutory attorney's fees. The plaintiff did not allege that the action itself was an abuse of process or a violation of the FDCPA. The opposite is true here.[6] Freeman hired counsel to defend against a lawsuit that plainly violated the FDCPA and that Ocwen had no right to pursue.

---

[6] *See, e.g.*, Pl.'s Resp. in Opp. Def.'s Mot. Summ. J. (ECF No. 365 at 40-42). Additionally, Ocwen's second foreclosure action violated 15 U.S.C.A. § 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," including: "(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." As the Eighth Circuit has noted, the harm addressed in §1692f(1) "is similar to the harm suffered by victims of the common-law torts of malicious prosecution, wrongful use of civil proceedings, and abuse of process." *Demarais*, 869 F.3d at 691.

**B. The Operative Complaint Alleges Injury Akin to the Common Law Torts of Defamation or False Light, Invasion of Privacy or Intrusion Upon Seclusion, and Abuse of Process.**

According to Ocwen, "Freeman's arguments that she suffered injury akin to common-law torts for (i) defamation and false light, and (ii) invasion of privacy and intrusion upon seclusion do not appear in her original Complaint or any of her subsequent amendments." Appellee's Br. 41 (ECF No. 21).[7] This is simply false. The operative Complaint sufficiently alleges injuries akin to the common law torts of defamation or false light, invasion of privacy or intrusion upon seclusion, and abuse of process. As discussed below, the law does not require Ms. Freeman to identify those analogous common-law torts by name.

With respect to defamation or false light, the operative Complaint includes the following general allegations:

> 216. In addition, Ocwen because of the false information it provided to the [sic] New York Mellon, which in turn used that information as a basis for initiating foreclosure proceedings, has created an adverse public record – a scarlet letter if you will – that can never be removed. . . .

> 222. On information and belief, Ocwen has improperly and incorrectly reported to various CRAs that the Loan was and/or is "90-119 Days Late."

> 223. This reporting was disputed by Freeman on several occasions, but no correction is known to have been made in response.

> 224. This false and misleading reporting has resulted in the unlawful suppression of Freeman's credit rating, a diminishment of the credit available to her, and an increase in costs of insurance.

AA096-97; *see also* AA100 ¶ 237 (alleging that New York Mellon, as Ocwen's agent, breached its contract by placing the loan in default and inaccurately reporting its status to credit bureaus). Freeman also alleged, as part of her FDCPA claim, that she "has been harmed by, and continues to

---

[7] Ocwen apparently concedes Freeman alleged harm related to abuse of process or malicious prosecution.

suffer from harm resulting from the unfair and deceptive practices of Ocwen in wrongfully breaching the Loan and in making misrepresentations to further effectuate their wrongdoing." AA104 ¶ 259.

With respect to intrusion upon seclusion, Ms. Freeman alleged that Ocwen "made calls using an ATDS and/or Robocalls to Freeman's cellular telephone even though she did not provide express prior consent to receive such calls, or Freeman revoked any alleged consent thereafter." AA071 ¶ 40. Freeman also alleged that Ocwen made multiple non-consensual phone calls to Freeman. AA113 ¶¶ 309-12. Finally, Freeman alleged that she "only wanted to pay what she is obligated to pay and live her life without fear of losing [her home] to foreclosure" and suffered "great emotional distress driven by the fear that she might lose and be forced to leave her Home." AA096 ¶¶ 211, 214.

Unable to dispute that these allegations of harm analogous to that caused by defamation and privacy related torts have always been in the case, Ocwen takes issue with where precisely in the complaint they appeared and contends that the complaint did not sufficiently expressly tie Ms. Freeman's injuries to the legal theories they support. But, as this Court has noted, it is "long past the point when the label attached to a group of allegations in a complaint displaces the content." *Smith*, 5 F.4th at 705. Indeed, "[f]actual allegations alone are what matters." *Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2d Cir. 1988) (rejecting argument that plaintiff is required to cite correct statute or any statute at all); *see also Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (Federal Rules of Civil Procedure do not require complaint to specify statute that supports claim for relief). Thus, "it is manifestly inappropriate for a district court to demand" that a plaintiff set out each "legal element[]" one by one with "facts corresponding to each." *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017). Yet that is exactly what Ocwen asks for here.

