In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-2512

DEMONA FREEMAN,

*Plaintiff-Appellant*,

*v.*

OCWEN LOAN SERVICING, LLC,
and BANK OF NEW YORK MELLON,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cv-03844 — **Tanya Walton Pratt**, *Chief Judge*.

ARGUED FEBRUARY 5, 2024 — DECIDED JULY 12, 2024

Before ROVNER, BRENNAN, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. To finance the purchase of her home, Demona Freeman secured a loan, which was assigned to the Bank of New York Mellon (BNY Mellon). She fell behind on her mortgage payments, and BNY Mellon filed a foreclosure action against her. Freeman then filed for bankruptcy. She later completed all payments required under her bankruptcy plan and cured the pre-petition mortgage default. Despite

these payments, Ocwen Loan Servicing, LLC, the servicer of the loan, inaccurately reported the loan as delinquent and began rejecting Freeman's monthly payments (demanding instead that she cure the default). Because of Ocwen's erroneous reporting that Freeman defaulted on her loan, BNY Mellon brought a second foreclosure action against her but eventually agreed to voluntarily dismiss it. Freeman subsequently sued, alleging violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 et seq., and the Fair Debt Collection Practices Act (FDCPA), *id.* §§ 1692 et seq. The district court dismissed the FCRA claim and entered summary judgment on the FDCPA claim. Because Freeman failed to state an FCRA claim and lacks standing to bring an FDCPA claim, we affirm.

I

Demona Freeman purchased a home. To finance the purchase, she secured a loan, which was assigned to the Bank of New York Mellon and serviced by Ocwen Loan Servicing, LLC. BNY Mellon filed a foreclosure action against Freeman after she fell behind on her mortgage payments. Freeman then filed for bankruptcy. She eventually made the necessary payments to obtain an order of discharge in the bankruptcy.

However, Ocwen's records reflected an inaccurate loan payment due date. As a result, the loan erroneously appeared delinquent, and Ocwen considered Freeman in default on her loan. Ocwen told her that because of the loan's default status, it would only accept a payment that would cure the default, not a regular monthly payment. And because Ocwen erroneously determined that Freeman defaulted on her loan, BNY Mellon filed a second foreclosure action against her, which it

No. 23-2512 3

later voluntarily dismissed after investigations and corresponding corrections to the loan.

While Freeman was considered in default on her loan, she sent various correspondence to Ocwen, stating that it had committed errors in servicing her loan. As part of its collection practices, Ocwen called Freeman over 12 times in a month. It also sent agents to Freeman's home to conduct door knocks and leave tags on her door about once a week for nearly three years. She later sued Ocwen, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k. (She also sued BNY Mellon, but on appeal, she does not dispute the district court's disposition of her claims against it.) Freeman amended her complaint twice, but the court denied her third request to amend because the deadline for amendment had passed, and she had not shown good cause. Ocwen moved to dismiss, and the court granted the motion as to Freeman's FCRA claim. Ocwen subsequently moved for summary judgment on Freeman's FDCPA claim, which the court granted for lack of standing. Freeman appealed both rulings.

On appeal, she contends that Ocwen violated the FCRA by failing to conduct a reasonable investigation after being notified by consumer reporting agencies (CRAs) that she disputed Ocwen's reporting of her loan as delinquent. Freeman also asserts that Ocwen violated the FDCPA, arguing that Ocwen's erroneous reporting and collection practices caused her to suffer various injuries. We take these arguments in turn.

## II

### A

We first address Freeman's FCRA claim. We review de novo a district court's dismissal for failure to state a claim, "accepting as true all well-pleaded facts and drawing reasonable inferences in [Freeman's] favor." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021) (quotation omitted). Freeman must allege "only enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under the FCRA, if a consumer notifies a CRA of a dispute over the completeness or accuracy of information in her file, the CRA must notify the furnisher of the information about the dispute, and the furnisher must take several measures in response. 15 U.S.C. § 1681i(a)(2), s-2(b). The furnisher must investigate, report the investigation's results to the CRA, and take certain steps if the investigation finds the information incomplete or inaccurate. *Id.* § 1681s-2(b).

