No. 23-2512

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| Demona Freeman, | ) |
| | ) |
| *Plaintiff-Appellant,* | ) |
| | ) |
| v. | ) |
| | ) |
| Ocwen Loan Servicing, LLC., and | ) |
| The Bank of New York Mellon f/k/a | ) |
| The Bank of New York  as successor in | ) |
| interest to JPMorgan Chase Bank, N.A., as Trustee | ) |
| for C-BASS Mortgage Loan Asset-Backed | ) |
| Certificates, Series, 2005-RPI, | ) |
| | ) |
| *Defendants-Appellees.* | ) |

Appeal from the United States District Court
for the Southern District of Indiana
Case. No. 1:18-cv-03844-TWP-MKK
The Honorable Judge Tonya Walton Pratt

### Petition for Rehearing and Rehearing *En Banc*

Travis W. Cohron
Clark, Quinn, Moses, Scott & Grahn, LLP
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
(317) 637-1321
tcohron@clarkquinnlaw.com
*Counsel for Plaintiff-Appellant*

# Table of Contents

Table of Authorities ................................................................................ 3

Appearance & Circuit Rule 26.1 Disclosure Statement ............................... 4

Rule 35(b)(1) Statement ........................................................................ 5

Background ......................................................................................... 7

Argument ........................................................................................... 8

    I.    Rehearing is warranted because the Panel overlooked or
misapprehended facts in reaching its determination. ........................... 8

        a.  The Panel misinterpreted or overlooked the contents of Ms.
Freeman's  Second Amended Complaint. ......................................... 8

    II.    The Panel's holding is in conflict with Supreme Court precedent, this
Court's precedent, and the decisions of other Circuits. ......................... 9

        a.  The Supreme Court's guidance in Ramirez compels a finding that
Plaintiff-Appellant has standing. ..................................................... 9

        b.  This Court's holding in Ewing compels a finding that Plaintiff-
Appellant has standing. ................................................................. 14

Conclusion ........................................................................................ 19

Certificate of Compliance ................................................................... 20

Circuit Rule 30(d) Statement ............................................................... 21

Certificate of Service .......................................................................... 22

# Table of Authorities

## Cases

*Carey v. James S. Farrin, P.C.*, 35 F.4th 917 (4th Cir. 2022)................................... 13

*Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636 (7th Cir. 2023)........................................ 5

*Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020)................................... 5, 12

*Erickson v. Pardus*, 551 U.S. 89 (2007) ....................................................................... 8

*Evans v. Portfolio Recovery Assocs.*, 889 F.3d 337 (7th Cir. 2018) .......................... 12

*Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir. 2022).... 5, 6, 11, 14, 15, 16, 17, 18

*Freeman*, 2024 WL 3381718 ....................................................................................... 15

*Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020) .................................. 13

*Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) ....................................... 13

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ............................ 13

*Lupia v. Medicredit, Inc.*, 8 F.4th 1184 (10th Cir. 2021) .......................................... 13

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816 (5th Cir. 2022)...... 13

*Santos v. Healthcare Revenue Recovery Grp., LLC*, 90 F.4th 1144 (11th Cir. 2023) ................................................................................................................................. 13

*Saunders v. Branch Bank & Tr. Co.*, 526 F.3d 142 (4th Cir. 2008) ........................... 8

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)..................................................... 13, 14

*Susinno v. Work Out World Inc.*, 862 F.3d 346 (3rd Cir. 2017).................................. 13

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)..... 5, 6, 9, 10, 11, 12, 14, 15, 16, 17

*Warth v. Seldin*, 422 U.S. 490 (1975)........................................................................ 13

## Statutes

15 U.S.C. § 1681e(b).............................................................................................. 12, 17

15 U.S.C. § 1692e(8)..................................................................................................... 14

## Rules

Fed. R. App. P. 35(b)(1)(A)............................................................................................ 6

Fed. R. Civ. P. 10(c) ....................................................................................................... 9

## Appearance & Circuit Rule 26.1 Disclosure Statement

Plaintiff-Appellant is an individual that has no corporate parent and does not issue stock.

# Rule 35(b)(1) Statement

"[A] series of decisions that this court issued beginning in late 2020" have "restrict[ed] standing under the Fair Debt Collection Practices Act to an extraordinary . . . degree." *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 640 (7th Cir. 2023) (Hamilton, J., dissenting). The panel's decision here takes that trend one step further, but one step too far: It conflicts with a prior holding of this Court and of the Supreme Court.