*Whitaker v. Milwaukee Cty., Wis.*, 772 F.3d 802, 808 (7th Cir. 2014), also emphasizes that "it is factual allegations, not legal theories, that must be pleaded in a complaint." *Id.* (citing *In Del*

*Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc)). Although a plaintiff may not introduce "new and drastic factual allegations" on summary judgment, there is no "unfair surprise" in the offering of "an alternative legal characterization" of facts pleaded in the complaint. *Id.* at 808–09. In other words, when a complaint presents legal theories, "those theories may later be altered or refined." *Zall v. Standard Ins. Co.*, 58 F.4th 284, 295 (7th Cir. 2023) (citing *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017)); *accord CMFG Life Insurance Co. v. RBS Securities, Inc.*, 799 F.3d 729, 743–44 (7th Cir. 2015) (refining a legal theory at the summary judgment stage based on evidence adduced in the case is not an improper attempt to amend the pleadings).

Ocwen's contrary view rests primarily on *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1044 (7ᵗʰ Cir. 2021), but Ocwen misreads the case. In *Pennell*, the plaintiff's complaint alleged injuries based on stress and confusion, but on appeal, she argued that a letter sent to her home "invaded her privacy." *Id.* at 1045. This Court found that argument insufficient because, "[w]hen courts analyze standing [in reviewing a motion to dismiss], allegations matter," so she could not "insert[] a new injury" through her briefing. *Id.* In other words, the complaint, itself, contained insufficient allegations to support an invasion of privacy theory. But *Pennell* did not hold, as Ocwen claims, that the plaintiff simply had to articulate an invasion-of-privacy legal theory in the complaint–a holding that would be contrary to the rule, which *Pennell* itself reaffirmed, that factual allegations, not any legal theory articulated in the complaint, are what determine standing. Here, the facts pleaded in the operative complaint amply describe the types of harm associated with the torts of defamation or false light, invasion of privacy or intrusion upon seclusion, and abuse of process.

### C. Freeman submitted evidence of concrete tangible harm.

Ms. Freeman suffered concrete tangible harm in the form of attorney's fees incurred to defend against Ocwen's wrongful foreclosure action. For standing purposes, attorney fees incurred

in a separate proceeding constitute concrete tangible harm that has already materialized. *Hurst v. Caliber Home Loans, Inc.,* 44 F.4th 418, 423 (6th Cir. 2022); *Loewe v. Weltman, Weinberg & Reis Co., L.P.A.,* No. 19-12187, 2020 WL 409655, at *4 (E.D. Mich. Jan. 24, 2020) (legal costs incurred by the plaintiff to contest an allegedly invalid debt constituted "actual" and "real" injuries). Ocwen's contention to the contrary is, again, based on an indefensibly expansive interpretation of *Choice* and *Pierre.* As discussed above, *Choice* reiterates that a consumer's actions taken due to confusion do not establish standing. It does not hold that hiring a lawyer to defend an abusive lawsuit cannot confer standing. *Choice,* 77 F.4th at 639. Likewise, *Pierre,* on which Ocwen vaguely relies, also holds that consulting counsel to clear up confusion about a debt collector's letter or to file a lawsuit on the debtor's behalf does not create standing. 29 F.4th at 939. Neither of those situations is at issue in this case.

Ocwen also argues that the Court should treat the fee references in Ms. Freeman's Declaration as if they had been excluded pursuant to its motion in limine regarding the statement of attorney's fees. However, they were not stricken. Ocwen did not even ask the district court to strike them, although it did move to strike some thirty-five other paragraphs of the Declaration, a request that the district court denied. Mot. to Strike (ECF No. 354); Ord. on Mot. to Strike (ECF No. 472). Thus, they remain part of the record for purposes of summary judgment.

## CONCLUSION

For the foregoing reasons, this Court should (1) reverse the order dismissing Ms. Freeman's FCRA claim or, in the alternative, reverse the order with instructions to grant leave to amend the Complaint and (2) reverse the order granting summary judgment.

Respectfully submitted,

*/s/ Travis W. Cohron*
Travis W. Cohron, No. 29562-30
**CLARK, QUINN, MOSES, SCOTT, & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
(317) 637-1321
tcohron@clarkquinnlaw.com
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because it contains 5829 words, excluding the parts exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 12-point Baskerville font.

*/s/ Travis W. Cohron*
Travis W. Cohron, No. 29562-30
**CLARK, QUINN, MOSES, SCOTT, & GRAHN, LLP**
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2023, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: December 6, 2023

/s/ Travis W. Cohron
Travis W. Cohron, No. 29562-30
CLARK, QUINN, MOSES, SCOTT, & GRAHN, LLP
*Counsel for Plaintiff-Appellant*