The district court did not err in dismissing Freeman's FCRA claim. Freeman alleged in her amended complaint that Ocwen incorrectly reported to various CRAs that her loan was delinquent. She also alleged that Ocwen violated the FCRA by failing to conduct a reasonable investigation upon receiving notice from "one or more consumer reporting agencies" that she disputed Ocwen's reporting of her loan as delinquent. This second allegation implies that Freeman notified "one or more" CRAs of her dispute. But even if this allegation

were sufficient to allege that Freeman notified CRA(s) of her dispute, she failed to allege which CRA(s) she notified. Such barebones allegations cannot sustain her claim.

Her failure to identify the CRA(s) she notified does not give Ocwen "fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up). "The notice [of a dispute] required in order to trigger the furnisher's duties under the statute does not come from 'any' consumer reporting agency or 'an' agency, but, rather, must come from 'the' … consumer reporting agency that received notice of a dispute from any consumer." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011) (cleaned up). The FCRA requires that Ocwen, in response to a particular CRA's notification of a dispute, investigate and report the results to that CRA. 15 U.S.C. § 1681s-2(b). Ocwen cannot effectively respond to a claim that it failed to comply with these obligations if it does not know which CRA's dispute notification it needed to respond to with an investigation. Thus, to survive a motion to dismiss, Freeman needed to allege which CRA(s) she notified, but she failed to do so.

At argument, Freeman's counsel stated that she notified Equifax and that Equifax, in turn, notified Ocwen of the dispute. In doing so, counsel referenced a particular exhibit. However, this exhibit does not save Freeman's FCRA claim from its pleading deficiencies: she first provided the exhibit at summary judgment, after the court dismissed the FCRA claim. Freeman also points to an exhibit attached to her complaint—a letter from Ocwen's counsel that she says included copies of the disputes transmitted by the CRAs to Ocwen. But the exhibit only contains a short letter from Ocwen's counsel, not copies of the disputes or any reference to a specific CRA.

Further, Freeman argues that our unpublished decision in *Lang v. TCF National Bank*, 249 F. App'x 464 (7th Cir. 2007), supports her claim, but *Lang* is inapposite. Lang alleged that he notified a CRA that he disputed the accuracy of the credit information in his file. *Id.* at 465. We explained that he did not also need to allege that the CRA notified the furnisher of the information because "[t]he FCRA does not require a CRA to tell a *consumer* when it notifies a *furnisher of information* about the consumer's dispute." *Id.* at 466 (emphasis in original). "As a result a consumer may not, at the time of filing a complaint, be in a position to allege that notification." *Id.* Crucially, Lang named the specific CRA that he notified in his amended complaint. By contrast, Freeman only vaguely alleged that "one or more" CRAs knew of her dispute. A plaintiff must allege that she notified a CRA and identify the CRA she notified. Because Freeman failed to identify the CRA(s) she notified in her complaint, the district court did not err in dismissing Freeman's FCRA claim.

B

Freeman argues that the district court abused its discretion in denying her leave to amend to cure deficiencies in her FCRA claim. "We review a district court's denial of leave to amend for abuse of discretion and reverse only if no reasonable person could agree with that decision." *Huon v. Denton*, 841 F.3d 733, 745 (7th Cir. 2016) (quotation omitted). Further, when a plaintiff moves for leave to amend after the deadline for amendment has passed, the court may apply "the heightened good-cause standard of [Federal Rule of Civil Procedure] 16(b)(4)," *Adams v. City of Indianapolis*, 742 F.3d 720, 733–34 (7th Cir. 2014) (quotation omitted), before considering

whether "justice so requires" leave to amend under Rule 15(a)(2).

The district court did not abuse its discretion in denying Freeman leave to amend her complaint for a third time. The court noted that it had already given her two opportunities to amend her complaint. And it explained that it denied her third request to amend because the deadline for amendment had passed, and she did not meet Rule 16(b)(4)'s good cause standard. Freeman insists that when she made the two prior amendments, she did not have reason to believe the FCRA claim was deficient. She observes that the deadline for amendment expired months before Ocwen filed its motion to dismiss. But that a plaintiff "had no reason to know that his complaint was deficient until the defendant[] filed [its] motions to dismiss" does not establish good cause, as "a party should always ask itself whether the complaint it wants to file sets out a viable claim." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). The district court did not abuse its discretion in denying Freeman leave to amend.