One way that debt collectors "incentivize the repayment of debts," is by reporting consumers' payment histories to credit-reporting agencies ("CRAs"), who, in turn, share the information with potential lenders. *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020). The failure to repay one loan thus impairs a consumer's ability to secure the next. Ocwen Loan Servicing used that cudgel here, but it did so falsely: It told CRAs that Demona Freeman was delinquent on her mortgage when she wasn't and declined to tell them that Ms. Freeman disputed that purported delinquency. When other lenders then requested Ms. Freeman's credit history, the CRAs passed Ocwen's false reporting on to them.

This petition asks the Court to review en banc whether Ms. Freeman suffered an Article III injury. In *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir. 2022), this Court held that a consumer suffers an Article III injury when a "furnisher" of credit information fails to report that a consumer disputes a debt—exactly what Ocwen did. In *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the Supreme Court held that an entire class of consumers suffered an Article III injury when a CRA

distributed false information about them in their credit reports—exactly what Ocwen's reporting caused here. Together, these cases establish that Ocwen's false reporting injured Ms. Freeman multiple times over—once when the information went to each CRA and once when it went to each potential lender—but the Panel held she suffered no injury at all because, in its view, the record has no evidence anyone "understood" the significance of the false reporting. It therefore affirmed summary judgment, dismissing her FDCPA claim.

The Panel's decision cannot be reconciled with *Ewing* or *Ramirez*. In those cases, evidence of dissemination provided sufficient evidence to establish injury. And a simple reason explains why: Companies in the business of assessing credit information understand it. This Court should therefore grant the petition for rehearing en banc under Federal Rule of Appellate Procedure 35(b)(1)(A) to resolve the conflict between the Panel's decision, on the one hand, and *Ewing* and *Ramirez,* on the other.

This petition also seeks panel rehearing because the Panel overlooked critical facts in Ms. Freeman's complaint related to her separate claim under the Fair Credit Reporting Act ("FCRA"). This Court concluded that "Ocwen [could not] effectively respond to a claim that it failed to comply with these obligations if it [did] not know which CRA's dispute notification it needed to respond to with an investigation.". Op. at 5. But the complaint included numerous copies of the disputes (automated consumer dispute verifications or "ACDV's") initiated by Ms. Freeman and received by Ocwen from the CRA's, and Ocwen therefore had "fair notice of what [her claim]

is" that the Court deemed absent. Op. at 5. The Court should correct this oversight and reinstate the FCRA claim.

<u>Background</u>

I.    Summary of Relevant Facts

In January of 2018, Ocwen began aggressively seeking to collect from Ms. Freeman funds she did not owe - amounts associated with Ocwen's own accounting errors and a manufactured state of default. This included inaccurately reporting the loan to TransUnion, a CRA, as more than 90 days past due when it was current, with a past due balance as high as $9,190, and without any indication the same reporting had been previously (and repeatedly) disputed by Ms. Freeman. *See* AA170-AA193, AA219, AA236-AA239 ¶ 32. For instance, Ocwen's inaccurate reporting continued for over a year, and, just as the credit-reporting system is designed to do, resulted in TransUnion sending the false reporting to potential lenders like Quicken Loans and Chase. *See* AA237-38.

Unsurprisingly, this had a negative effect on Ms. Freeman's credit score and, later, caused her to forego seeking credit opportunities out of fear of embarrassment. *See* AA219 ¶¶ 33-34; AA233¶¶ 2-5.  And there was no ambiguity about the reason: Ms. Freeman had no derogatory accounts other than the one Ocwen manufactured. *See* AA219 ¶¶ 33. In fact, to Ms. Freeman's knowledge, Ocwen is the only creditor who reported to the CRAs she had not paid them timely or adequately during the relevant timeframe. *See* AA219 ¶¶ 30. If Ocwen had properly handled Ms. Freeman's disputes, by including a notation in its reporting reflecting it was in dispute, TransUnion would not have included the reporting for assessment of Ms. Freeman's

credit score. *See Saunders v. Branch Bank & Tr. Co.*, 526 F.3d 142 (4th Cir. 2008) (when a furnisher reports ongoing dispute by consumer, TransUnion does not include disputed information in assessing consumer's credit score).