### III

We now turn to Freeman's FDCPA claim. To bring a claim in federal court, a plaintiff must have Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422–23 (2021). That is, a plaintiff must show that she suffered a concrete injury in fact that was likely caused by the defendant and redressable by judicial relief. *Id.* at 423. "[T]raditional tangible harms," including physical and monetary harms, "readily qualify as concrete injuries." *Id.* at 425. An intangible harm may be concrete if it has "a close relationship to [a] harm[] traditionally recognized as providing a basis for lawsuits in American courts." *Id.* In other words, an intangible injury may be

concrete if it has a close historical or common law analogue. *Id.* at 424. The allegations in the complaint must set out her theory of injury, though they need not identify the precise common law analogue for the injury. See *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 640 (7th Cir. 2023). Then, at summary judgment, she must "supply evidence of specific facts that, taken as true, show each element of standing," and "we must look to evidence in the record to evaluate whether [the plaintiff] has suffered an injury in fact." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 667 (7th Cir. 2021) (cleaned up).

Freeman asserts that she suffered concrete injuries in fact that support standing: a tangible injury—monetary harm—and intangible injuries. She identifies several common law analogues for her intangible injuries: defamation, false light, invasion of privacy, intrusion upon seclusion, and abuse of process. But on this record, none of these harms suffices for standing, so the district court properly dismissed her FDCPA claim.

A

As to monetary harm, Freeman asserts that she suffered the concrete injury of incurring legal fees to defend against the second foreclosure. Seeking legal advice in response to a communication concerning a disputed debt does not amount to an injury in fact. *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022). Similarly, hiring a lawyer to resolve confusion about the proper course of action is also insufficient to confer standing. *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1069 (7th Cir. 2020).

But even if hiring an attorney and litigating the second foreclosure action is an injury sufficient for standing, see

*Choice v. Kohn Law Firm, S.C.*, 77 F.4th 636, 639 (7th Cir. 2023), Freeman's argument fails as a matter of proof. The court excluded all evidence that could show she was monetarily harmed. Freeman concedes that the court excluded a document itemizing the attorney's fees she incurred in the foreclosure action. It excluded that document because it found that during discovery, Freeman never disclosed the precise fee amount indicated on the document but rather disclosed a lower fee amount. Ocwen was consequently prejudiced because it could not conduct any discovery related to the document.

Freeman contends that the exclusion does not extend to her declaration statement concerning the same fee amount indicated on the itemized document. But she made the declaration statement after discovery, presenting the same prejudice problem as did the excluded itemized document. And she cited the declaration statement in her response in opposition to Ocwen's motion for summary judgment, yet the court concluded at summary judgment that it excluded all evidence that she was concretely injured by incurring attorney's fees. The court thus excluded the declaration statement, and Freeman cannot show monetary harm to support standing for her FDCPA claim.

B

Freeman's common law analogues for the intangible injuries she suffered are also unavailing. First, she argues that she suffered reputational harm akin to defamation. She states that Ocwen's dissemination of inaccurate credit reporting damaged her credit, may have caused her to be denied credit, and discouraged her from seeking credit opportunities out of fear of embarrassment. Freeman says that the Supreme Court's

decision in *TransUnion*, 594 U.S. 413, and our decision in *Ewing v. Med-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir. 2022), support her analogy to defamation. In *TransUnion*, class members were listed in their credit reports as a "potential match" to a name on a list of terrorists, drug traffickers, and other criminals. 594 U.S. at 419–20. TransUnion disseminated these credit reports to third parties; this publication of the misleading credit reports to the third parties caused the class members to suffer an injury closely related to the reputational harm associated with defamation, making the injury sufficiently concrete for standing. *Id.* at 432–33.