## Argument

I. Rehearing is warranted because the Panel overlooked or misapprehended facts in reaching its determination.

    *a. The Panel misinterpreted or overlooked the contents of Ms. Freeman's Second Amended Complaint.*

In affirming the District Court's dismissal of Ms. Freeman's FCRA claim and denial of leave to amend, the Panel concludes Plaintiff-Appellant's "failure to identify the CRA(s) she notified" did not give Ocwen "fair notice of what the claim is and the grounds upon which it rests." Op. at 5 (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up)). In support, it asserts, "Ocwen cannot effectively respond to a claim that it failed to comply with these obligations if it does not know which CRA's dispute notification it needed to respond to with an investigation." *Id.* In further support, the Panel notes "Freeman also points to an exhibit attached to her complaint—a letter from Ocwen's counsel…[but] the exhibit [does not] contain[] … copies of the disputes or any reference to a specific CRA." *Id.* These assertions suggest the Panel has either overlooked the ACDV's included within "Exhibit I" of the complaint or misapprehended what they reflect.

Within "Exhibit I" of the Second Amended Complaint ("SAC") are six (6) ACDVs initiated by Ms. Freeman and received by Ocwen: (1) from Equifax on March 7, 2017 [ECF 84-9, at 82-84]; (2) from Experian on March 21, 2017 [ECF 84-9, at 85-87]; (3) from Equifax on June 15, 2017 [ECF 84-9, at 88-90]; (4) from Equifax on

February 5, 2018 [ECF 84-9, at 91-93]; (5) from Equifax on March 13, 2018 [ECF 84-9, at 94-96]; and (6) from Experian on December 19, 2018 [ECF 84-9, at 100-101] (collectively, the "ACDVs"). *See* Fed. R. Civ. Pro. 10(c). These ACDV's identify not only the respective CRA who directed them and when, but also the date Ocwen responded to them.

Thus, contrary to the Panel's conclusion, the ACDVs, in conjunction with the allegations in the SAC, evidence that Ocwen knew exactly which CRA's dispute notifications "it needed to respond to" and had "fair notice" of the grounds upon which Ms. Freeman's claim rested. Because the Panel misapprehended this fact in reaching its determination, rehearing is warranted.

II. The Panel's holding is in conflict with Supreme Court precedent, this Court's precedent, and the decisions of other Circuits.

   a. *The Supreme Court's guidance in Ramirez compels a finding that Plaintiff-Appellant has standing.*

Review by the en banc court is justified because the Panel's opinion is in conflict with the Supreme Court's decision in *TransUnion v. Ramirez*, 594 U.S. 413 (2021). *Ramirez* concerned TransUnion's practice of falsely identifying consumers as potential matches to individuals on the Department of Treasury's OFAC List—a list of terrorists, drug traffickers, and other security threats. *Id.* at 2201. The Court was faced with two classes of affected consumers: one whose reports TransUnion had not disseminated and one whose reports TransUnion had. The first, the Court concluded, had no standing. Without dissemination, there could be no injury. *Ramirez*, 594 U.S. at 434. But the Court had "no trouble concluding" that those class members whose

reports were "disseminated to third parties suffered a concrete injury in fact under Article III." *Id.* at 414. The majority compared the misleading credit reports to the tort of defamation. In doing so, the Court explained: "In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as a basis for a lawsuit in American courts, *we do not require an exact duplicate.*" *Id.* at 433 (emphasis added).

At trial, Ramirez testified that he was denied credit by a Nissan dealership because of the report containing the OFAC information that the dealership received from TransUnion. *Id.* at 421. However, there was no evidence that any other member of the prevailing subclass was denied credit based on the misleading reports and no evidence from any third party, apart from Ramirez's experience with the car dealership, that it understood the false reporting's "defamatory significance." Nevertheless, all class members with disseminated reports had standing. *Id.* at 433.

*Ramirez*'s holding squarely governs this case. The key facts are the same: As TransUnion did with respect to the prevailing subclass, Ocwen disseminated false or misleading information about Freeman to a third party, which in this case, was TransUnion. To the extent the Panel's holding could be read as requiring consumers to prove denial of credit based on the misinformation, it conflicts with *Ramirez*, which found standing without any such evidence. Moreover, here, Freeman has proffered evidence that TransUnion included Ocwen's false reporting in Freeman's credit reports and disseminated them to at least two fourth-party recipients, Quicken and Chase. In addition, Ms. Freeman applied for credit from OneMain and was denied.