But in *Ewing*, we made clear that to establish the publication element of a defamation analogue, "the third party must understand the defamatory nature of the communication." 24 F.4th at 1154. In that case, we concluded that the third party understood the defamatory nature of the communication (debt collectors' reports) because the third party included the debts in the plaintiffs' credit reports, and its assessment of the plaintiffs' creditworthiness considered whether a debt was disputed. *Id.* By contrast, Freeman provides no evidence that a third party understood the defamatory significance of Ocwen's communication. The record indicates that Quicken Loans and Chase Card requested her credit report from TransUnion and that those reports contained Ocwen's inaccurate reporting. The record also contains Freeman's declaration statement that OneMain denied her a loan and her husband's statement that her credit "is messed up because of this whole situation." R. 336-25 at 15:2–3. But none of this evidence amounts to specific facts establishing that Ocwen disseminated the inaccurate reporting to a third party, such as TransUnion, who understood the defamatory significance of the inaccurate reporting. It instead merely shows that

TransUnion included Ocwen's inaccurate reporting in its own credit reports, indicating nothing about TransUnion's or another third party's assessment of her creditworthiness. Further, her statement that OneMain, a fourth party, denied her a loan is not enough. Nor is her husband's vague statement about damage to her credit, referencing no particular third party. This defamation analogue therefore fails.

Freeman's other defamation analogue and her false light analogue fail, too. She argues that Ocwen's foreclosure filings, which falsely communicated to the public that she was in default on her loan, caused an injury closely related to defamation and false light, though her analysis analogizes only to false light. She alleged that Ocwen created an "adverse public record" and that for the rest of her life, she will have to "endure that Foreclosure record and engage in painful and embarrassing discussions and explanations as to why that record exists." R. 59 at 32 ¶¶ 216–17. But we have made clear in our FDCPA case law that anxiety, embarrassment, and stress are not concrete injuries in fact. *Wadsworth*, 12 F.4th at 668. Further, an element of false light is that the tortfeasor "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second) of Torts § 625E(b) (1977). But Freeman does not assert that Ocwen had knowledge of or acted in reckless disregard as to the falsity of the foreclosure action and the false light in which she would be placed. She therefore lacks standing for an FDCPA claim for embarrassment stemming from the foreclosure filings.

Next, Freeman argues that she has standing to pursue an FDCPA claim for Ocwen's phone calls and "door knocks," which she asserts caused an intangible injury closely related

to invasion of privacy or intrusion upon seclusion. But this injury is insufficient for standing. She says that Ocwen called her 12 times in a month and completed numerous door knocks, causing her to live in fear of losing her home. As Freeman notes, we stated in *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020), a Telephone Consumer Protection Act case, that annoyance caused by unwanted text messages can be analogous to invasion of privacy, such as when the texts are sent "with such persistence and frequency as to amount to a course of hounding the plaintiff." *Id.* at 462 (quotation omitted). But we subsequently stated in *Wadsworth* that "it is not enough for a plaintiff to be 'annoyed' or 'intimidated' by a[n] [FDCPA] violation." 12 F.4th at 668. And "stress by itself with no physical manifestations and no qualified medical diagnosis [does not] amount to a concrete harm." *Pennell v. Global Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021). Freeman does not contest the district court's exclusion of her medical records, nor does she argue on appeal that she suffered physical symptoms of her fear or received any related medical diagnosis. She is thus left without any admissible evidence supporting invasion of privacy or intrusion upon seclusion as an analogue for the fear she suffered, and her fear alone cannot carry her FDCPA claim. *Pierre*, 29 F.4th at 939 ("[W]orry, like confusion, is insufficient to confer standing in [the FDCPA] context.").

Finally, Freeman argues that she suffered psychological pressures from defending against the foreclosure and that this injury is akin to abuse of process. But she lacks standing to bring a claim for this injury for the same reason she lacks standing to bring a claim for fear: she points to no physical manifestation of the pressures or any related medical diagnosis, and psychological harm, standing alone, cannot amount

to an Article III injury in fact. *Pennell*, 990 F.3d at 1045. Because Freeman cannot establish under any of her theories that she suffered a concrete injury, the district court properly dismissed her FDCPA claim for lack of standing.

AFFIRMED