AA219 ¶ 33. Despite this, the Panel concludes Freeman was required to put forth additional evidence that the inaccurate reporting was read by someone "who understood [its] defamatory significance" to establish Article III standing. Op. at 10. This is plainly inconsistent with the result in *Ramirez*.[1]

*Ramirez* focused on dissemination, not "understanding." Indeed, the Court's only mention of that concept (in footnote six) was in reference to those class members who had not had inaccurate credit reports disseminated, and who argued that they nonetheless suffered concrete injury from TransUnion's "internal" publication to TransUnion's employees and mail vendors. *See* 141 S. Ct. at 434 n.6. As this Court has recognized, this footnote is "dicta." *Ewing*, 24 F.4th at 1153.

But regardless, it offers no support for the Panel's holding. That footnote must be read in the context of the opinion in which it appears. If the footnote means that "understanding" is required, then *Ramirez* is unmistakably clear that evidence of dissemination to a potential creditor (or employer or landlord) is sufficient evidence of "understanding." Otherwise, the Court could not have found standing for the dissemination class, as Ramirez, to repeat, "did not present evidence about the experiences of other members of the class" beyond that their reports had been distributed. The footnote, at most, did no more than carve out from that clear holding cases in which dissemination is solely to an unusual third-party, like a "printing

---

[1] In fact, TransUnion unsuccessfully pursued such an evidentiary requirement in *Ramirez*: It contended that the class members lacked Article III standing because they had not shown that they had been injured by the dissemination of the false OFAC "potential match" alert. The Supreme Court correctly rejected that argument. *Ramirez*, 594 U.S. at 433.

vendor," that unthinkingly and mechanically "processe[s]" the information and nothing more. But the Panel treated CRAs in the business of identifying and collecting salient credit information and lenders in the business of looking for credit-red flags as if they, too, were printers. That was not just wrong; it was directly at odds with *Ramirez*.

And there is good reason for *Ramirez*'s holding that dissemination is sufficient to establish injury. CRAs are not charities; they collect and disseminate credit histories for a "fee." *Denan*, 959 F.3d at 294. In return, they "compile the furnished data into a comprehensible format, allowing others to evaluate the creditworthiness of a given consumer." *Id.* And they have a statutory duty to ensure that they understand the information they collect and its accuracy. *See* 15 U.S.C. § 1681e(b) ("Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates"). That is why this Court has previously recognized the harms false reporting causes any time it makes its way to a CRA: "Put simply, the failure to inform a credit reporting agency that the debtor disputed his or her debt will *always* have influence on the debtor, as this information will be used to determine the debtor's credit score." *Evans v. Portfolio Recovery Assocs.*, 889 F.3d 337, 345, 349 (7th Cir. 2018) (emphasis added).

Finally, the Panel's holding runs afoul of the Supreme Court's, this Court's, and other United States Courts of Appeals pronouncements about Article III standing

since *Spokeo*.[2] The Supreme Court has been clear that, to find concrete Article III injury in the context of a statutorily defined harm, courts should "not require an exact duplicate" of the common-law analogue—just "a close relationship." *Ramirez*, 141 S. Ct. at 433; *see Spokeo*, 578 U.S. at 340–41. Or, as the Fourth Circuit puts it, the "inquiry is focused on types of harms protected at common law, not the precise point at which those harms become actionable." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 653–54 (4th Cir. 2019). Nothing about the Supreme Court's Article III jurisprudence requires courts to "import the elements of common law torts, piece by piece, into any scheme Congress may devise." *Id.* Indeed, the Supreme Court has repeatedly rejected the idea that this "sort of judicial grafting" is necessary to establish Article III injury in fact. *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (standing "often turns on the nature and source of the claim asserted," but it "in no way depends

---

[2] *See, e.g., Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) (when asked "to analogize to harms recognized by the common law, [courts are] are meant to look for a 'close relationship' in kind, not degree"); *Lupia v. Medicredit, Inc.,* 8 F.4th 1184 (10th Cir. 2021) ( "Though a single phone call may not intrude to the degree required at common law, that phone call poses the same *kind* of harm recognized at common law - an unwanted intrusion into a plaintiff's peace and quiet.") (emphasis in original); *Carey v. James S. Farrin, P.C.*, 35 F.4th 917, 921 (4th Cir. 2022) (a plaintiff who identifies a historical or common-law analog for his injury "has standing even if the precise injury would not, absent the statute, be sufficient for Article III standing purposes"); *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816 (5th Cir. 2022) ("[O]ur court has already recognized that we must "focus [ ] on types of harms protected at common law, not the precise point at which those harms become actionable.""); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) ("Nor does it matter that the harm suffered here was minimal; in the standing analysis we consider the nature or type of the harm, not its extent."); *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3rd Cir. 2017) ("As we said in *Horizon*, a close relationship does not require that the newly proscribed conduct would 'give rise to a cause of action under common law."); *Santos v. Healthcare Revenue Recovery Grp., LLC*, 90 F.4th 1144 (11th Cir. 2023) ("The consumer need not prove 'that the false reporting caused his credit score to plummet; the false reporting itself [i]s the injury.").

on the merits" of the claim). This is because requiring an "exact duplicate", or an evidentiary hurdle akin to having to establish each element of the analogous tort - like the Panel seeks to impose here - would subvert the Supreme Court's repeated affirmation that "Congress may 'elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" *Ramirez*, 141 S. Ct. at 425 (quoting *Spokeo*, 578 U.S at 341). It would also effectively result in the common law forever paralyzing Congress: All that the Constitution would permit Congress to do is replicate and codify existing common-law causes of action.

      b.   *This Court's holding in Ewing compels a finding that Plaintiff-Appellant has standing.*

The Panel's decision also conflicts with *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir. 2022). *Ewing* consolidated two cases in which consumers argued that debt collectors violated the FDCPA, specifically § 1692e(8), by reporting their alleged debts to CRAs without disclosing that the consumers had disputed the debts. 24 F.4th at 1149. Relying on *Ramirez*, this Court held that the debt collectors' dissemination of inaccurate reports to CRAs caused "an intangible, reputational injury that is sufficiently concrete for purposes of Article III standing. Specifically, they have shown that their injury is closely related to the harm caused by defamation . . . [B]eing portrayed as a deadbeat who does not pay her debts has real-world consequences." *Id.* at 1154.

The *Ewing* debt collectors argued the consumers were "in the same position as the losing subclass in [*Ramirez*]" because there was no evidence the CRA sent their credit reports to potential creditors, and therefore they had not suffered a concrete

injury. *Id*. at 1152. The court declared this argument to be a "red herring" because "[i]f the Consumers' harm is analogous to defamation, then they must demonstrate that the Debt Collectors disseminated false information about them to a third party." *Id*. The Court instead determined that the consumers resembled the prevailing subclass in *Ramirez*, about whom misleading information had been disseminated to third parties and who thus "'suffered a concrete injury in fact under Article III.'" *Id*. (quoting *Ramirez*, 141 S. Ct. at 2209). The *Ramirez* Court "did not require those plaintiffs to come forward with additional evidence of publication because dissemination was clear." *Id*. at 1153-54. Likewise, the *Ewing* court found that "the Debt Collectors disseminated false reports about the Consumers to TransUnion. To require more of the Consumers would permit the dicta in footnote six to erode *Ramirez's* holding that evidence of dissemination to a third party is sufficient to show publication." *Id*. at 1154.

According to the Panel, the difference between this case and *Ewing* is that in *Ewing*, "the third party understood the defamatory nature of the communication (debt collectors' reports) because the third party included the debts in the plaintiffs' credit reports, and its assessment of the plaintiffs' creditworthiness considered whether a debt was disputed." *Freeman*, 2024 WL 3381718 at *4. "By contrast," the Panel continued, "Freeman provides no evidence that a third party understood the defamatory significance of Ocwen's communication." *Id*.

That statement is inconsistent with the Panel's own findings and the evidence Freeman presented. Specifically, the Panel recognized that "[t]he record indicates

that Quicken Loans and Chase Card requested [Freeman's] credit report from TransUnion *and that those reports contained Ocwen's inaccurate reporting.*" *Id.* (emphasis added). Nevertheless, a mere two sentences later, the Panel concluded that "none of this evidence amounts to specific facts establishing that Ocwen disseminated the inaccurate reporting to a third party, such as TransUnion, who understood the defamatory significance of the inaccurate reporting." But that is *exactly* what it amounts to. It is the same third party that received the inaccurate reports in *Ewing*. Ocwen disseminated inaccurate credit reporting to TransUnion, and TransUnion included it in Freeman's credit report, which demonstrates that TransUnion understood its significance. Nor can there be any doubt that Chase and Quicken understood the significance. At a minimum, a reasonable jury could find that major lenders like Chase and Quicken "understand" what it means when a credit report says a consumer is delinquent—they are in the business of lending, and that business depends on assessing such information.

In light of this, the Panel's conclusion that Freeman's evidence "merely shows that TransUnion included Ocwen's inaccurate reporting in its own credit reports, indicating nothing about TransUnion's or another third party's assessment of her creditworthiness" is unreasonable, not supported by the evidence, and irreconcilable with *Ewing*, with *Ramirez*, with the requirement that all reasonable inferences be drawn in Ms. Freeman's favor, and with the realities of credit reporting. First, it is contradicted by the fact, noted above, that TransUnion provided Freeman's credit report containing Ocwen's false reporting to Quicken Loans and Chase. This is more

than the plaintiffs proffered in *Ewing*, where there was no evidence that the consumers' inaccurate reports were disseminated to creditors.

Second, the Panel appears to be drawing a faulty analogy to the subclass of plaintiffs in *Ramirez* whose reports were not disseminated to third parties. In *Ramirez*, rather than having received the information from a creditor, the CRA itself generated the misleading reports contained in the consumers' files. Thus, if those reports were not disseminated to a third party, there was no publication. *See Ramirez*, 594 U.S. at 434. But in this case, Ocwen, not TransUnion, generated the false information, and Ocwen disseminated it to TransUnion. That alone is publication, and it is not an internal publication or publication to a printing house or stenographer as referenced in *Ramirez*'s footnote six. As a CRA, TransUnion has a statutory duty to understand the credit information it processes, and TransUnion included the false information it received from Ocwen in Freeman's credit report *and* provided that report to creditors. *See, e.g.,* 15 U.S.C. § 1681e(b) ("Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates").

Moreover, in *Ewing,* the court found that TransUnion understood the defamatory significance of the debt collectors' reporting because "TransUnion included the debts in the Consumers' credit reports," and "TransUnion would have included the disputes too had the Debt Collectors communicated them." *Ewing*, 24 F.4th at 1154. Likewise, in this case, TransUnion included Ocwen's false reporting

about Freeman's loan in her credit reports, and had Ocwen properly reported Freeman's numerous disputes, TransUnion would have been legally obligated to include those as well. *See* AA170-AA193; AA219, ¶ 32. Ocwen is the only creditor who provided derogatory reporting about Freeman to the CRAs during the relevant time frame. *See* AA219 ¶ 30. And there is no dispute that the false information from Ocwen lowered Freeman's credit score. *See* AA219 ¶¶ 33-34; AA233¶¶ 2-5. This, too, is analogous to *Ewing*, where the plaintiffs submitted evidence that their credit scores rose once their credit reports reflected that the debts were disputed, which the court considered to be "evidence that TransUnion's assessment of their creditworthiness took into account whether a debt was disputed or not." *Ewing*, 24 F.4th at 1150, 1154.

The Panel's conclusion that no third party understood the significance of the false information Ocwen reported simply cannot be justified. TransUnion had a statutory duty to understand it, and the evidence confirms that it did. Freeman's evidence thus establishes publication.

## Conclusion

For these reasons, the petition for rehearing and rehearing en banc should be granted.

Respectfully submitted,

/s/ *Travis W. Cohron*
Travis W. Cohron, No. 29562-30
**CLARK, QUINN, MOSES, SCOTT, & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
(317) 637-1321
tcohron@clarkquinnlaw.com
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3870 words, excluding the parts exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 12-point Century font.

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the appendix.

Dated: August 9, 2024                                    /s/ Travis W. Cohron
                                                         Travis William Cohron

## CERTIFICATE OF SERVICE

      I hereby certify that on August 9, 2024, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

      I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: August 9, 2024                     /s/ Travis W. Cohron

                                        Travis William Cohron